UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-60016-CR-WILLIAMS

UNITED STATES OF AMERICA

vs.

JAMES E. PRICE, III

_____/

**<u>DEFENDANT PRICE'S SENTENCING MEMORANDUM</u>**

The defendant James E. Price, III, through undersigned counsel, respectfully files this Sentencing Memorandum. Mr. Price's former counsel filed a Sentencing Memorandum on September 21, 2012, in which he asked this Court to impose the minimum-mandatory sentence of 60 months and presented other information in support of his request. (DE: 98.) Subsequently, a Revised PSI was issued on October 2, 2012, and undersigned counsel was appointed on October 17, 2012. (DE: 107.) Now, undersigned counsel respectfully: incorporates by reference the arguments contained in the Sentencing Memorandum filed at Docket Entry 98 except for the sentencing recommendation of 60 months; and submits this additional Sentencing Memorandum. For the reasons contained in this pleading, undersigned counsel respectfully requests this Court impose a sentence of 135 months.

1

**ARGUMENT**

Mr. Price respectfully requests this Court impose a sentence of 135 months, which is 38 months more than the low end of the contemplated pretrial plea offer of 97-121 months and a more reasonable sentence in light of the Sentencing Commission's recent admission that the guidelines in a typical child pornography case such as this one employ "outdated and disproportionate enhancements."[1]

**A.     The Contemplated Pretrial Plea Offer of 97-121 Months Signals What a More Reasonable Sentence Would Be.**

By exercising his constitutional right to go to trial, Mr. Price is facing 210-262 months—approximately 113 more months than the low end of the contemplated pretrial plea offer guideline. Mr. Price's previously retained counsel obtained the following representation from the Government:

> I would consider dismissing the distribution charge in exchange for a plea to possession on the condition that he agree to jointly recommend a guideline sentence. He will also have to agree to sign an appellate waiver, forfeit the items listed in the indictment, accept 15 levels of enhancements set forth in 2G2.2, pay restitution to all identified victims, and withdraw his motion to suppress. I believe his guidelines would then be 97 to 121 months.

(E-mail from AUSA Mark Dispoto to Jeffrey Voluck, Apr. 17, 2012.) And while the Government, admittedly, has complete discretion to extend plea offers as it sees fit, this Court can still take notice of the fact that by exercising his constitutionally held right to trial, the low

---

[1] *See* The U.S. Sentencing Commission's Report to Congress: Federal Child Pornography Offenses, (hereinafter, "the Report"), Chap. 12, p. 331, (Dec. 2012) *available at* [http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm](http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm) ("The Commission believes that the current non-production guideline warrants revision in view of its outdated and disproportionate enhancements related to offenders' collecting behavior as well as its failure to account fully for some offenders' involvement in child pornography communities and sexually dangerous behavior. *The current guideline produces overly severe sentencing ranges for some offenders, unduly lenient ranges for other offenders, and widespread inconsistent application*.") (emphasis added).

end of Mr. Price's current guidelines is 210 months: a 113-month increase, representing a 116 percent penalty increase.[2] The information known to the Government about the specific facts and circumstances of this case at the time it contemplated the offer was no different from that which was ultimately adduced at trial. The only difference is that Mr. Price exercised his constitutional right to go to trial.[3]

In light of the fact that the contemplated plea offer was 97 to 121 months—which represented a Criminal History Category I and an adjusted offense level of 30, which took into account a three-level reduction for acceptance of responsibility—Mr. Price would respectfully request this Court to consider a range closer to that produced by an adjusted offense level of 33: 135 to 168 months.

**B.     Even the U.S. Sentencing Commission Has Admitted that the Enhancements in 2G2.2 Are "Outdated" and "Disproportionate."**

The PROTECT Act forced changes upon the Sentencing Commission without study or evaluation. The purpose of the PROTECT Act was to reconcile various bills, establish a nationwide Amber Alert system to be used in cases of child kidnapping, and to address virtual child pornography. Skype Phillips, *Protect Downward Departures: Congress and the Executive's Intrusion Into Judicial Independence,* 12 J.L. & Pol'y 947, 976-984 (2004)

---

[2] Such charge bargaining is cited by the Sentencing Commission as a major contributing factor to sentencing disparities in 2G2.2 cases like Mr. Price's. *See* The Report, Chap. 8, p. 217 (discussing how the study—which examined defendants who received the five-level distribution enhancement, but where some of those defendants were charged with distribution while others were charged with possession—revealed that "the relevant penal statutes and the guidelines provide substantially different ranges for two groups of defendants who engaged in substantially similar conduct as found by sentencing courts.").

[3] Tellingly, the Report explains that of the 818 cases examined in which a defendant pled to possession, "679 (83.0%) involved plea agreements whereby defendants pleaded guilty to possession but the offense conduct sections of their PSRs and/or factual basis sections of their plea agreements stated that such defendant engaged in knowing receipt and/or distribution." *Id.* at p. 221.

(hereinafter "Phillips"). As the legislation progressed, Freshman Congressman Tom Feeney proposed an unrelated amendment to the bill that would directly amend various guidelines. *Id.* Representative Feeney later admitted he was just the "messenger" for two Justice Department officials who authored the provision and chose not to notify or consult the Sentencing Commission. *Id.* at 983 n.185, 986. Debate on the amendment was limited to twenty minutes. *Id.* at 983. The House later passed the Child Abduction Prevention Act with the Feeney Amendment added. *Id.* at 992-994. Despite objections that these changes were being made without adequate review and analysis, by the Sentencing Commission, the Chairman of the House Committee on the Judiciary, the Judicial Conference of the United States, and the American Bar Association, the PROTECT Act became law in 2003. *Id.* at 990-992, 991 n.219.

A direct amendment to U.S.S.G. § 2G2.2 that added up to a five-level increase depending on the number of images possessed was contained in both the original Feeney Amendment and the final version of the PROTECT Act. *See* PROTECT Act, § 401(i)(1)(B), (C). The PROTECT Act also adjusted mandatory-minimum sentences for distribution. In an effort to reconcile the provisions of the PROTECT Act, the Sentencing Commission felt compelled to raise the base offense level to 22 for distribution offenses. The Commission observed:

> Section 103 of the PROTECT Act established five year mandatory minimum terms [for trafficking and receipt]…As a result of these new mandatory minimum penalties...the Commission increased the base offense level for these offenses ... The Commission determined that a base offense level of 22 is appropriate for trafficking because, when combined with several specific offense characteristics **which are expected to apply in almost every case** (e.g., use of a computer, material involving children under 12 years of age, number of images), the mandatory minimum of 60 months' imprisonment will be reached or exceeded *in almost every case* by the Chapter 2 calculations.

U.S.S.G., App. C–Vol. III, Amendment 664, pp. 58-59 (2004) (emphasis added). These changes, made without adequate study and review, have a profound effect on Mr. Price's case, as

4

discussed below.

>   1.   <u>The Sentencing Commission admits that there are unwarranted and unfounded disparities in cases in which defendants are sentenced for non-production child pornography offenses.</u>

Chapter 8 of the Report discusses in detail one of the major guideline problems that is present in Mr. Price's case: because a typical offender in these cases uses P2P file sharing to receive and distribute large quantities of graphically violent child pornography, the typical offense conduct now triggers multiple guideline enhancements and exposes most defendants to substantial penalty ranges. The result is that the guidelines fail to distinguish meaningfully among offenders in terms of culpability and dangerousness. (The Report, Chap. 8, p. 207.)

According to the Report, because the possession and distribution statutes trigger different base offense levels in the guidelines, they "provide substantially different ranges for two groups of defendants who engaged in substantially similar conduct found by sentencing courts." (The Report, Chap. 8, pp. 215-216.) Because the difference between the guidelines is not rooted in any data or empirical evidence, this unwarranted disparity should be corrected at sentencing.

In Paragraph 31 of Mr. Price's PSI, he received a two-level enhancement for distribution under 2G2.2(b)(3)(F). Mr. Price was convicted of distribution, which is commonly the proffered reason for punishing non-production defendants more severely than those who are convicted only of possession. But the Report debunks that claim. According to the Report:

> Distributing child pornography is commonly cited as a primary basis for punishing nonproduction defendants who distributed more severely than non-production defendants who did not. The Commission compared the incidence of distribution conduct in all cases to determine whether defendants whose sentencing exposure was limited had a lesser incidence of distribution conduct than defendants whose sentencing exposure was not limited. Figure 8–14 below shows that **the incidence of distribution conduct is virtually identical in the two groups**.

**Figure 8-14
Non-Production Offense Characteristics:
Distribution Conduct by Sentencing Exposure
Fiscal Year 2010**

**Exposure Not Limited**
- No Distribution 36.0% N=126
- Actual Distribution Conduct 64.0% N=224

**Exposure Limited**
- No Distribution 34.3% N=447
- Actual Distribution Conduct 65.7% N=857

Note: Percentages may not sum to exactly 100% due to rounding.
SOURCE: U.S. Sentencing Commission, 2010 Datafile, USSCFY10 and FY10 Child Pornography Plea Agreement Special Coding Project.

(The Report, Chap. 8, p. 227-228) (emphasis added). Given that distribution conduct is present in the typical possession case, the guidelines' disparity, as seen in Paragraphs 29 and 31 of Mr. Price's PSI, is unwarranted. The empirical evidence supports a downward variance in this case.

    2.    <u>Guidelines for non-production offenses are higher than the mean guideline minimum for three other sex offense types that involve actual or attempted sexual contact with a minor.</u>

To illustrate the point that the non-production guidelines are disproportionately high, the Commission conducted a comparative proportionality analysis between the mean guidelines for 2G2.2 and other federal sex offenses that involve actual or attempted sexual contact with a minor. (The Report, Chap. 6, p. 136.) The Report found that the mean guideline for a 2G2.2 case is *higher* than the mean guideline minimum for the following three other sex offense types that involve minors:

    (1) traveling to engage in sexual contact with a minor 12 years old or older (USSG §2G1.3 (Promoting a Commercial Sex Act or Prohibited Sexual Conduct

with a Minor; Transportation of Minors to Engage in a Commercial Sex Act or Prohibited Sexual Conduct; Travel to Engage in Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Sex Trafficking of Children; Use of Interstate Facilities to Transport Information about a Minor)); (2) abusive sexual contact with a minor (*e.g.*, sexual fondling) (§2A3.4 (Abusive Sexual Contact or Attempt to Commit Abusive Sexual Contact)); and (3) statutory rape of a minor under 16 years of age (§2A3.2 (Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such Acts)).

(The Report, Chap. 6, p. 135-136.) Mr. Price's case does not involve the enticement of minors or attempted or actual contact with minors, a fact that should be considered in imposing a below-guidelines sentence in this case.

> 3. <u>Enhancements for use of a computer and prepubescent minors apply in all 2G2.2 cases and are no longer a meaningful way to punish more egregious conduct.</u>

Mr. Price received an enhancement for images depicting a prepubescent minor and an additional enhancement for use of a computer. (PSI ¶¶ 30, 33.) These enhancements have been available since the late eighties and mid-nineties. (Report, Chap. 6, p. 138.) As shown in the following figure taken from the Report, these two enhancements now apply to "virtually all non-production offenders:"



(*Id.* at p. 139.)

7

      4.    <u>Similarly, enhancements for sadomasochistic images, as well as number of images, apply in almost every case.</u>

Mr. Price received enhancements for sadomasochistic images, as well as the maximum enhancement for number of images. (PSI ¶¶ 32, 34.) According to the Report, there has been a steady increase in the application of enhancements related to sadomasochistic images: in 2005, the enhancement applied in approximately 60 percent of cases, and by 2010, it applied in nearly 75 percent of cases. (Report, Chap. 6, p. 141.) Additionally, "in fiscal year 2010, 1,602 of 1,654 offenders (96.9%) received an enhancement pursuant to §2G2.2(b)(7) based on the number of images that they possessed, and 1,115 of the 1,602 (69.6%) received the maximum 5-level enhancement based on possession of 600 or more images." (*Id.*) Again, this empirical data demonstrates that the guidelines are generating arbitrarily high ranges that do not differentiate among conduct and offenders. As such, this too, militates in favor of a below-guidelines sentence for Mr. Price.

In sum, the importance of discussing all of these enhancements is that they demonstrate that Mr. Price is a squarely average offender in one of these cases. These enhancements in his PSI are present in most 2G2.2 offenders' PSIs. Moreover, Mr. Price's background and personal history do not set him further apart:

> The overwhelming majority of §2G2.2 offenders in fiscal year 2010 were white male United States citizens in Criminal History Category I. The average age of such offenders was 42. The typical offender was employed at the time of the offense, had at least some college education, and had a positive net worth at the time of sentencing. The vast majority of non-production offenders reported neither a history of childhood sexual abuse nor a history of substance abuse. Over one-quarter of non-production offenders had a record of military service.

(Report, Chap. 6., p. 164.) In 2011, distribution offenders received within guideline range sentences in *only 38.3 percent* of cases. (Report, Chap. 6, p. 134.) Other than the fact that he

8

proceeded to trial, there is nothing that makes Mr. Price's case different from the typical non-production offender.

C.  **Other Courts in This District Recognize that the Guidelines in Distribution Cases Do Not Meet the Purposes of Punishment and Routinely Vary Downward in Cases Presenting Similar or Worse Facts than Those in Mr. Price's Case.**

In a factually similar case, *United States v. Carlo Demarco,* Case No. 10-cr-20261-KMM, the defendant pled guilty to one count of distribution of child pornography. His PSI calculated his sentencing guidelines to be 151-188 months, and the defendant requested a downward variance. Over the Government's objection, the Court imposed a sentence of 60 months. The facts set forth in that defendant's proffer are strikingly similar to Mr. Price's case: a publicly available file sharing program was used; and a forensic examination of that computer revealed at least 600 images and at least 101 videos of prepubescent children engaging in sexually explicit conduct, including oral sex and penetration. Case No. 10-cr-20261-KMM (DE: 46). Additionally, that defendant had his software configured to allow him to monitor actively not just which files of his were being downloaded, but who was downloading his files. (*Id.*) Even taking into account that the *Demarco* defendant pled guilty and had demonstrated mental health issues, Mr. Price's requested sentence of 135 months is still more than double that imposed by the Court in *Demarco*.

In a case involving more than simple P2P distribution, *United States v. Diego Matrajt,* Case No. 12-cr-20343-RNS, the defendant pled guilty to one count of distribution and two counts of possession of child pornography, despite all indications that he was producing child pornography. (DE: 40.) His PSI calculated his guidelines to be 210-262 months, the defendant requested a sentence of 60 months, and over the Government's objection, the Court imposed a sentence of 120 months as to each count to run concurrently. (*Id.*) That defendant not only had

9

his computers password protected and encrypted, but he also had webcams secretly set up in his home, where he conducted photo shoots of children and captured videos of those children naked in his home. He possessed 50 homemade videos of this nature, in addition to at least another 40 sexually explicit videos of minors. (*Id.*) Matrajt, who had numerous real children in his home and videoed them for his own sexual gratification, in addition to possessing and sharing sexually explicit videos of minors, received a sentence of 120 months. The facts of Mr. Price's case are nowhere near as egregious as those in the *Matrajt* case and should not warrant a sentence nearly double Matrajt's.

In *United States v. Bourelle,* Case No. 08-cr-20407-UU, the defendant chatted with an undercover agent in an attempt to arrange to meet the agent's minor daughter and have sex with her, and in furtherance of that goal, he sent the agent various files containing child pornography. (DE: 17.) The defendant pled guilty to distribution of child pornography and transferring obscene materials to a minor. His PSI calculated his guidelines at 108-135 months, the parties agreed to a guideline range of 57-71 months and jointly recommended a sentence of 60 months, which the Court accepted and imposed a 60-month sentence. (DE: 21, 23, 26.) In Mr. Price's case, there is no evidence that any attempts were made to contact or meet any minors, another fact that supports a sentence closer to 135 months.

In *United States v. Shawn Beauvais,* Case No. 12-cr-60067-RNS, the defendant, who pled to distribution, was found to have possessed over 4,000 pictures and over 1,700 videos, many of which involved infants and toddlers subjected to sadomasochism. (DE: 24.) The PSI calculated his guideline range to be 151-188, the defendant requested a 60-month sentence, and the Government, recognizing the defendant's serious medical needs, requested a sentence of 121 months. (DE: 31.) The Court imposed a sentence of 75 months. (DE: 36.) In Mr. Price's case, the

offense involved 44 photos and 216 videos. (PSI ¶ 17.) The relative number of images and videos supports a sentence in the instant case closer to 135 months.

In the case of *United States v. Riley*, 655 F. Supp. 2d 1298 (S.D. Fla. 2009), Judge King rejected the recommended sentencing range and sentenced the defendant to the statutory minimum term of 60 months. That defendant was actually conversing through an online chat room with a person he believed to be a single mother with a ten-year-old daughter. During the conversations, the defendant expressed an interest in engaging in sexual behavior with the mother and daughter and requested pictures of the daughter. After making contact with the defendant, FBI agents discovered 900 additional pictures and 10 videos on his computer. In rejecting the advisory guideline range of 210-262 months, the Court noted that the guidelines are entitled to deference when the Sentencing Commission produces them in accordance with their institutional role and where the guidelines are the result of a study of empirical data; however, the Court concluded that little deference is owed to the guideline for child pornography cases since these guidelines did not exemplify the Sentencing Commission's exercise of its characteristic institutional role and empirical analysis:

> [T]he guideline has been steadily increased despite evidence and recommendations by the Commission to the contrary. Congress has repeatedly amended it directly, ostensibly to target mass producers of child pornography and/or repeat abusers of children, a class of offenders that make up less than 5% of those affected by the changes...Between 1994 and 2007, the mean sentence in child pornography cases increased from 36 months to 110 months...[T]his increase was not the result of the empirical approach often used by the Commission, designed to be an expert body on sentencing...These amendments [increasing sentence ranges] destroyed some of the careful distinctions the Commission had drawn between true peddlers of child pornography and more simple possessors or transporters.

*Id.* at 1301 (quoting *United States v. Hanson*, 561 F. Supp. 2d 1004, 1010-11 (E.D. Wis. 2008)). Also, the Court discussed at length that due to arbitrary upward increases in the base offense

levels for child pornography and the near-automatic application of numerous specific offense enhancements (*i.e.*, distribution, use of a computer, prepubescent victims and number of images), rarely, if ever, will a defendant score at the low end of the statutory range.

Many other Courts in this district have varied downward in distribution cases. *See United States v. Matthew Clark*, Case No. 11-cr-14064-DLG (case involving the same conduct as Mr. Price's case, the Court varied from the advisory guideline range of 151-188 months to impose a sentence of 66 months); *United States v. Nat Lane*, Case No. 10-cr-14061-JEM (Court varied from 151 months to a sentence of 108 months); *United States v. Jose Selem*, Case No. 11-cr-20643-CR-RNS (Court varied from 151-188 months to a sentence of 120 months); *United States v. Mehrdad Sarlak*, Case No. 11-cr-20078-JLK (Court varied from 151-188 months to a sentence of 60 months). Such local sentencing trends mirror a larger national sentencing trend in these cases:



(Report, Chap. 6, p. 135.) Sentencing Mr. Price to 135 months, therefore, will reflect a well-recognized need to correct the guidelines' unwarranted sentencing disparity.

## CONCLUSION

Mr. Price's case is a typical non-production case, and as such, a downward variance to 135 months is reasonable. Such a sentence takes into account a loss of acceptance of responsibility, the specific facts of this case, his personal characteristics, as well as the empirical data that reflect the unwarranted disparity in the guidelines and local and national sentencing trends.

WHEREFORE, the defendant James E. Price, III, respectfully requests this Court impose a sentence of 135 months.

Respectfully Submitted,

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By:     */s/ Sowmya Bharathi*
Assistant Federal Public Defender
Special A No.: A5500997
150 W. Flagler Street, Suite 1700
Miami, Florida 33130-1556
Tel: (305) 533-4188
Fax: (305) 536-4559
E-mail: Sowmya_Bharathi@fd.org

## CERTIFICATE OF SERVICE

   I HEREBY certify that on March 14, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

             */s/ Sowmya Bharathi*


## SERVICE LIST
### United States v. James E. Price, III
### Case No.: 12-60016-Cr-Williams
### United States District Court, Southern District of Florida

Sowmya Bharathi
sowmya_bharathi@fd.org
Federal Public Defender's Office
150 W. Flagler Street, Suite 1700
Miami, Florida 33130-1556
Tel: (305) 533-4188 / Fax: (305) 536-4559
Attorney for the Defendant
Via: CM/ECF

Marc Stuart Anton
marc.anton@usdoj.gov
United States Attorney's Office
500 E Broward Boulevard, 7th Floor
Fort Lauderdale, FL 33301-3002
Tel: 954-356-7255 / Fax: 954-356-7336
Attorney for the government
Via: CM/ECF