```
                  UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
                       MIAMI DIVISION
                Case No. 12-60016-CR-WILLIAMS

UNITED STATES OF AMERICA              MIAMI, FLORIDA

                                      March 22, 2013
        Versus                        VOLUME I

                                      PAGE 1 TO 50
JAMES PRICE, III
                       Defendant



                       SENTENCING HEARING
           BEFORE THE HON. KATHLEEN M. WILLIAMS, J.
                UNITED STATES DISTRICT JUDGE



APPEARANCES:

FOR THE GOVERNMENT:

                       MARC ANTON, ESQ.
                       Assistant United States Attorney
                       99 N.E. 4th Street
                       Miami, FL  33132

FOR THE DEFENDANT:

                       SOWMYA BHARATHI, ESQ.
                       Assistant Federal Public Defender
                       150 W. Flagler Street - Suite 1700
                       Miami, FL  33130



REPORTED BY:           DAVID S. EHRLICH, RPR
                       Official Court Reporter
                       Wilkie D. Ferguson, Jr.
                       U. S. Courthouse
                       400 N. Miami, Room 11-4
                       Miami, Florida 33128-1810
                       (305) 523-5537
```

1           (This matter began at 10:24 a.m.)

2           COURTROOM DEPUTY:  The Court calls case number 12-60016

3  criminal, United States versus James Price, III.

4           Counsel, state your appearances, please.

5           MR. ANTON:  Good morning, Your Honor.  Marc Anton on behalf

6  of the United States.

7           THE COURT:  Good morning, Mr. Anton.

8           MR. ANTON:  Good morning, Judge.

9           MS. BHARATHI:  Good morning, Judge.  Sowmya Bharathi from

10 the Federal Defender's office, on behalf of Mr. Price, who is before

11 the Court.

12          THE COURT:  Good morning Miss Bharathi.  Good morning,

13 Mr. Price.

14          THE DEFENDANT:  Good morning, Your Honor.

15          THE COURT:  I'm sorry for the delay.  Things happen.  So we

16 are here now.  And we are here for Mr. Price's sentencing.  So I ask

17 you first, Miss Bharathi, have you had an opportunity with your

18 client to review the PSI, the addendum to the PSI, and the second

19 addendum to the PSI?

20          MS. BHARATHI:  Yes, Your Honor.

21          THE COURT:  All right.

22          I understand that there are objections filed by Mr. Price

23 to the PSI as well as the sentencing memorandum.

24          Mr. Anton, was there anything filed by the government in

25 this regard?

1          MR. ANTON:  There wasn't, Judge.  There's really nothing in

2   terms of the objections to the PSI that affect the guideline range.

3   It's all going to depend on argument today as to whether or not you

4   feel it is appropriate to include it in the PSI.  We can certainly

5   address them orally here today.

6          THE COURT:  All right.

7          Before I take up the objections I do want to note that I

8   have read all of the submissions of both Miss Bharathi and

9   Mr. Price's previous counsel in terms of letters that have been

10  given to the Court, case law cited, and memorandums in support of

11  sentence.  So let's just then get to the objections.

12         Oh.  And, please, if the gentleman from Probation announce

13  his appearance as well.

14         PROBATION OFFICER:  Good morning, Your Honor.  Paul

15  Czekanski, United States Probation Office, standing in for Catherine

16  A. Gomez.

17         THE COURT:  Thank you.

18         The first objection goes to paragraph 11 of the PSI.  The

19  first objection to the factual content goes to paragraph 11.  With

20  regard to the Atlanta investigation --

21         I'll let you make your point, Miss Bharathi.  But let me

22  say he, Mr. Price, did acknowledge the fact of this, and that's

23  noted in paragraph 13, where he tells the agents he was questioned

24  about a matter in Atlanta when he was employed with Mobility.  So

25  what about 11 is problematic?

1          MS. BHARATHI:  Your Honor, I think the problem with

2   paragraph 11 is that it contained several, essentially, assumptions

3   and speculative facts that are not supported by the actual report.

4   I recognize fully that the FBI has a report that states that

5   Mr. Price was the subject of an investigation in Atlanta, and I'm

6   not arguing with the FBI's position that that investigation was out

7   there.

8          The problem with the PSI, however, is that it indicates,

9   for example, that the forensic examination was not available.

10  However, the FBI report does not indicate that.  What it does

11  indicate is that an agent agreed to conduct an examination and that

12  subsequently innocent images was checked, and that was essentially

13  the end of it.  There is no indication that examination was actually

14  done, and so there is no indication that there were results from an

15  examination.

16          So it might be splitting hairs, but I think it is important

17  to be clear on this Atlanta case given the importance of play during

18  trial, and I wanted to preserve that issue for Mr. Price.

19          Additionally, in paragraph 11 there is a statement that

20  Mr. Price obtained an attorney.  And I agree that the FBI report

21  does make that claim.  However, there is nothing in that FBI report

22  that states who that attorney was, how to contact that person, the

23  context of this alleged conversation and statement, all of the

24  things that we see in a typical FBI 302 that lends the report it's

25  sort of reliability.  That is all missing in this case.

1        So to the extent that the PSI contains the allegation that

2 Mr. Price made any statement, which we deny, I wanted to preserve

3 this issue for him in the form of an objection.

4        THE COURT:  Okay.

5        I guess doing this from the bench is always problematic,

6 but I think we could take out -- I mean, the fact of the

7 investigation needs to be in the PSI, and Mr. Price acknowledged it

8 in any event.  I don't know, do we need to go into the hard drive

9 and the forensic team?  I mean, there was an investigation.  I think

10 he had an attorney and alleged that unknown persons had placed

11 images on his hard drive and it didn't result in a prosecution.

12        MR. ANTON:  Correct, Judge.  And I think that's all that

13 has ever really been mentioned in this case anyway.  I think through

14 disclosure of the reports and through discussions with all parties

15 involved, what essentially happened was back in 2000 there were some

16 allegations, a hard drive was seized, and as the reports indicate

17 they were never analyzed.  So for whatever reason ten years went by

18 and the FBI did nothing with that.  So the case just kind of fell by

19 the wayside and nothing ever happened.  He was never prosecuted.

20        He, of course, admitted and agrees that the investigation

21 took place, and there are, as you can see from the reports,

22 indications that he did hire an attorney and started to fight the

23 allegations.  But there never was a follow-up investigation, nothing

24 ever came of it, and it didn't result in any additional enhancement

25 in this particular case, it didn't result in any points being added.

1  It's merely being noted for the fact that in the year 2000 there was

2  an allegation that is strikingly similar to what he was convicted of

3  here today.  But I don't think any more information other than there

4  was an investigation, a hard drive was seized, these were the

5  allegations, and nothing came of up.  I think that is justified.

6          THE COURT:  Okay.  I think instead of doing it here, if we

7  can craft some language in that regard, just that there was an

8  investigation.

9          I do think -- although I understand Miss Bharathi's

10  concerns about the 302 information, I do think there should be

11  reference to Mr. Price -- I don't even know having an attorney is --

12  but I think the allegation that an unknown person placed images on

13  the hard drive should be included in it, the investigation.  There

14  was never a prosecution.

15          So if we could edit 11 to make it that bare bones I would

16  then be happy with that information remaining in the PSI.

17          MS. BHARATHI:  Your Honor, just to be clear, so you would

18  want paragraph 11 to continue to represent that Mr. Price retained

19  an attorney and that he allegedly made a statement that an unknown

20  person placed the images on his hard drive?

21          THE COURT:  Right.  We could go from the first sentence to

22  start the next sentence, "Price retained an attorney and alleged an

23  unknown person placed images on his hard drive."

24          MS. BHARATHI:  That's the language that we would object to

25  having been included.  I just want to make sure --

```
 1          THE COURT:  Okay.  I understand.

 2          There was also I thought in your motion something about the

 3    forensic examination.  That could all be taken out.

 4          MS. BHARATHI:  Yes, Your Honor.

 5          THE COURT:  So it would be the first sentence everything

 6    taken out until "Price retained an attorney," that sentence, and

 7    then the next sentence would be, "A follow-up investigation revealed

 8    FBI has administratively destroyed which did not result in a

 9    prosecution," and we are done.

10          Next, Miss Bharathi, you had an objection to paragraph 12

11    about the iPad.  We can just take that out.  Didn't that get

12    resolved, or no?

13          MR. ANTON:  Judge, I don't think it ever got resolved.

14    But, quite honestly, is not relevant to this case.  There is nothing

15    found on the iPad anyway.  So you can delete it.

16          THE COURT:  Okay.

17          So the end of paragraph 12 should be the sentence, "Price

18    admitted he had both Lime Wire and Sharaz on his computers," and

19    we're done.

20          MR. ANTON:  That's fine.

21          THE COURT:  All right.

22          Victim impact in paragraph 25, I think both parties are

23    agreed that any type of restitution will be handled not in this

24    proceeding but one that I will set at the end of this hearing so we

25    can leave that to that time.
```

1          Then there is paragraphs 57 and 58, the divorce

2 proceedings.

3          MS. BHARATHI:  Your Honor, we're just simply lodging that

4 objection.  I don't think that anything other than the fact of our

5 objection to those facts need to be included.

6          THE COURT:  Okay.  All right.  Well, I note and will

7 overrule the objection to paragraphs 57 and 58.

8          Paragraphs 82 and 83, I understand that you have fleshed

9 out the process of becoming an Army Ranger, but I think 83 is

10 accurate, is it not, in saying that he attended the program but did

11 not participate -- wasn't hired, apparently, to --

12          MS. BHARATHI:  Your Honor, there is one correction in my

13 objection on page 4 in the fourth line the sentence that begins "One

14 does," there needs to be a "not" there.  What I confirmed by talking

15 with the Army Human Resources, is one does not need to be assigned

16 to the 75th Ranger Regiment to be considered a Ranger.

17          THE COURT:  Where is that again?  I'm sorry.

18          MS. BHARATHI:  Page 4 of my objection, on the 4th line, the

19 sentence that begins, "one does."

20          THE COURT:  Right.

21          MS. BHARATHI:  It should say, "One does not need to be

22 assigned."

23          And, additionally, when I specifically asked the HR person

24 does one need to be hired, he says no.  You don't get hired for the

25 position.  You simply take the course and once up complete the

9

1  course you are considered a Ranger.

2        Now, again I just filed this so that it can be corrected.

3  It doesn't really impact the calculations, but I thought it was

4  important for this to be accurately reflected.

5        MR. ANTON:  Judge, from the government's side, I did

6  contact a Major Brian De Santos, who is their regimental public

7  affairs officer of the 75th Ranger Regiment, and when I asked him to

8  confirm whether or not the defendant Price had ever been assigned to

9  the unit and was a Ranger, his response was exactly this:

10       "We are able to confirm that James E. Price, III, was never

11  assigned to the 75th Ranger Regiment at any point in his career.  He

12  attended the Ranger indoctrination program, which was administered

13  by the 75th Ranger Regiment, but was not hired for a position in

14  this organization.  He spent his entire tour of duty at Fort

15  Benning, Georgia, assigned to E Company, First Battalion, 507th

16  Regiment.  This is part of the US Army Airborne School.  That's the

17  information I have.

18       Whether he wants to call himself a Ranger, I think he's

19  stretching it.  He took the first qualification course, but he was

20  never brought into that unit.  I'm sure those who actually were

21  assigned to the Ranger Regiment would certainly disagree with his

22  characterization that he's a Ranger.

23       For what it's worth, I don't think it's really worth

24  anything in terms of the PSI.  But as far as the Army is concerned,

25  he was never assigned to the Ranger Regiment.  He passed one of the

1  requisite courses, but did not get taken on to that particular unit.

2          THE COURT:  Okay.

3          Well, I think Miss Bharathi has preserved her objection.  I

4  think it's clear from the PSI that he never served in the battalion.

5  If he wishes to characterize himself as a Ranger, I understand why

6  that's important to him and why it would not be untruthful if he

7  were to say that.  And I think all of that information is adequately

8  addressed in 82 and 83.  So I will not sustain the objection to

9  that.

10         Now, factually, Miss Bharathi, is there anything else I

11 need to address?

12         MS. BHARATHI:  No, Your Honor.

13         THE COURT:  All right.

14         Now, as to the Guideline calculations and criminal history,

15 which is on pages 11 and 12, Miss Bharathi, do you acknowledge that

16 under the current law these are correct Guideline calculations?

17         MS. BHARATHI:  Yes, Judge.

18         THE COURT:  Okay.

19         And I assume the government agrees as well?

20         MR. ANTON:  Yes, Your Honor.

21         THE COURT:  So with the edits we have just discussed in

22 terms of factual content, I will adopt the PSI and the addendums in

23 their entirety with regard to not only the facts but the Guideline

24 calculation.

25         The total offense level is a 37, with a Criminal History

1   Category I, bringing us to an advisory guideline range of 210 to

2   264.

3           Now, Miss Bharathi, you also filed a sentencing memorandum

4   where you asked the Court to vary based on several factors and

5   considerations, and I would like to hear you on that now.

6           MS. BHARATHI:  Yes, Your Honor.  I know the Court took the

7   bench and advised that you read everything, so I won't walk through

8   the sentencing memorandum as it is presented.  But what I do want to

9   do is put this in the context of 3553(a).

10          This case involves 44 photographs and 216 videos, and an

11  individual who exercised his constitutional right to proceed to

12  trial.

13          The Sentencing Commission is designed to be the expert body

14  on sentencing and is charged with using careful empirical studies to

15  formulate guidelines.

16          The Sentencing Commission has studied 2G2.2 and has

17  concluded in December of 2012 that this guideline that affects

18  Mr. Price in this case, as well as thousands of other defendants in

19  the country, this guideline is broken, it's wrong, it is not based

20  on any empirically sound evidence.  And that is why I am asking the

21  Court to consider a below guideline sentence.

22          I'm just going to focus on the relevant 3553(a) factors in

23  this case, the first being the nature and the circumstances of the

24  offense.

25          According to the Sentencing Commission, an individual like

1  Mr. Price is a squarely average offender.  And I use that term

2  recognizing that the jury's verdict carries weight here today.  So

3  as I go forward in my arguments I don't want my statements about

4  Mr. Price's conduct to be misconstrued.

5        But in this case he's a squarely average offender.  The

6  overwhelming majority of distribution and non production related

7  offenders are white males, U.S. citizens, Criminal History Category

8  I, whose average age is 42, employed with some college history or

9  educational background with a positive net worth.

10       Additionally, and what was surprising to me and I did not

11  realize this, is that this study shows that the average typical

12  offender has no history of childhood sexual abuse or of substance

13  abuse.  And, additionally, over a quarter of them have a record of

14  military service.  That to a T is Mr. Price.  He a is squarely

15  average offender.  There is nothing that takes him outside of that

16  category.

17       And in 2011 distribution offenders were sentenced within

18  the guidelines in a mere 38 percent of the cases.  That is a huge

19  statistic that we don't see frequently.

20       Additionally, other than the fact that he went to trial,

21  there seems to be nothing in the Sentencing Commission's study that

22  indicates Mr. Price is outside of the average offender.

23       So I think that the nature and circumstances of this

24  offense support a request for a below guideline sentence.

25       With respect to deterrence, the sentence that I'm asking

1   for, I know Mr. Voluck has previously asked you to consider the

2   minimum mandatory of 60 months.  I am not coming to the Court asking

3   the Court to do that.  I am asking the Court for a sentence of 135

4   months, which is approximately 11 years.  This is a sizeable

5   sentence for someone who has never had prior contact with the

6   criminal justice system.  This is a serious sentence.  Over ten

7   years.

8           With respect to protecting the public, the 3553(a) factor,

9   obviously in the immediate term he will be locked up.  It is

10  unlikely with a sentence like this and the charges like this that he

11  will be able to go to a low facility.  So for the instant protection

12  of the public that would be served with a 135-month sentence.

13          With respect to protecting the public on the back end of

14  this, once he is out the Sentencing Commission study shows us that

15  statistically Mr. Price has one of the lowest perceived recidivism

16  rates.

17          In 2003, the Sentencing Commission conducted a recidivism

18  study that showed an offender sentenced at the age of 41 in a

19  Criminal History Category of I, has a mere 6.9 percent recidivism

20  rate.  6.9.

21          So, again, all of the evidence indicates that the

22  protection of the public would be served by a sentence in this

23  range.

24          Obviously his Sentencing Guideline range is 210 to 262, and

25  I cannot ignore that, and I won't.  But the next 3553(a) factor that

1   has to be taken into account and what I spent most of my sentencing

2   memo talking about, the pertinent policy statements from the U.S.

3   Sentencing Commission and the report that is cited throughout my

4   memo.

5        The Sentencing Commission has studied and concluded

6   specifically that the guidelines provide substantially different

7   ranges for two groups of defendants who are engaged in substantially

8   similar conduct.  An entire chapter, chapter 8, of this report is

9   devoted to talking about this.

10        The enhancements, like use of a computer, or prepubescent

11  minors, apply in almost every 2G2.2.  Case and the reason that's

12  important is because the guidelines are supposed to give us a

13  meaningful way to determine and to differentiate offenders, and

14  everyone agrees that this crime is a heinous crime.  It's terrible.

15  But we are tasked when we come into these courtrooms and deal with

16  sentencing to try to find a meaningful dispassionate way to

17  differentiate among offenders.  And on the scale of conduct ranging

18  from the least egregious to the most egregious the guidelines are

19  failing us in that regard.  They are no longer acting as guidelines.

20  And this is a problem the Sentencing Commission has studied and held

21  it is a problem.

22        In 2006 these enhancements for prepubescent minors, as well

23  as use of a computer were determined to apply in 95 percent of the

24  cases.  And that figure continues to rise.

25        Similarly, the S and M enhancement as well as the number of

1  images enhancement, that applies in almost every case.  And in 2010

2  the S and M enhancement applied in 75 percent of all cases in at the

3  Commission's study.

4          In 2010, the five-level enhancement applied in 70 percent

5  of all cases the Commission studied.

6          So the conclusion by the Commission is that this guideline

7  is producing arbitrarily high sentencing ranges, and that they do

8  not differentiate among conduct and among offenders.  And that's

9  important because that is a 3553(a) factor this Court is required to

10 consider, and the Sentencing Commission's pertinent policy

11 statements and recent study support a downward variance in this

12 case.

13         The next 3553(a) factor that supports a downward variance

14 is avoiding unwarranted disparities.  The report found that the

15 incidents of distribution conduct is virtually identical for

16 defendants who are sentenced for distribution charges like Mr. Price

17 is being, as well as defendants who are being sentenced simply for

18 possession charges.  And this relates to the charge bargaining,

19 which I absolutely admit that the government is well-within its

20 rights to offer whatever plea bargains it deems appropriate.  But it

21 is an important factor when we talk about unwarranted disparity.

22         The Sentencing Commission's report showed that 83 percent

23 of defendants who plead to possession actually engage in

24 distribution conduct.  That was something that I was shocked by.  I

25 had no idea that that was the case.

1        THE COURT:  Did they engage in distribution or did they

2   have what seems to be standard peer-to-peer capability?

3        MS. BHARATHI:  The way that I read the report is that it

4   was dealing with the peer-to-peer, which is what was involved in

5   this case.

6        The Sentencing Guidelines for non-production offenses are

7   higher than the mean guideline for three other, I think no one would

8   argue, more offensive types of criminal activity.  Traveling to

9   engage in sexual contact with a minor, the mean guideline for that

10  is lower than in a typical non-production case.  And that's

11  obviously a defendant taking steps to actually physically meet and

12  interact and have sexual contact.  It's higher than the mean

13  guideline for abusive sexual contact with a minor, actually touch

14  ago minor.  And it's higher than the statutory rape of a minor under

15  the age of 16.

16        The sentencing disparity is unwarranted if individuals

17  being compared are similarly situated.  And I cited in my sentencing

18  memorandum some cases in the district, and I will just point out

19  three:

20        Peer-to-peer versus creating images and videos with a

21  secret web cam, that was Matrajt case.  In that case the defendant

22  pled to distribution and possession, and the guidelines were 210 to

23  262; exactly what Mr. Price is facing.  That individual was

24  sentenced to 120 months.  There were secret web cams that that

25  individual used --

```
 1          THE COURT:  I couldn't find anything on that case on the

 2  docket other than the sentence.  And there was an indication that

 3  the defense was going to file some memorandum.  So I guess my

 4  question to you is was there anything in Mr. Matrajt's case like the

 5  other cases you cite, the Demarco situation where there was a mental

 6  health issue, Beauvais, where there was a medical issue, was there

 7  some --

 8          And, Mr. Anton, I invite you, do you know was there

 9  anything there that guided Judge Scola in terms of the individual's

10  background.

11          MR. ANTON:  Judge, I don't know without exploring the

12  entire PSI.

13          THE COURT:  Literally there was nothing on the docket, just

14  the government's objection but not anything that told me what

15  Mr. Weiner had filed on behalf of his client.

16          MS. BHARATHI:  I think that case, and correct me if I'm

17  wrong, I think there were some sealed pleadings on that docket,

18  which obviously I was not able to access.  I think, but I'm not 100

19  percent sure, that there were mental health issues.

20          THE COURT:  I thought that the sealed docket entries might

21  suggest that.

22          MS. BHARATHI:  Right.  And I'm sorry, I should have put

23  that in there.  I wasn't sure and I did not speak with the defense

24  counsel in that case.  I just pulled from the docket.  I think

25  docket entry 40 is where I got the information that I presented on
```

1  that case.

2          But obviously the peer-to-peer versus the conduct in that

3  case where the web cam was actually being used to video children in

4  his home who were there for photo shoots.

5          The other case I wanted to highlight shows the difference

6  between people who look versus people who touch, or try to touch.

7  In Vourelle, that defendant actually tried to meet what he thought

8  was a minor girl to have sex with her.  And his Sentencing

9  Guidelines were 108 to 135 and he was sentenced to 60 months.

10          And then, finally, the relative number of images and

11  videos.  I think the Beauvais case there were over 4,000 pictures

12  and over 1,700 videos with infants and toddlers being subjected to S

13  and M.  And that individual pled to distribution, faced 151 to 188,

14  months and was sentenced to 75 months.

15          I think that the final point I want to make with regard to

16  these statistics is contained on page 12 of my memo that shows what

17  the average guideline minimums are in cases.  And what I wanted to

18  point out is the request that I am making to the Court is based on

19  something, and in part is based on chart.

20          When we look at the top line, that line indicates the

21  average guideline minimum in receipt, transport and distribution

22  offenses in 2010 was around -- looks like around 151 to 188 months,

23  which is a guideline level of 34, which is where Mr. Price would

24  have been had he pled.  But he did not.  And where we see the Courts

25  sentencing individuals like this is significantly lower.

1          I think that a sentence of 135 months adequately takes into

2    account all of the relevant facts in this case and acknowledges what

3    the Sentencing Commission's work has shown us in its report that

4    these guideline ranges are producing arbitrarily high ranges.

5          And I recognize that this is a difficult case, but I also

6    recognize that these are exactly the cases that we have to be

7    dispassionate about when you look at the guidelines because they are

8    supposed to be our guides to keep us in line, to keep us sentencing

9    individuals in accordance with the principles of fairness.

10          THE COURT:  Thank you.

11          All right, Mr. Anton.

12          MR. ANTON:  Yes, Judge.  In rebuttal I think it's very

13    interesting to note that pre Booker and pre guidelines the defense

14    attorneys were always arguing, "Judge, there is too much discretion

15    in sentencing.  We want uniform application, we want guidelines, we

16    want to know generally where similarly situated people sit so we

17    could advise our clients to go to trial or not go to trial and

18    generally have a better understanding of the law."

19          And the Sentencing Guidelines were imposed, and now as you

20    hear today defense is arguing we shouldn't use the Sentencing

21    Guideline, we want you to exercise your discretion, we want a

22    below-guidelines variance.

23          And, of course, the government recognizes that the

24    Sentencing Guidelines that deal with this particular matter are

25    currently in a bit of a state of flux.

1          THE COURT:  And I --

2          MR. ANTON:  And I agree with that, that they are in flux.

3  And the Commission is currently studying that and the Department of

4  Justice has responded accordingly in numerous letters to the

5  Sentencing Commission.  But there have been no changes in the

6  guidelines as of now.  And the Sentencing Commission's Report that

7  came out is just that at this point, it's a starting point.  It's a

8  springboard for further discussions.  But what we have right now are

9  the Sentencing Guidelines.

10          And I think it's important to also take a look at that

11  chart that defense counsel pointed out at page 12 of her brief

12  because she did cite of course where the guidelines fall, but it

13  also indicates the average sentence that has been imposed.  And if

14  you look at the bottom line, the average sentence comes out to 130

15  months, give or take.

16          But what the average really means is that half the

17  sentencing courts are sentencing above and half the sentencing

18  courts seem to be sentencing below.  And that's important because

19  when the guidelines indicate slightly higher amounts there are

20  courts that are sentencing consistent with the guidelines.  And you

21  have to realize and appreciate the fact that the guidelines do

22  adequately take into consideration the appropriate considerations

23  for sentencing.

24          Are there some who depart downward?  Yes, absolutely.  Are

25  there some Judges who use their discretion and take into account

1    mental health histories or other histories of particular defendants

2    to impose a downward variance?  Yes.  And I think you're going to

3    find that in any sentencing court.

4            But it's important to point out that there are sentencing

5    courts that feel the guidelines are appropriate.  And to come out

6    with a number of 130 months as an average, it necessarily means that

7    there are just as many above 130 as there are below 130.  And that's

8    an important point to point out here in this particular case.

9            I think all parties can really agree with the Sentencing

10   Commission's conclusion that non-production child pornography

11   offenses are not victimless crimes, that the possession, receipt,

12   transportation and distribution of child pornography perpetuates the

13   harm to the victims depicted in the images, validates and normalizes

14   the sexual exploitation of children, and fuels the market thereby

15   leading to further production of images.

16           And what the Commission Report really, and what the

17   Department of Justice is attempting to do in it's response to these

18   guidelines is really make provisions that adequately reflect the

19   seriousness of the crime and the uniqueness of the particular

20   individual.  And that's what they attempted to do previously with

21   the guidelines as they are now, whether it be the use of a computer

22   or the number of enhancements.

23           And there have been a number of suggested -- at least from

24   the Department of Justice -- suggestions put in place in terms of

25   how you can adequately tailor a sentence to a particular defendant.

1  And they mentioned or suggested a couple of specific sentence

2  offense characteristics involving how an offender obtains child

3  pornography, the volume and type of child pornography an offender

4  collects, how long an offender has been collecting child

5  pornography, the attention and care an offender gives to his

6  collection, how an offender use his collection once obtained, how an

7  offender protects himself and his collection from detection, and

8  whether an offender creates, facilitates, or participates in the

9  community centered on child exploitation.

10        THE COURT:  And two pages later in that same letter, the

11  Department agrees that the use of the computer has gone the way of

12  the dinosaur, that that should be eliminated.

13        MR. ANTON:  Correct, Judge.  But they also recommend and

14  what hasn't been mentioned here is, you heard lengthy testimony

15  about the defendant's great lengths to hide his conduct.  There is

16  no current enhancement for encryption or for any other method to

17  evade detection by law enforcement.  And what --

18        THE COURT:  I was going to ask you about that because I

19  think that that is a factor.  I'm not sure where to place it, but --

20  And correct me if I am wrong -- law enforcement, two separate

21  groups, found him because of the algorithm they used that directed

22  them to activity.

23        As I recall they only could access though two images.  So

24  it wasn't -- when the Department and the Commission talk about

25  membership in a group, I think they are talking about folks who

1  actively post on boards and direct others as opposed to the use of a

2  peer-to-peer platform; or did I misremember the evidence as far as

3  how law enforcement got here?

4         MR. ANTON:  No, you are correct.  The evidence indicated

5  that he was captured because he had been actually distributing over

6  peer-to-peer networks, that's correct.  That's how they first came

7  onto his IP address and ultimately landed at his door.

8         THE COURT:  Right.  In this instance under the Department's

9  suggested revisions of the SOCs, I don't think group membership

10  would be his.  You're talking about sophistication --

11         MR. ANTON:  I am talking about offender sophistication.

12  And what you have before you is an IT professional.  Remember, his

13  background indicates that he has been in computers throughout his

14  entire life; he's an IT professional who was involved in peer, yes,

15  -to-peer distribution.  I understand it's not the same type of

16  situation where back ten years ago people were trading child

17  pornography in manila envelopes through offender doors and paper

18  photographs.  You know, times have changed.  But you don't really

19  know at this point exactly where the Commission is going to come out

20  in terms of additional offense characteristics.  There might be some

21  that could help the defendant, but there might also be some that

22  hurt the defendant.  And you don't know that in this particular

23  case.

24         For instance, encryption.  Now, it's pretty serious in this

25  particular instance because it did thwart law enforcement's ability,

1  at least initially, to analyze or reveal a lot of this information;

2  it shows a certain level of sophistication on the defendant's behalf

3  in that he knew exactly what he was doing was wrong; in that he hid

4  it on multiple external hard drives and other thumb drives that are

5  not only easily transportable but were otherwise encrypted and can

6  only be seen by him.  So he knew clearly what he was doing was

7  wrong, and that isn't at this point as the current law states

8  adequately taken into consideration of the guidelines.

9          So just as defense can say they are too high because of use

10 of the computer, there are many other offense characteristics that

11 also could be imputed to the defendant that haven't been included.

12         So where they will ultimately shake out we don't know.  But

13 in terms of duration of the conduct you can see in this particular

14 case he has amassed a collection of 216 videos and 44 photos.  That

15 doesn't just happen overnight.  It clearly indicates an individual

16 who has been surfing the web for quite some time to amass such a

17 collection.

18         There are many different factors I think that the Court

19 needs to consider here in fashioning an appropriate particular

20 sentence.

21         And defense goes to great length to say that he is just the

22 average offender.  Quite honestly, Judge, there is no average

23 offender.  Ever case is different, every collection is different,

24 every crime, although characterized as either possession or

25 distribution of child pornography is the same, no two offenders are

1   exactly alike.  And you can see the cases cited by defense in terms

2   of why they are asking for a downward variance.  Some have serious

3   mental issues, some have serious sexual dysfunction.

4          THE COURT:  Maybe average isn't -- I think it's more the

5   word I just loath, but the heartland when the Commission -- because

6   then there is no guideline.  If you can't identify a heartland group

7   then the guidelines just have no --

8          In that regard, percentage wise Mr. Price in terms of

9   numbers of images and some of the things that defense counsel

10  pointed out comes within the heartland, and the Commission is

11  recognizing that they haven't adequately defined the heartland.

12  Ergo their report and their request to Justice and other actors to

13  give them further empirical information to go forward.  And average

14  I don't think would be a word one would use, in the context of this

15  crime at least.

16         MR. ANTON:  Correct, Judge.  And I'm not saying that the

17  defendant is violent or any other way going to cause future harm.

18  But, I mean, just a mere almost week ago there was a similar

19  situation up in New York where a child pornographer had been

20  released pretrial and cut off his electronic monitor and at the mall

21  he killed a mom and raped her child.

22         I'm not saying that he is that type of offender.  But they

23  come in all different shapes and sizes, you never really know what

24  you're going to get.  He could be a ticking time bomb, he might not

25  be a ticking time bomb.

1          I could, of course, tell the Court, as you're aware, that

2    when he was first put into his pretrial programs dealing with his

3    sexual issues that he was disruptive and ultimately was kicked out

4    of his class for lack of his, I guess, willingness to participate

5    and to acknowledge what he has done is wrong.  Where that will take

6    him down the road I don't know.  But in term of recidivism rates and

7    things like that, I think it's still very much in flux.

8          Just to summarize and to conclude that he is a low risk for

9    recidivism I think is an area that is very scientifically

10   undeveloped at this particular point.  As the Commission realizes,

11   there is just not enough information out there.

12         There really isn't any current valid risk assessment

13   applicable to child pornography offenders, and that the existing

14   data and literature simply don't support the assertion that the

15   recidivism rates for child pornography offenders are overstated.  I

16   just think the evidence isn't quite there yet and nobody knows

17   what's going to happen with these individuals because it is a

18   difficult area.  There are studies that have come out recently

19   sexual offenders have physiological differences in their brains.  It

20   is an evolving area of the law.  So to state with any sort of

21   definitive conclusion that he is a low risk of recidivism is

22   premature and not based on any empirical or statistical data or

23   based on any particular knowledge.

24         But what I can say is, even though the defense points out

25   that this particular defendant and most defendants qualify for all

27

1  the enhancements possible, maybe we are over analyzing it.  Maybe

2  Congress intended it that way.  Maybe Congress wanted to punish

3  these offenders seriously because what they are doing is absolutely

4  important.  So maybe they wanted to --

5       THE COURT:  The problem with that argument, Mr. Anton, is

6  that I had a case earlier where a 35-year-old man lured a

7  12-year-old out of her house and had sex with her, and his guideline

8  range was 108 to 135.

9       Now, I think if you're going to import a logic to the

10 overall sentencing scheme, and I think there is, then you would say

11 Congress would have given direction.  I think that's the point of

12 the Commission Report that statutory rape, actual contact with a

13 minor, are lower, again, average guideline ranges than this.  So I

14 --

15      And Miss Bharathi filed this morning notice with regard to

16 Pugh having said -- What did they say?  -- that note 2G is based on

17 empirical data.  Here it is.  "The Eleventh Circuit has said that

18 the guidelines do not exhibit the deficiencies identified in

19 Kimbrough.  First the guideline range is," at least in part, "from

20 early parole guidelines rather than Congressional mandate.  Here the

21 Sentencing Commission has not made any similar statements as it did

22 with crack."

23      Well, actually, they have.  They just did.  They said in

24 468 long pages we have a situation similar to that of crack where we

25 think the SOC needs to be changed, and even the Department has

1  acknowledge that.

2        Now, you are correct, where we go in terms of how it's

3  grouped.  But I think the point here is that all of the enhancements

4  which were used to guide courts outside of a heartland range are in

5  fact part of the heartland of sex offenders in this instance that

6  the empirical data has revealed.  That's why we are in, as you point

7  out, the state of flux.  And the question is acknowledging the flux

8  what does the Court do.

9        MR. ANTON:  Judge, it's pure speculation at this point as

10 you would know to guess where the Sentencing Commission is going to

11 go.  They could increase the base offense level, the could lower the

12 base offense level.  They could put in additional offense

13 characteristics that increase the level, they might decrease them.

14 I think Your Honor needs to make a determination though based on the

15 facts and circumstances that you have before Your Honor as to where

16 you think an appropriate sentence is.  And what we got based on this

17 particular case is the defendant who is caught with at least 216

18 videos and 44 photos, which based upon the commentary would equate

19 to in excess of 16,000 images of child pornography.  He was

20 convicted of not only possessing these images, but of distributing

21 them through the peer-to-peer network.

22        His images and videos included pseudo-masochistic conduct,

23 including two with bestiality.  Did he use his computer?  Yes.  Did

24 he have way more than 600 images?  Yes.  I mean, this in and of

25 itself I think should give this Court great pause considering the

1  seriousness of this particular offense.

2         This is also a defendant who did not accept responsibility

3  for his actions and has to date still does not accept responsibility

4  for his actions; in fact, argued essentially through defense counsel

5  that this was his son's collection and the son had done this

6  conduct; and even when presented with concrete evidence in terms of

7  text messages that placed his son at a different location at the

8  time this material was being viewed still steadfastly maintained

9  that he was either being set up or that this was his son's behavior;

10        It's an individual who works in the IT profession, who had

11 clearly been accused of this before back in 2000.  Whether

12 ultimately there was a case that could be presented, obviously it

13 never got that far because the hard drive was never analyzed.  But

14 he was certainly caught at work through some sort of IT

15 infrastructure that recognized the fact that there was child

16 pornography placed on his computer systems.  Otherwise that

17 complaint never would have been made.  And clearly he learned from

18 that type of behavior because he took it from a computer network

19 that would have been otherwise monitored by an employer to a home

20 network where he attempted through the use of multiple external hard

21 drives and a very complicated network setup within his house through

22 the use of encryption and screen passwords and hid the stuff on

23 drives and things that only he had particular access to.  So he

24 clearly realized that he was vulnerable back in 2000 and made

25 changes to his conduct to continue, but yet to evade law enforcement

1  detection, or at least and attempt to evade capture while he

2  maintained and most likely increased the number of images and videos

3  that were contained within his collection.

4          Judge, this is a defendant who needs to be punished very

5  severely, and others need to be deterred as well from this, of

6  course, horrifying conduct that only fuels the market for the images

7  and promotes the sexual degradation as you saw in these pictures of

8  babies, of toddlers, of young children, and others who are

9  manipulated by abusive parents, or others who prey on their

10 immaturity and youth for their own sexual gratification.

11         Judge, he is fueling this particular market.  Without the

12 end consumers who constantly trade and share this material, the

13 market would dry up.

14         As part of my submission to Probation, which I believe has

15 been submitted to Your Honor, there is a victim impact statement

16 from the individual who was the victim in the Vicki Series.  I can

17 certainly read that entire statement here in court today, but I do

18 believe it was made already a part of at least your record.

19         THE COURT:  Yes.

20         MR. ANTON:  These crimes and offenses are not just an

21 offense of an individual standing behind a computer screen and

22 taking a look at a picture or a video for their own sexual

23 gratification.

24         These crimes and offenses have serious ramifications and

25 impacts for very vulnerable individuals whose lives will never be

31

1  the same.  We're talking -- I mean, in terms at least of the conduct

2  captured in the first place, I believe the first image that law

3  enforcement came across was an image of a nude female child

4  approximately three to five years of age with her legs lifted to her

5  head, her vaginal area was clearly exposed and adult-sized fingers

6  inserted into her anus.

7          I mean, this is type of behavior and conduct that sticks

8  with an individual and scars them for life, as indicated in the

9  Vicki Series impact statement.

10         The type of behavior that this defendant is participating

11 in is simply repulsive for many reasons, but it has lasting

12 implications on real people.  And I think the Court needs to take

13 that into indication and not just sentence this particular defendant

14 as someone who views something in the privacy of his own home but

15 who took great lengths to hide his stash and then to blame it on

16 others when he was captured.

17         And for those reasons you are certainly welcomed, of

18 course, to exercise your discretion in determining a reasonable

19 sentence, but I would point out that the cases alluded to by the

20 defense were all pleas and all had significant mitigating factors

21 which simply are not present in this case.  This is an educated man

22 who knew exactly what he was doing, who was living with children

23 while participating in this type of behavior.

24         Is the 210 to 262 months too serious?  I don't know.  I

25 don't know that the Commission knows, and I don't know the

1   Guidelines can answer that question other than to say that is

2   current state of the law, that is not an unreasonable sentence in

3   this particular case to sentence an individual under these specific

4   circumstances who went to trail and who denied criminal conduct, in

5   fact blamed it on other people, and who has not accepted

6   responsibility, is it out of the realm of reasonableness to sentence

7   this defendant based upon the facts and circumstances of this case

8   to 210 months?  Absolutely not.

9           But I would ask that Your Honor arrive at a fair and

10  appropriate sentence that takes into consideration not only the

11  Sentencing Guidelines as they exist now, but upon the impact on any

12  potential victims that are out there and that have been humiliated

13  by this conduct and will be humiliated in the future and through the

14  conduct of the defendant himself by amassing such a large load of

15  child pornography and attempting to cover his tracks as well.  Thank

16  you.

17          THE COURT:  Actually, I have been on the bench for awhile.

18  I'm going to take five minutes just to go back and collect myself

19  for a moment.  I will give you brief rebuttal, Miss Bharathi, and

20  then I will hear from Mr. Price.

21          COURTROOM DEPUTY:  All rise, please.

22           (Court recessed at 11:17 a.m.)

23           (Court reconvened at 11:23 a.m.)

24          THE COURT:  Please be seated everyone.

25          Miss Bharathi.

1        MS. BHARATHI:  Yes, Your Honor, just two points on

2   rebuttal.  The first is that with respect to the table that is

3   contained on page 12 of my sentencing memorandum, which the

4   government was just speaking of, I just wanted to correct the

5   statement.  This table does indicate average guideline minimums and

6   average sentences, not mean sentences, difference of course being

7   that a mean would be a midway point, as opposed to an average.  An

8   average in this case obviously supports the arguments that I made in

9   favor of a downward variance.

10        And then the second point I would make is these cases are

11  always horrible and there are always terrible consequences to the

12  minors, and we will be dealing with that at a restitution hearing.

13        So I think for all the reasons previously stated a sentence

14  that is more than double the minimum mandatory is sufficiently harsh

15  to deter future individuals from this type of conduct, punish

16  Mr. Price, as well as take into account a lack of acceptance of

17  responsibility when he exercised his Constitutional right to proceed

18  to trial.

19        THE COURT:  All right, Mr. Price, this is the part of the

20  litigation in this proceeding where you have a chance to speak to me

21  directly if you wish and let me know anything you think important

22  for me to consider in sentencing you.  You take any time you want.

23  You may consult with your lawyer Miss Bharathi.

24        THE DEFENDANT:  Thank you, Your Honor.  I would like to

25  thank my God, my beloved Samantha, my family, my friends, my

1  colleagues, my publisher, my attorneys, all those who supported me,

2  who gave me their hard work, their faith, and their belief in me

3  throughout all of this.  That's all.

4          THE COURT:  Thank you, Mr. Price.

5          Let's start with the discussion of the case in 3553.

6          I mentioned to you, Mr. Anton, that I had a matter with

7  another prosecutor where somebody who had actually had sex with a

8  minor scored out at 108 to 135, and I had these two files on my desk

9  together because I felt that it was difficult to reconcile that fact

10 in a guideline system.  And I think you are correct in stating the

11 seriousness of this offense and that Congress did intend that this

12 offense be punished in a serious fashion.

13         But using that logic you would also assume that other crime

14 would engender more penalty and the fact it does not I think has

15 been recognized by the Commission not only in its 468-page report

16 just on child pornography, but it's December 2012 report on Booker

17 where it notes the statistics in the development of the fraud and

18 child pornography offenses in particular where the Commission

19 recognizes the influence of the guidelines has diminished, because I

20 think in its follow-up report and the executive summary it authored

21 because these guidelines take into account enhancements that are in

22 fact part of heartland activity, the use of the computer, the use of

23 peer-to-peer, the types of images involved, the percentages that

24 Miss Bharathi noted for the Court which are contained in the report,

25 all speak to a guideline regimen that needs to be altered and

1 redressed, and the Department agrees with that.

2         The letter of Miss Anne Gannon, who is the national

3 coordinator for child exploitation, prevention, and interdiction, of

4 March 5 in response to the February 27 report, said that the use of

5 computer should be eliminated.

6         She did, of course, as you note, Mr. Anton, talk about

7 other factors that should be taken into account, such as the

8 sophistication of the offender.  But I think at least it's clear to

9 me that the Guideline calculation in this instance overstates and in

10 this instance does not redress or address the individual who is

11 before the Court.

12         And I don't think that my taking into account the many

13 cases of not only my colleagues in this district but in other

14 districts, and the statistical studies cited by the Commission and

15 the Commission's own efforts would be contrary to Eleventh Circuit

16 case law, including Pugh, which was authored before the Commission

17 had completed its work on child pornography.

18         So the question then becomes what sentence is appropriate

19 in light of what we know about Mr. Price.

20         I agree, Miss Bharathi, that if you were to eliminate

21 certain enhancements, the type of images, the use of the computer,

22 you could bring this down to a guideline range where it would be 135

23 to 168.  But there are some things in this case that need to be

24 taken into account.  And while Mr. Price is -- facially his case is

25 similar to those you cited in this district in that he is a

1  first-time offender, if you take nothing else from this record you

2  know that at least Mr. Price was on notice that child pornography

3  was problematic.  At the very least he was on notice.

4        And he is in fact an extraordinarily sophisticated person

5  in terms of use of computers, and he has throughout this case not

6  merely proclaimed his innocence and exercised his Constitutional

7  right to trial, but endeavored to deflect the focus away from him

8  and onto others, including his 17-year-old son, who, according to

9  his mother, was phoned by a gentleman named Steve who wrote me two

10  letters, one I believe to ask that Mr. Price's curfew be extended

11  for business purposes and another to say Mr. Price is a friend and a

12  good man.

13        This wasn't the first time Mr. Price endeavored to deflect

14  attention.  Again, not assuming the truth of that prior prosecution,

15  not assuming that Mr. Price had child pornography, but indeed he

16  wanted to talk about others putting it on his computer.

17        There was also in the trial some suggestion that his

18  ex-wife might have used remote access in order to place things on

19  his computer.

20        So I find those actions and that conduct problematic.  And

21  I must weigh that against the fact that Mr. Price was a member of

22  our military and he does in fact have no priors, and the over

23  arching governing theme is how serious this is and how much damage

24  this occasions in our society.

25        So having taken all these factors into account, under 3553,

1 having considered the statements of all the parties, the Presentence

2 Report which contains the advisory guidelines and the statutory

3 factors, it is first the finding of the Court that the defendant is

4 not able to pay a fine.  However, restitution is mandatory and will

5 be dealt with at a later date.

6        It is the Judgment of the Court that the defendant James E.

7 Price, III, is committed to the Bureau of Prisons to be imprisoned

8 for a term of 156 months.  The term consists of terms of 156 months

9 as to Count 1 and to Count 2, both to be served concurrently.

10        It is further ordered that the defendant shall pay

11 restitution as will be determined at a later date 90 days hence.

12 Payment will be set out at that time.

13        Upon release from imprisonment, the defendant shall be

14 placed on supervised release for a term of 25 years.  I impose this

15 term of supervised release because of the defendant's failure to

16 successfully engage in treatment and also because I believe the

17 defendant has exhibited conduct which would require an extended term

18 of supervision.  This term consists of 25 years as to Counts 1 and 2

19 to run concurrently.

20        Within 72 hours of release from the custody of Bureau of

21 Prisons, the defendant shall report in person to the probation

22 office in the district where he is released.  While on supervised

23 release he shall not commit any crimes, shall be prohibited from

24 possessing a firearm, shall not possess a controlled substance,

25 shall cooperate in the collection of DNA, and shall comply with the

1   standard conditions of supervised release, including the following

2   special conditions as set forth in the PSI:  Offense related

3   computer restrictions, financial disclosure requirement, employment

4   requirement, self-employment restriction, permissible searches, no

5   unsupervised contact with minors, although I think I am going to

6   modify that to -- I think there has to be a modification for his

7   family although at some point I don't know that they will be minors.

8   But I think there has to be some modification.  We can do that at

9   the restitution hearing with regard to his family.

10          No contact with minors in employment, involvement in youth

11  organization, sex offender treatment, restriction from possession of

12  sexual materials, the Adam Walsh search condition, and sex offender

13  registration.

14          The defendant shall immediately pay to the United States a

15  special assessment of $100 as to Counts 1 and 2, for a total of

16  $200.

17          Total sentence:  156 months imprisonment, 25 years

18  supervised released, and a $200 special assessment, forfeiture of

19  defendant's right, title, and interest in certain properties is

20  ordered.  The United States shall submit a proposed order, if it has

21  not already, within three days of this proceeding.

22          Now that sentence has been imposed, does the defendant or

23  his counsel object to the Court's finding of fact or the manner in

24  which sentence was pronounced?

25          MS. BHARATHI:  If you will just give me one moment.

DAVID S. EHRLICH - OFFICIAL COURT REPORTER

1          THE COURT:  Yes.

2          MR. ANTON:  Prior to seeking any objections from the

3   defense, I would note that it appears that Count 2 carries a

4   statutory maximum of ten years imprisonment, which would mean Your

5   Honor can only impose 120 months.

6          THE COURT:  Right.

7          MR. ANTON:  You have previously imposed 156.  I thinks it

8   needs to be changed to 156 months on Count 1, and 120 months for

9   Count 2, which run concurrent with each other.

10         PROBATION OFFICER:  I'm sorry about that.

11         THE COURT:  No, no.  That was fine.  I noted that, but it

12   was on a different Sticky.  But thank you for bringing it to my

13   attention, Mr. Anton.

14         MS. BHARATHI:  Thank you, Your Honor.

15         We would object to the reasonableness of the sentence at

16   this time.

17         THE COURT:  All right.

18         Mr. Price, you have the right to appeal the conviction and

19   sentence imposed.  Any notice of appeal must be filed within 14 days

20   after the entry of the judgment.  If you are unable to pay the costs

21   of an appeal you may apply for leave to appeal in forma pauperis,

22   meaning the fee would be waived and Miss Bharathi will be appointed

23   to continue to represent you.

24         I'm setting a restitution hearing for Thursday, June 20,

25   2013, at 9 a.m.  If either party has a scheduling conflict just call

1  chambers and let them know.

2          Is there anything further from either the government or the

3  defense?

4          MR. ANTON:  No, Your Honor.  Thank you.

5          MS. BHARATHI:  No, Your Honor.  Thank you.

6          THE COURT:  As to Mr. Price, we are adjourned.

7          (This matter concluded at 11:40 a.m.)

8

9                         **CERTIFICATION**

10

11  I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD

12  OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

13  April 23, 2013                    S/DAVID S. EHRLICH
                                      Official Court Reporter
14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$100** [1] - 38:15
**$200** [2] - 38:16, 38:18

**1**

**1** [5] - 1:6, 37:9, 37:18, 38:15, 39:8
**1,700** [1] - 18:12
**100** [1] - 17:18
**108** [3] - 18:9, 27:8, 34:8
**10:24** [1] - 2:1
**11** [9] - 3:18, 3:19, 3:25, 4:2, 4:19, 6:15, 6:18, 10:15, 13:4
**11-4** [1] - 1:22
**11:17** [1] - 32:22
**11:23** [1] - 32:23
**11:40** [1] - 40:7
**12** [6] - 7:10, 7:17, 10:15, 18:16, 20:11, 33:3
**12-60016** [1] - 2:2
**12-60016-CR-WILLIAMS** [1] - 1:2
**12-year-old** [1] - 27:7
**120** [3] - 16:24, 39:5, 39:8
**13** [1] - 3:23
**130** [4] - 20:14, 21:6, 21:7
**135** [6] - 13:3, 18:9, 19:1, 27:8, 34:8, 35:22
**135-month** [1] - 13:12
**14** [1] - 39:19
**150** [1] - 1:17
**151** [2] - 18:13, 18:22
**156** [5] - 37:8, 38:17, 39:7, 39:8
**16** [1] - 16:15
**16,000** [1] - 28:19
**168** [1] - 35:23
**17-year-old** [1] - 36:8
**1700** [1] - 1:17
**188** [2] - 18:13, 18:22

**2**

**2** [5] - 37:9, 37:18, 38:15, 39:3, 39:9
**20** [1] - 39:24
**2000** [4] - 5:15, 6:1,

9:11, 29:24
**2003** [1] - 13:17
**2006** [1] - 14:22
**2010** [3] - 15:1, 15:4, 18:22
**2011** [1] - 12:17
**2012** [2] - 11:17, 34:16
**2013** [2] - 1:4, 39:25
**210** [5] - 11:1, 13:24, 16:22, 31:24, 32:8
**216** [3] - 11:10, 24:14, 28:17
**22** [1] - 1:4
**25** [4] - 7:22, 37:14, 37:18, 38:17
**262** [3] - 13:24, 16:23, 31:24
**264** [1] - 11:2
**27** [1] - 35:4
**2G** [1] - 27:16
**2G2.2** [2] - 11:16, 14:11

**3**

**302** [2] - 4:24, 6:10
**305** [1] - 1:23
**33128-1810** [1] - 1:22
**33130** [1] - 1:18
**33132** [1] - 1:14
**34** [1] - 18:23
**35-year-old** [1] - 27:6
**3553** [2] - 34:5, 36:25
**3553(a** [5] - 11:22, 13:8, 13:25, 15:9, 15:13
**3553(a)** [1] - 11:9
**37** [1] - 10:25
**38** [1] - 12:18

**4**

**4** [2] - 8:13, 8:18
**4,000** [1] - 18:11
**40** [1] - 17:25
**400** [1] - 1:22
**41** [1] - 13:18
**42** [1] - 12:8
**44** [3] - 11:10, 24:14, 28:18
**468** [1] - 27:24
**468-page** [1] - 34:15
**4th** [2] - 1:14, 8:18

**5**

**5** [1] - 35:4

**507th** [1] - 9:15
**523-5537** [1] - 1:23
**57** [2] - 8:1, 8:7
**58** [2] - 8:1, 8:7

**6**

**6.9** [2] - 13:19, 13:20
**60** [2] - 13:2, 18:9
**600** [1] - 28:24

**7**

**70** [1] - 15:4
**72** [1] - 37:20
**75** [2] - 15:2, 18:14
**75th** [4] - 8:16, 9:7, 9:11, 9:13

**8**

**8** [1] - 14:8
**82** [2] - 8:8, 10:8
**83** [4] - 8:8, 8:9, 10:8, 15:22

**9**

**9** [1] - 39:25
**90** [1] - 37:11
**95** [1] - 14:23
**99** [1] - 1:14

**A**

**a.m** [5] - 2:1, 32:22, 32:23, 39:25, 40:7
**ability** [1] - 23:25
**able** [4] - 9:10, 13:11, 17:18, 37:4
**ABOVE** [1] - 40:12
**ABOVE-ENTITLED** [1] - 40:12
**absolutely** [4] - 15:19, 20:24, 27:3, 32:8
**abuse** [2] - 12:12, 12:13
**abusive** [2] - 16:13, 30:9
**accept** [2] - 29:2, 29:3
**acceptance** [1] - 33:16
**accepted** [1] - 32:5
**access** [4] - 17:18,

22:23, 29:23, 36:18
**accordance** [1] - 19:9
**according** [2] - 11:25, 36:8
**accordingly** [1] - 20:4
**account** [9] - 14:1, 19:2, 20:25, 33:16, 34:21, 35:7, 35:12, 35:24, 36:25
**accurate** [1] - 8:10
**accurately** [1] - 9:4
**accused** [1] - 29:11
**acknowledge** [4] - 3:22, 10:15, 26:5, 28:1
**acknowledged** [1] - 5:7
**acknowledges** [1] - 19:2
**acknowledging** [1] - 28:7
**acting** [1] - 14:19
**actions** [3] - 29:3, 29:4, 36:20
**actively** [1] - 23:1
**activity** [3] - 16:8, 22:22, 34:22
**actors** [1] - 25:12
**actual** [2] - 4:3, 27:12
**Adam** [1] - 38:12
**added** [1] - 5:25
**addendum** [2] - 2:18, 2:19
**addendums** [1] - 10:22
**additional** [3] - 5:24, 23:20, 28:12
**additionally** [5] - 4:19, 8:23, 12:10, 12:13, 12:20
**address** [4] - 3:5, 10:11, 23:7, 35:10
**addressed** [1] - 10:8
**adequately** [7] - 10:7, 19:11, 20:22, 21:18, 21:25, 24:8, 25:11
**adjourned** [1] - 40:6
**administered** [1] - 9:12
**administratively** [1] - 7:8
**admit** [1] - 15:19
**admitted** [2] - 5:20, 7:18
**adopt** [1] - 10:22
**adult** [1] - 31:5

**adult-sized** [1] - 31:5
**advise** [1] - 19:17
**advised** [1] - 11:7
**advisory** [2] - 11:1, 37:2
**affairs** [1] - 9:7
**affect** [1] - 3:2
**affects** [1] - 11:17
**age** [4] - 12:8, 13:18, 16:15, 31:4
**agent** [1] - 4:11
**agents** [1] - 3:23
**ago** [3] - 16:14, 23:16, 25:18
**agree** [4] - 4:20, 20:2, 21:9, 35:20
**agreed** [2] - 4:11, 7:23
**agrees** [5] - 5:20, 10:19, 14:14, 22:11, 35:1
**Airborne** [1] - 9:16
**algorithm** [1] - 22:21
**alike** [1] - 25:1
**allegation** [3] - 5:1, 6:2, 6:12
**allegations** [3] - 5:16, 5:23, 6:5
**alleged** [3] - 4:23, 5:10, 6:22
**allegedly** [1] - 6:19
**alluded** [3] - 14:11, 15:1, 25:18
**almost** [3] - 14:11, 15:1, 25:18
**altered** [1] - 34:25
**amass** [1] - 24:16
**amassed** [1] - 24:14
**amassing** [1] - 32:14
**AMERICA** [1] - 1:3
**amounts** [1] - 20:19
**analyze** [1] - 24:1
**analyzed** [2] - 5:17, 29:13
**analyzing** [1] - 27:1
**Anne** [1] - 35:2
**announce** [1] - 3:12
**answer** [1] - 32:1
**ANTON** [21] - 1:13, 2:5, 2:8, 3:1, 5:12, 7:13, 7:20, 9:5, 10:20, 17:11, 19:12, 20:2, 22:13, 23:4, 23:11, 25:16, 28:9, 30:20, 39:2, 39:7, 40:4
**Anton** [20] - 2:5, 2:7, 2:24, 17:8, 19:11, 27:5, 34:6, 35:6, 39:13
**anus** [1] - 31:6
**anyway** [2] - 5:13,

7:15
appeal [4] - 39:18, 39:19, 39:21
appearance [1] - 3:13
appearances [1] - 2:4
APPEARANCES [1] - 1:11
applicable [1] - 26:13
application [1] - 19:15
applied [2] - 15:2, 15:4
applies [1] - 15:1
apply [3] - 14:11, 14:23, 39:21
appointed [1] - 39:22
appreciate [1] - 20:21
appropriate [8] - 3:4, 15:20, 20:22, 21:5, 24:19, 28:16, 32:10, 35:18
arbitrarily [2] - 15:7, 19:4
arching [1] - 36:23
area [4] - 26:9, 26:18, 26:20, 31:5
argue [1] - 16:8
argued [1] - 29:4
arguing [3] - 4:6, 19:14, 19:20
argument [2] - 3:3, 27:5
arguments [2] - 12:3, 33:8
Army [4] - 8:9, 8:15, 9:16, 9:24
arrive [1] - 32:9
assertion [1] - 26:14
assessment [3] - 26:12, 38:15, 38:18
assigned [7] - 8:15, 8:22, 9:8, 9:11, 9:15, 9:21, 9:25
Assistant [2] - 1:13, 1:17
assume [2] - 10:19, 34:13
assuming [2] - 36:14, 36:15
assumptions [1] - 4:2
Atlanta [4] - 3:20, 3:24, 4:5, 4:17
attempt [1] - 30:1
attempted [2] - 21:20, 29:20

attempting [2] - 21:17, 32:15
attended [2] - 8:10, 9:12
attention [3] - 22:5, 36:14, 39:13
Attorney [1] - 1:13
attorney [8] - 4:20, 4:22, 5:10, 5:22, 6:11, 6:19, 6:22, 7:6
attorneys [2] - 19:14, 34:1
authored [1] - 34:20, 35:16
available [1] - 4:9
average [21] - 12:1, 12:5, 12:8, 12:11, 12:15, 12:22, 18:17, 18:21, 20:13, 20:14, 20:16, 21:6, 24:22, 25:4, 25:13, 27:13, 33:5, 33:6, 33:7, 33:8
avoiding [1] - 15:14
aware [1] - 26:1
awhile [1] - 32:17

**B**

babies [1] - 30:8
background [3] - 12:9, 17:10, 23:13
bare [1] - 6:15
bargaining [1] - 15:18
bargains [1] - 15:20
base [2] - 28:11, 28:12
based [11] - 11:4, 11:19, 18:18, 18:19, 26:22, 26:23, 27:16, 28:14, 28:16, 28:18, 32:7
Battalion [1] - 9:15
battalion [1] - 10:4
Beauvais [2] - 17:6, 18:11
becomes [1] - 35:18
becoming [1] - 8:9
BEFORE [1] - 1:9
began [1] - 2:1
begins [2] - 8:13, 8:19
behalf [4] - 2:5, 2:10, 17:15, 24:2
behavior [5] - 29:9, 29:18, 31:7, 31:10, 31:23
behind [1] - 30:21
belief [1] - 34:2

beloved [1] - 33:25
below [5] - 11:21, 12:24, 19:22, 20:18, 21:7
below-guidelines [1] - 19:22
bench [3] - 5:5, 11:7, 32:17
Benning [1] - 9:15
bestiality [1] - 28:23
better [1] - 19:18
between [1] - 18:6
Bharathi [17] - 2:9, 2:12, 2:17, 3:8, 3:21, 7:10, 10:3, 10:10, 10:15, 11:3, 27:15, 32:19, 32:25, 33:23, 34:24, 35:20, 39:22
BHARATHI [21] - 1:16, 2:9, 2:20, 4:1, 6:17, 6:24, 7:4, 8:3, 8:12, 8:18, 8:21, 10:12, 10:17, 11:6, 16:3, 17:16, 17:22, 33:1, 38:25, 39:14, 40:5
Bharathi's [1] - 6:9
bit [1] - 19:25
blame [1] - 31:15
blamed [1] - 32:5
boards [1] - 23:1
body [1] - 11:13
bomb [2] - 25:24, 25:25
bones [1] - 6:15
Booker [2] - 19:13, 34:16
bottom [1] - 20:14
brains [1] - 26:19
Brian [1] - 9:6
brief [2] - 20:11, 32:19
bring [1] - 35:22
bringing [2] - 11:1, 39:12
broken [1] - 11:19
brought [1] - 9:20
Bureau [2] - 37:7, 37:20
business [1] - 36:11
BY [1] - 1:20

**C**

calculation [2] - 10:24, 35:9
calculations [3] - 9:3, 10:14, 10:16
cam [2] - 16:21, 18:3

cams [1] - 16:24
cannot [1] - 13:25
capability [1] - 16:2
capture [1] - 30:1
captured [3] - 23:5, 31:2, 31:16
care [1] - 22:5
career [1] - 9:11
careful [1] - 11:14
carries [2] - 12:2, 39:3
Case [1] - 1:2
case [46] - 2:2, 3:10, 4:17, 4:25, 5:13, 5:18, 5:25, 7:14, 11:10, 11:18, 11:23, 12:5, 14:11, 15:1, 15:12, 15:25, 16:5, 16:10, 16:21, 17:1, 17:4, 17:16, 17:24, 18:1, 18:3, 18:5, 18:11, 19:2, 19:5, 21:8, 23:23, 24:14, 24:23, 27:6, 28:17, 29:12, 31:21, 32:3, 32:7, 33:8, 34:5, 35:16, 35:23, 35:24, 36:5
cases [12] - 12:18, 14:24, 15:2, 15:5, 16:18, 17:5, 18:17, 19:6, 25:1, 31:19, 33:10, 35:13
Category [3] - 11:1, 12:7, 13:19
category [1] - 12:16
Catherine [1] - 17:2
caught [2] - 28:17, 29:14
centered [1] - 22:9
certain [3] - 24:2, 35:21, 38:19
certainly [5] - 3:4, 9:21, 29:14, 30:17, 31:17
CERTIFICATION [1] - 40:9
CERTIFY [1] - 40:11
chambers [1] - 40:1
chance [1] - 33:20
changed [3] - 23:18, 27:25, 39:8
changes [2] - 20:5, 29:25
chapter [2] - 14:8
characteristics [4] - 22:2, 23:20, 24:10, 28:13
characterization [1] - 9:22
characterize [1] -

10:5
characterized [1] - 24:24
charge [1] - 15:18
charged [1] - 11:14
charges [3] - 13:10, 15:16, 15:18
chart [2] - 18:19, 20:11
checked [1] - 4:12
child [22] - 21:10, 21:12, 22:2, 22:3, 22:4, 22:9, 23:16, 24:25, 25:19, 25:21, 26:13, 26:15, 28:19, 29:15, 31:3, 32:15, 34:16, 34:18, 35:3, 35:17, 36:2, 36:15
childhood [1] - 12:12
children [4] - 18:3, 21:14, 30:8, 31:22
Circuit [2] - 27:17, 35:15
circumstances [5] - 11:23, 12:23, 28:15, 32:4, 32:7
cite [2] - 17:5, 20:12
cited [6] - 3:10, 14:3, 16:17, 25:1, 35:14, 35:25
citizens [1] - 12:7
claim [1] - 4:21
class [1] - 26:4
clear [4] - 4:17, 6:17, 10:4, 35:8
clearly [6] - 24:6, 24:15, 29:11, 29:17, 29:24, 31:5
client [2] - 2:18, 17:15
clients [1] - 19:17
colleagues [2] - 34:1, 35:13
collect [1] - 32:18
collecting [1] - 22:4
collection [9] - 22:6, 22:7, 24:14, 24:17, 24:23, 29:5, 30:3, 37:25
collects [1] - 22:4
college [1] - 12:8
coming [1] - 13:2
commentary [1] - 28:18
Commission [26] - 11:13, 11:16, 11:25, 13:14, 13:17, 14:3, 14:5, 14:20, 15:5, 15:6, 20:3, 20:5, 21:16, 22:24, 23:19,

25:5, 25:10, 26:10, 27:12, 27:21, 28:10, 31:25, 34:15, 34:18, 35:14, 35:16

**Commission's** [8] - 12:21, 15:3, 15:10, 15:22, 19:3, 20:6, 21:10, 35:15

**commit** [1] - 37:23

**committed** [1] - 37:7

**community** [1] - 22:9

**Company** [1] - 9:15

**compared** [1] - 16:17

**complaint** [1] - 29:17

**complete** [1] - 8:25

**completed** [1] - 35:17

**complicated** [1] - 29:21

**comply** [1] - 37:25

**computer** [15] - 14:10, 14:23, 21:21, 22:11, 24:10, 28:23, 29:16, 29:18, 30:21, 34:22, 35:5, 35:21, 36:16, 36:19, 38:3

**computers** [3] - 7:18, 23:13, 36:5

**concerned** [1] - 9:24

**concerns** [1] - 6:10

**conclude** [1] - 26:8

**concluded** [3] - 11:17, 14:5, 40:7

**conclusion** [3] - 15:6, 21:10, 26:21

**concrete** [1] - 29:6

**concurrent** [1] - 39:9

**concurrently** [2] - 37:9, 37:19

**condition** [1] - 38:12

**conditions** [2] - 38:1, 38:2

**conduct** [22] - 4:11, 12:4, 14:8, 14:17, 15:8, 15:15, 15:24, 18:2, 22:15, 24:13, 28:22, 29:6, 29:25, 30:6, 31:1, 31:7, 32:4, 32:13, 32:14, 33:15, 36:20, 37:17

**conducted** [1] - 13:17

**confirm** [2] - 9:8, 9:10

**confirmed** [1] - 8:14

**conflict** [1] - 39:25

**Congress** [4] - 27:2, 27:11, 34:11

**Congressional** [1] - 27:20

**consequences** [1] - 33:11

**consider** [5] - 11:21, 13:1, 15:10, 24:19, 33:22

**consideration** [3] - 20:22, 24:8, 32:10

**considerations** [2] - 11:5, 20:22

**considered** [3] - 8:16, 9:1, 37:1

**considering** [1] - 28:25

**consistent** [1] - 20:20

**consists** [2] - 37:8, 37:18

**constantly** [1] - 30:12

**constitutional** [1] - 11:11

**Constitutional** [2] - 33:17, 36:6

**consult** [1] - 33:23

**consumers** [1] - 30:12

**contact** [9] - 4:22, 9:6, 13:5, 16:9, 16:12, 16:13, 27:12, 38:5, 38:10

**contained** [5] - 4:2, 18:16, 30:3, 33:3, 34:24

**contains** [2] - 5:1, 37:2

**content** [2] - 3:19, 10:22

**context** [3] - 4:23, 11:9, 25:14

**continue** [3] - 6:18, 29:25, 39:23

**continues** [1] - 14:24

**contrary** [1] - 35:15

**controlled** [1] - 37:24

**conversation** [1] - 4:23

**convicted** [2] - 6:2, 28:20

**conviction** [1] - 39:18

**cooperate** [1] - 37:25

**coordinator** [1] - 35:3

**CORRECT** [1] - 40:11

**correct** [11] - 5:12, 10:16, 17:16, 22:13, 22:20, 23:4, 23:6, 25:16, 28:2, 33:4,

34:10

**corrected** [1] - 9:2

**correction** [1] - 8:12

**costs** [1] - 39:20

**counsel** [7] - 2:4, 3:9, 17:24, 20:11, 25:9, 29:4, 38:23

**Count** [5] - 37:9, 39:3, 39:8, 39:9

**country** [1] - 11:19

**Counts** [2] - 37:18, 38:15

**couple** [1] - 22:1

**course** [11] - 5:20, 8:25, 9:1, 9:19, 19:23, 20:12, 26:1, 30:6, 31:18, 33:6, 35:6

**courses** [1] - 10:1

**Court** [24] - 1:20, 2:2, 2:11, 3:10, 11:4, 11:6, 11:21, 13:2, 13:3, 15:9, 18:18, 24:18, 26:1, 28:8, 28:25, 31:12, 32:22, 32:23, 34:24, 35:11, 37:3, 37:6, 40:13

**court** [2] - 21:3, 30:17

**COURT** [42] - 1:1, 2:7, 2:12, 2:15, 2:21, 3:6, 3:17, 5:4, 6:6, 6:21, 7:1, 7:5, 7:16, 7:21, 8:6, 8:17, 8:20, 10:2, 10:13, 10:18, 10:21, 16:1, 17:1, 17:13, 17:20, 19:10, 20:1, 22:10, 22:18, 23:8, 25:4, 27:5, 30:19, 32:17, 32:24, 33:19, 34:4, 39:1, 39:6, 39:11, 39:17, 40:6

**Court's** [1] - 38:23

**courthouse** [1] - 1:21

**COURTROOM** [2] - 2:2, 32:21

**courtrooms** [1] - 14:15

**Courts** [1] - 18:24

**courts** [5] - 20:17, 20:18, 20:20, 21:5, 28:4

**cover** [1] - 32:15

**crack** [2] - 27:22, 27:24

**craft** [1] - 6:7

**creates** [1] - 22:8

**creating** [1] - 16:20

**crime** [6] - 14:14,

21:19, 24:24, 25:15, 34:13

**crimes** [4] - 21:11, 30:20, 30:24, 37:23

**criminal** [5] - 2:3, 10:14, 13:6, 16:8, 32:4

**Criminal** [3] - 10:25, 12:7, 13:19

**curfew** [1] - 36:10

**current** [5] - 10:16, 22:16, 24:7, 26:12, 32:2

**custody** [1] - 37:20

**cut** [1] - 25:20

**Czekanski** [1] - 3:15

**D**

**damage** [1] - 36:23

**data** [4] - 26:14, 26:22, 27:17, 28:6

**date** [2] - 29:3, 37:5, 37:11

**DATE** [1] - 40:13

**DAVID** [1] - 1:20

**days** [2] - 37:11, 38:21, 39:19

**De** [1] - 9:6

**deal** [2] - 14:15, 19:24

**dealing** [3] - 16:4, 26:2, 33:12

**dealt** [1] - 37:5

**December** [2] - 11:17, 34:16

**decrease** [1] - 28:13

**deems** [1] - 15:20

**Defendant** [1] - 1:7

**defendant** [25] - 9:8, 16:11, 16:21, 18:7, 21:25, 23:21, 23:22, 24:11, 25:17, 26:25, 28:17, 29:2, 30:4, 31:10, 31:13, 32:7, 32:14, 37:3, 37:6, 37:10, 37:13, 37:17, 37:21, 38:14, 38:22

**DEFENDANT** [3] - 1:15, 2:14, 33:24

**defendant's** [4] - 22:15, 24:2, 37:15, 38:19

**defendants** [7] - 11:18, 14:7, 15:16, 15:17, 15:23, 21:1, 26:25

**Defender** [1] - 1:17

**Defender's** [1] - 2:10

**defense** [14] - 17:3, 17:23, 19:13, 19:20, 20:11, 24:9, 24:21, 25:1, 25:9, 26:24, 29:4, 31:20, 39:3, 40:3

**deficiencies** [1] - 27:18

**defined** [1] - 25:11

**definitive** [1] - 26:21

**deflect** [2] - 36:7, 36:13

**degradation** [1] - 30:7

**delay** [1] - 2:15

**delete** [1] - 7:15

**Demarco** [1] - 17:5

**denied** [1] - 32:4

**deny** [1] - 5:2

**depart** [1] - 20:24

**Department** [7] - 20:3, 21:17, 21:24, 22:11, 22:24, 27:25, 35:1

**Department's** [1] - 23:8

**depicted** [1] - 21:13

**DEPUTY** [2] - 2:2, 32:21

**designed** [1] - 11:13

**desk** [1] - 34:8

**destroyed** [1] - 7:8

**detection** [2] - 22:7, 22:17, 30:1

**deter** [1] - 33:15

**determination** [1] - 28:14

**determine** [1] - 14:13

**determined** [2] - 14:23, 37:11

**determining** [1] - 31:18

**deterred** [1] - 30:5

**deterrence** [1] - 12:25

**development** [1] - 34:17

**devoted** [1] - 14:9

**difference** [2] - 18:5, 33:6

**differences** [1] - 26:19

**different** [7] - 14:6, 24:18, 24:23, 25:23, 29:7, 39:12

**differentiate** [3] - 14:13, 14:17, 15:8

**difficult** [3] - 19:5, 26:18, 34:9

**diminished** [1] -

34:19
**dinosaur** [1] - 22:12
**direct** [1] - 23:1
**directed** [1] - 22:21
**direction** [1] - 27:11
**directly** [1] - 33:21
**disagree** [1] - 9:21
**disclosure** [2] - 5:14,
38:3
**discretion** [4] -
19:14, 19:21, 20:25,
31:18
**discussed** [1] -
10:21
**discussion** [1] - 34:5
**discussions** [2] -
5:14, 20:8
**disparities** [1] -
15:14
**disparity** [2] - 15:21,
16:16
**dispassionate** [2] -
14:16, 19:7
**disruptive** [1] - 26:3
**distributing** [2] -
23:5, 28:20
**distribution** [12] -
12:6, 12:17, 15:15,
15:16, 15:24, 16:1,
16:22, 18:13, 18:21,
21:12, 23:15, 24:25
**district** [4] - 16:18,
35:13, 35:25, 37:22
**DISTRICT** [3] - 1:1,
1:1, 1:9
**districts** [1] - 35:14
**DIVISION** [1] - 1:2
**divorce** [1] - 8:1
**DNA** [1] - 37:25
**docket** [6] - 17:2,
17:13, 17:17, 17:20,
17:24, 17:25
**done** [5] - 4:14, 7:9,
7:19, 26:5, 29:5
**door** [1] - 23:7
**doors** [1] - 23:17
**double** [1] - 33:14
**down** [2] - 26:6,
35:22
**downward** [6] -
15:11, 15:13, 20:24,
21:2, 25:2, 33:9
**drive** [8] - 5:8, 5:11,
5:16, 6:4, 6:13, 6:20,
6:23, 29:13
**drives** [4] - 24:4,
29:21, 29:23
**dry** [1] - 30:13
**duration** [1] - 24:13
**during** [1] - 4:17

**duty** [1] - 9:14
**dysfunction** [1] -
25:3

## E

**early** [1] - 27:20
**easily** [1] - 24:5
**edit** [1] - 6:15
**edits** [1] - 10:21
**educated** [1] - 31:21
**educational** [1] -
12:9
**efforts** [1] - 35:15
**egregious** [2] - 14:18
**EHRLICH** [2] - 1:20,
40:13
**either** [4] - 24:24,
29:9, 39:25, 40:2
**electronic** [1] - 25:20
**Eleventh** [2] - 27:17,
35:15
**eliminate** [1] - 35:20
**eliminated** [2] -
22:12, 35:5
**empirical** [5] - 11:14,
25:13, 26:22, 27:17,
28:6
**empirically** [1] -
11:20
**employed** [2] - 3:24,
12:8
**employer** [1] - 29:19
**employment** [3] -
38:3, 38:4, 38:10
**encrypted** [1] - 24:5
**encryption** [3] -
22:16, 23:24, 29:22
**end** [5] - 4:13, 7:17,
7:24, 13:13, 30:12
**endeavored** [2] -
36:7, 36:13
**enforcement** [5] -
22:17, 22:20, 23:3,
29:25, 31:3
**enforcement's** [1] -
23:25
**engage** [4] - 15:23,
16:1, 16:9, 37:16
**engaged** [1] - 14:7
**engender** [1] - 34:14
**enhancement** [6] -
5:24, 14:25, 15:1,
15:2, 15:4, 22:16
**enhancements** [7] -
14:10, 14:22, 21:22,
27:1, 28:3, 34:21,
35:21
**entire** [5] - 9:14,

14:8, 17:12, 23:14,
30:17
**entirety** [1] - 10:23
**ENTITLED** [1] -
40:12
**entries** [1] - 17:20
**entry** [2] - 17:25,
39:20
**envelopes** [1] -
23:17
**equate** [1] - 28:18
**ergo** [1] - 25:12
**ESQ** [2] - 1:13, 1:16
**essentially** [4] - 4:2,
4:12, 5:15, 29:4
**evade** [3] - 22:17,
29:25, 30:1
**event** [1] - 5:8
**evidence** [6] - 11:20,
13:21, 23:2, 23:4,
26:16, 29:6
**evolving** [1] - 26:20
**ex** [1] - 36:18
**ex-wife** [1] - 36:18
**exactly** [7] - 9:9,
16:23, 19:6, 23:19,
24:3, 25:1, 31:22
**examination** [5] -
4:9, 4:11, 4:13, 4:15,
7:3
**example** [1] - 4:9
**excess** [1] - 28:19
**executive** [1] - 34:20
**exercise** [2] - 19:21,
31:18
**exercised** [3] -
11:11, 33:17, 36:6
**exhibit** [1] - 27:18
**exhibited** [1] - 37:17
**exist** [1] - 32:11
**existing** [1] - 26:13
**expert** [1] - 11:13
**exploitation** [3] -
21:14, 22:9, 35:3
**exploring** [1] - 17:11
**exposed** [1] - 31:5
**extended** [2] - 36:10,
37:17
**extent** [1] - 5:1
**external** [2] - 24:4,
29:20
**extraordinarily** [1] -
36:4

## F

**faced** [1] - 18:13
**facially** [1] - 35:24
**facilitates** [1] - 22:8

**facility** [1] - 13:11
**facing** [1] - 16:23
**fact** [17] - 3:22, 5:6,
6:1, 8:4, 12:20, 20:21,
28:5, 29:4, 29:15,
32:5, 34:9, 34:14,
34:22, 36:4, 36:21,
36:22, 38:23
**factor** [6] - 13:8,
13:25, 15:9, 15:13,
15:21, 22:19
**factors** [7] - 11:4,
11:22, 24:18, 31:20,
35:7, 36:25, 37:3
**facts** [6] - 4:3, 8:5,
10:23, 19:2, 28:15,
32:7
**factual** [2] - 3:19,
10:22
**factually** [1] - 10:10
**failing** [1] - 34:9
**failure** [1] - 37:15
**fair** [1] - 32:9
**fairness** [1] - 19:9
**faith** [1] - 34:2
**fall** [1] - 20:12
**family** [3] - 33:25,
38:7, 38:9
**far** [3] - 9:24, 23:2,
29:13
**fashion** [1] - 34:12
**fashioning** [1] -
24:19
**favor** [1] - 33:9
**FBI** [7] - 4:4, 4:10,
4:20, 4:21, 4:24, 5:18,
7:8
**FBI's** [1] - 4:6
**February** [1] - 35:4
**Federal** [2] - 1:17,
2:10
**fee** [1] - 39:22
**fell** [1] - 5:18
**felt** [1] - 34:9
**female** [1] - 31:3
**Ferguson** [1] - 1:21
**fight** [1] - 5:22
**figure** [1] - 14:24
**file** [1] - 17:3
**filed** [7] - 2:22, 2:24,
9:2, 11:13, 17:15,
27:15, 39:19
**files** [1] - 34:8
**final** [1] - 18:15
**finally** [1] - 18:10
**financial** [1] - 38:3
**fine** [3] - 7:20, 37:4,
39:11
**fingers** [1] - 31:5
**firearm** [1] - 37:24

**First** [1] - 9:15
**first** [16] - 2:17, 3:18,
3:19, 6:21, 7:5, 9:19,
11:23, 23:6, 26:2,
27:19, 31:2, 33:2,
36:1, 36:13, 37:3
**first-time** [1] - 36:1
**five** [3] - 15:4, 31:4,
32:18
**five-level** [1] - 15:4
**FL** [2] - 1:14, 1:18
**Flagler** [1] - 1:17
**fleshed** [1] - 8:8
**FLORIDA** [2] - 1:1,
1:3
**Florida** [1] - 1:22
**flux** [5] - 19:25, 20:2,
26:7, 28:7
**focus** [1] - 11:22,
36:7
**folks** [1] - 22:25
**follow** [5] - 5:23, 7:7,
34:20
**follow-up** [3] - 5:23,
7:7, 34:20
**following** [1] - 38:1
**FOR** [2] - 1:12, 1:15
**FOREGOING** [1] -
40:11
**forensic** [3] - 4:9,
5:9, 7:3
**forfeiture** [1] - 38:18
**form** [1] - 5:3
**forma** [1] - 39:21
**formulate** [1] - 11:15
**Fort** [1] - 9:14
**forth** [1] - 38:2
**forward** [2] - 12:3,
25:13
**fourth** [1] - 8:13
**fraud** [1] - 34:17
**frequently** [1] -
12:19
**friend** [1] - 36:11
**friends** [1] - 33:25
**FROM** [1] - 40:11
**fueling** [1] - 30:11
**fuels** [2] - 21:14,
30:6
**fully** [1] - 4:4
**future** [3] - 25:17,
32:13, 33:15

## G

**Gannon** [1] - 35:2
**generally** [2] - 19:16,
19:18
**gentleman** [2] - 3:12,

36:9

**Georgia** [1] - 9:15
**girl** [1] - 18:8
**given** [3] - 3:10, 4:17, 27:11
**God** [1] - 33:25
**Gomez** [1] - 3:16
**governing** [1] - 36:23
**government** [6] - 2:24, 10:19, 15:19, 19:23, 33:4, 40:2
**GOVERNMENT** [1] - 1:12
**government's** [2] - 9:5, 17:14
**gratification** [2] - 30:10, 30:23
**great** [4] - 22:15, 24:21, 28:25, 31:15
**group** [3] - 22:25, 23:9, 25:6
**grouped** [1] - 28:3
**groups** [2] - 14:7, 22:21
**guess** [4] - 5:5, 17:3, 26:4, 28:10
**guide** [1] - 28:4
**guided** [1] - 17:9
**guideline** [22] - 3:2, 11:1, 11:17, 11:19, 11:21, 12:24, 15:6, 16:7, 16:9, 16:13, 18:17, 18:21, 18:23, 19:4, 25:6, 27:7, 27:13, 27:19, 33:5, 34:10, 34:25, 35:22
**Guideline** [6] - 10:14, 10:16, 10:23, 13:24, 19:21, 35:9
**Guidelines** [7] - 16:6, 18:9, 19:19, 19:24, 20:9, 32:1, 32:11
**guidelines** [26] - 11:15, 12:18, 14:6, 14:12, 14:18, 14:19, 16:22, 19:7, 19:13, 19:15, 19:22, 20:6, 20:12, 20:19, 20:20, 20:21, 21:5, 21:18, 21:21, 24:8, 25:7, 27:18, 27:20, 34:19, 34:21, 37:2
**guides** [1] - 19:8

# H

**hairs** [1] - 4:16

**half** [2] - 20:16, 20:17
**handled** [1] - 7:23
**happy** [1] - 6:16
**hard** [11] - 5:8, 5:11, 5:16, 6:4, 6:13, 6:20, 6:23, 24:4, 29:13, 29:20, 34:2
**harm** [2] - 21:13, 25:17
**harsh** [1] - 33:14
**head** [1] - 31:5
**health** [3] - 17:6, 17:19, 21:1
**hear** [3] - 11:5, 19:20, 32:20
**heard** [1] - 22:14
**HEARING** [1] - 1:8
**hearing** [4] - 7:24, 33:12, 38:9, 39:24
**heartland** [7] - 25:5, 25:6, 25:10, 25:11, 28:4, 28:5, 34:22
**heinous** [1] - 14:14
**held** [1] - 14:20
**help** [1] - 23:21
**hence** [1] - 37:11
**hid** [2] - 24:3, 29:22
**hide** [2] - 22:15, 31:15
**high** [3] - 15:7, 19:4, 24:9
**higher** [4] - 16:7, 16:12, 16:14, 20:19
**highlight** [1] - 18:5
**himself** [4] - 9:18, 10:5, 22:7, 32:14
**hire** [1] - 5:22
**hired** [4] - 8:11, 8:24, 9:13
**histories** [2] - 21:1
**history** [3] - 10:14, 12:8, 12:12
**History** [3] - 10:25, 12:7, 13:19
**home** [3] - 18:4, 29:19, 31:14
**HON** [1] - 1:9
**honestly** [2] - 7:14, 24:22
**Honor** [22] - 2:5, 2:14, 2:20, 3:14, 4:1, 6:17, 7:4, 8:3, 8:12, 10:12, 10:20, 11:6, 28:14, 28:15, 30:15, 32:9, 33:1, 33:24, 39:5, 39:14, 40:4, 40:5
**horrible** [1] - 33:11
**horrifying** [1] - 30:6

**hours** [1] - 37:20
**house** [2] - 27:7, 29:21
**HR** [1] - 8:23
**huge** [1] - 12:18
**Human** [1] - 8:15
**humiliated** [2] - 32:12, 32:13
**hurt** [1] - 23:22

# I

**idea** [1] - 15:25
**identical** [1] - 15:15
**identified** [1] - 27:18
**identify** [1] - 25:6
**ignore** [1] - 13:25
**III** [4] - 1:6, 2:3, 9:10, 37:7
**image** [2] - 31:2, 31:3
**images** [20] - 4:12, 5:11, 6:12, 6:20, 6:23, 15:1, 16:20, 18:10, 21:13, 21:15, 22:23, 25:9, 28:19, 28:20, 28:22, 28:24, 30:2, 30:6, 34:23, 35:21
**immaturity** [1] - 30:10
**immediate** [1] - 13:9
**immediately** [1] - 38:14
**impact** [5] - 7:22, 9:3, 30:15, 31:9, 32:11
**impacts** [1] - 30:25
**implications** [1] - 31:12
**import** [1] - 27:9
**importance** [1] - 4:17
**important** [12] - 4:16, 9:4, 10:6, 14:12, 15:9, 15:21, 20:10, 20:18, 21:4, 21:8, 27:4, 33:21
**impose** [3] - 21:2, 37:14, 39:5
**imposed** [5] - 19:19, 20:13, 38:22, 39:7, 39:19
**imprisoned** [1] - 37:7
**imprisonment** [3] - 37:13, 38:17, 39:4
**imputed** [1] - 24:11
**IN** [1] - 40:12
**incidents** [1] - 15:15

**include** [1] - 3:4
**included** [5] - 6:13, 6:25, 8:5, 24:11, 28:22
**including** [4] - 28:23, 35:16, 36:8, 38:1
**increase** [2] - 28:11, 28:13
**increased** [1] - 30:2
**indeed** [1] - 36:15
**indicate** [5] - 4:10, 4:11, 5:16, 20:19, 33:5
**indicated** [2] - 23:4, 31:8
**indicates** [7] - 4:8, 12:22, 13:21, 18:20, 20:13, 23:13, 24:15
**indication** [4] - 4:13, 4:14, 17:2, 31:13
**indications** [1] - 5:22
**individual** [13] - 11:11, 11:25, 16:23, 16:25, 18:13, 21:20, 24:15, 29:10, 30:16, 30:21, 31:8, 32:3, 35:10
**individual's** [1] - 17:9
**individuals** [6] - 16:16, 18:25, 19:9, 26:17, 30:25, 33:15
**indoctrination** [1] - 9:12
**infants** [1] - 18:12
**influence** [1] - 34:19
**information** [9] - 6:3, 6:10, 6:16, 9:17, 10:7, 17:25, 24:1, 25:13, 26:11
**infrastructure** [1] - 29:15
**innocence** [1] - 36:6
**innocent** [1] - 4:12
**inserted** [1] - 31:6
**instance** [6] - 23:8, 23:24, 23:25, 28:5, 35:9, 35:10
**instant** [1] - 13:11
**instead** [1] - 6:6
**intend** [1] - 34:11
**intended** [1] - 27:2
**interact** [1] - 16:12
**interdiction** [1] - 35:3
**interest** [1] - 38:19
**interesting** [1] - 19:13
**investigation** [11] - 3:20, 4:5, 4:6, 5:7,

5:9, 5:20, 5:23, 6:4, 6:8, 6:13, 7:7
**invite** [1] - 17:8
**involved** [4] - 5:15, 16:4, 23:14, 34:23
**involvement** [1] - 38:10
**involves** [1] - 11:10
**involving** [1] - 22:2
**IP** [1] - 23:7
**iPad** [2] - 7:11, 7:15
**IS** [1] - 40:11
**issue** [4] - 4:18, 5:3, 17:6
**issues** [3] - 17:19, 25:3, 26:3
**IT** [4] - 23:12, 23:14, 29:10, 29:14
**itself** [1] - 28:25

# J

**JAMES** [1] - 1:6
**James** [3] - 2:3, 9:10, 37:6
**Jr** [1] - 1:21
**JUDGE** [1] - 1:9
**Judge** [17] - 2:8, 2:9, 3:1, 5:12, 7:13, 9:5, 10:17, 17:9, 17:11, 19:12, 19:14, 22:13, 24:22, 25:16, 28:9, 30:4, 30:11
**Judges** [1] - 20:25
**Judgment** [1] - 37:6
**judgment** [1] - 39:20
**June** [1] - 39:24
**jury's** [1] - 12:2
**Justice** [4] - 20:4, 21:17, 21:24, 25:12
**justice** [1] - 13:6
**justified** [1] - 6:5

# K

**KATHLEEN** [1] - 1:9
**keep** [2] - 19:8
**kicked** [1] - 26:3
**killed** [1] - 25:21
**Kimbrough** [1] - 27:19
**kind** [1] - 5:18
**knowledge** [1] - 26:23
**knows** [2] - 26:16, 31:25

## L

lack [2] - 26:4, 33:16
landed [1] - 23:7
language [2] - 6:7, 6:24
large [1] - 32:14
lasting [1] - 31:11
law [13] - 3:10, 10:16, 19:18, 22:17, 22:20, 23:3, 23:25, 24:7, 26:20, 29:25, 31:2, 32:2, 35:16
lawyer [1] - 33:23
leading [1] - 21:15
learned [1] - 29:17
least [12] - 14:18, 21:23, 24:1, 25:15, 27:19, 28:17, 30:1, 30:18, 31:1, 35:8, 36:2, 36:3
leave [2] - 7:25, 39:21
legs [1] - 31:4
lends [1] - 4:24
length [1] - 24:21
lengths [2] - 22:15, 31:15
lengthy [1] - 22:14
letter [1] - 22:10, 35:2
letters [3] - 3:9, 20:4, 36:10
level [7] - 10:25, 15:4, 18:23, 24:2, 28:11, 28:12, 28:13
life [2] - 23:14, 31:8
lifted [1] - 31:4
light [1] - 35:19
likely [1] - 30:2
Lime [1] - 7:18
line [6] - 8:13, 8:18, 18:20, 19:8, 20:14
literally [1] - 17:13
literature [1] - 26:14
litigation [1] - 33:20
lives [1] - 30:25
living [1] - 31:22
load [1] - 32:14
loath [1] - 25:5
location [1] - 29:7
locked [1] - 13:9
lodging [1] - 8:3
logic [2] - 27:9, 34:13
look [6] - 18:6, 18:20, 19:7, 20:10, 20:14, 30:22
looks [1] - 18:22

low [3] - 13:11, 26:8, 26:21
lower [4] - 16:10, 18:25, 27:13, 28:11
lowest [1] - 13:15
lured [1] - 27:6

## M

maintained [2] - 29:8, 30:2
Major [1] - 9:6
majority [1] - 12:6
males [1] - 12:7
mall [1] - 25:20
man [3] - 27:6, 31:21, 36:12
mandate [1] - 27:20
mandatory [3] - 13:2, 33:14, 37:4
manila [1] - 23:17
manipulated [1] - 30:9
manner [1] - 38:23
MARC [1] - 1:13
Marc [1] - 2:5
March [2] - 1:4, 35:4
market [4] - 21:14, 30:6, 30:11, 30:13
masochistic [1] - 28:22
material [2] - 29:8, 30:12
materials [1] - 38:12
Matrajt [1] - 16:21
matrajt's [1] - 17:4
MATTER [1] - 40:12
matter [5] - 2:1, 3:24, 19:24, 34:6, 40:7
maximum [1] - 39:4
mean [12] - 5:6, 5:9, 16:7, 16:9, 16:12, 25:18, 28:24, 31:1, 31:7, 33:6, 33:7, 39:4
meaning [1] - 39:22
meaningful [2] - 14:13, 14:16
means [2] - 20:16, 21:6
medical [1] - 17:6
meet [2] - 16:11, 18:7
member [1] - 36:21
membership [2] - 22:25, 23:9
memo [1] - 14:2, 14:4, 18:16
memorandum [6] - 2:23, 11:3, 11:8,

16:18, 17:3, 33:3
memorandums [1] - 3:10
mental [4] - 17:5, 17:19, 21:1, 25:3
mentioned [4] - 5:13, 22:1, 22:14, 34:6
mere [3] - 12:18, 13:19, 25:18
merely [2] - 6:1, 36:6
messages [1] - 29:7
method [1] - 22:16
MIAMI [1] - 1:2, 1:3
Miami [4] - 1:14, 1:18, 1:22, 1:22
midway [1] - 33:7
might [7] - 4:16, 17:20, 23:20, 23:21, 25:24, 28:13, 36:18
military [2] - 12:14, 36:22
minimum [3] - 13:2, 18:21, 33:14
minimums [2] - 18:17, 33:5
minor [7] - 16:9, 16:13, 16:14, 18:8, 27:13, 34:8
minors [6] - 14:11, 14:22, 33:12, 38:5, 38:7, 38:10
minutes [1] - 32:18
misconstrued [1] - 12:4
misremember [1] - 23:2
Miss [18] - 2:12, 2:17, 3:8, 3:21, 6:9, 7:10, 10:3, 10:10, 10:15, 11:3, 27:15, 32:19, 32:25, 33:23, 34:24, 35:2, 35:20, 39:22
missing [1] - 4:25
mitigating [1] - 31:20
Mobility [1] - 3:24
modification [2] - 38:6, 38:8
modify [1] - 38:6
mom [1] - 25:21
moment [2] - 32:19, 38:25
monitor [1] - 25:20
monitored [1] - 29:19
months [18] - 13:2, 13:4, 16:24, 18:9, 18:14, 18:22, 19:1, 20:15, 21:6, 31:24, 32:8, 37:8, 38:17,

39:5, 39:8
morning [9] - 2:5, 2:7, 2:8, 2:9, 2:12, 2:14, 3:14, 27:15
most [4] - 14:1, 14:18, 26:25, 30:2
mother [1] - 36:9
motion [1] - 7:2
MR [20] - 2:5, 2:8, 3:1, 5:12, 7:13, 7:20, 9:5, 10:20, 17:11, 19:12, 20:2, 22:13, 23:4, 23:11, 25:16, 28:9, 30:20, 39:2, 39:7, 40:4
MS [20] - 2:9, 2:20, 4:1, 6:17, 6:24, 7:4, 8:3, 8:12, 8:18, 8:21, 10:12, 10:17, 11:6, 16:3, 17:16, 17:22, 33:1, 38:25, 39:14, 40:5
multiple [2] - 24:4, 29:20
must [2] - 36:21, 39:19

## N

N.E [1] - 1:14
named [1] - 36:9
national [1] - 35:2
nature [2] - 11:23, 12:23
necessarily [1] - 21:6
need [8] - 5:8, 8:5, 8:15, 8:21, 8:24, 10:11, 30:5, 35:23
needs [9] - 5:7, 8:14, 24:19, 27:25, 28:14, 30:4, 31:12, 34:25, 39:8
net [1] - 12:9
network [4] - 28:21, 29:18, 29:20, 29:21
networks [1] - 23:6
never [14] - 5:17, 5:19, 5:23, 6:14, 9:10, 9:20, 9:25, 10:4, 13:5, 25:23, 29:13, 29:17, 30:25
New [1] - 25:19
next [5] - 6:22, 7:7, 7:10, 13:25, 15:13
nobody [1] - 26:16
non [4] - 12:6, 16:6, 16:10, 21:10
non-production [3] -

16:6, 16:10, 21:10
normalizes [1] - 21:13
note [6] - 3:7, 8:6, 19:13, 27:16, 35:6, 39:3
noted [4] - 3:23, 6:1, 34:24, 39:11
notes [1] - 34:17
nothing [11] - 3:1, 4:21, 5:18, 5:19, 5:23, 6:5, 7:14, 12:15, 12:21, 17:13, 36:1
notice [4] - 27:15, 36:2, 36:3, 39:19
nude [1] - 31:3
number [7] - 2:2, 14:25, 18:10, 21:6, 21:22, 21:23, 30:2
numbers [1] - 25:9
numerous [1] - 20:4

## O

object [3] - 6:24, 38:23, 39:15
objection [12] - 3:18, 3:19, 5:3, 7:10, 8:4, 8:5, 8:7, 8:13, 8:18, 10:3, 10:8, 17:14
objections [5] - 2:22, 3:2, 3:7, 3:11, 39:2
obtained [2] - 4:20, 22:6
obtains [1] - 22:2
obviously [7] - 13:9, 13:24, 16:11, 17:18, 18:2, 29:12, 33:8
occasions [1] - 36:24
OF [3] - 1:1, 1:3, 40:12
offender [22] - 12:1, 12:5, 12:12, 12:15, 12:22, 13:18, 22:2, 22:3, 22:4, 22:5, 22:6, 22:7, 22:8, 23:11, 23:17, 24:22, 24:23, 25:22, 35:8, 36:1, 38:11, 38:12
offenders [11] - 12:7, 12:17, 14:13, 14:17, 15:8, 24:25, 26:13, 26:15, 26:19, 27:3, 28:5
offense [14] - 10:25, 11:24, 12:24, 22:2, 23:20, 24:10, 28:11, 28:12, 29:1, 30:21,

34:11, 34:12, 38:2
**offenses** [6] - 16:6, 18:22, 21:11, 30:20, 30:24, 34:18
**offensive** [1] - 16:8
**offer** [1] - 15:20
**office** [2] - 2:10, 37:22
**Office** [1] - 3:15
**officer** [1] - 9:7
**OFFICER** [2] - 3:14, 39:10
**Official** [2] - 1:20, 40:13
**once** [3] - 8:25, 13:14, 22:6
**one** [11] - 7:24, 8:12, 8:15, 8:19, 8:24, 9:25, 13:15, 16:7, 25:14, 36:10, 38:25
**One** [2] - 8:13, 8:21
**opportunity** [1] - 2:17
**opposed** [2] - 23:1, 33:7
**orally** [1] - 3:5
**order** [2] - 36:18, 38:20
**ordered** [2] - 37:10, 38:20
**organization** [2] - 9:14, 38:11
**otherwise** [3] - 24:5, 29:16, 29:19
**outside** [3] - 12:15, 12:22, 28:4
**overall** [1] - 27:10
**overnight** [1] - 24:15
**overrule** [1] - 8:7
**overstated** [1] - 26:15
**overstates** [1] - 35:9
**overwhelming** [1] - 12:6
**own** [4] - 30:10, 30:22, 31:14, 35:15

**P**

**PAGE** [1] - 1:6
**page** [5] - 8:13, 8:18, 18:16, 20:11, 33:3
**pages** [3] - 10:15, 22:10, 27:24
**paper** [1] - 23:17
**paragraph** [9] - 3:18, 3:19, 3:23, 4:2, 4:19, 6:18, 7:10, 7:17, 7:22
**paragraphs** [3] - 8:1,

8:7, 8:8
**parents** [1] - 30:9
**parole** [1] - 27:20
**part** [8] - 9:16, 18:19, 27:19, 28:5, 30:14, 30:18, 33:19, 34:22
**participate** [2] - 8:11, 26:4
**participates** [1] - 22:8
**participating** [2] - 31:10, 31:23
**particular** [21] - 5:25, 10:1, 19:24, 21:1, 21:8, 21:19, 21:25, 23:22, 23:25, 24:13, 24:19, 26:10, 26:23, 26:25, 28:17, 29:1, 29:23, 30:11, 31:13, 32:3, 34:18
**parties** [4] - 5:14, 7:22, 21:9, 37:1
**party** [1] - 39:25
**passed** [1] - 9:25
**passwords** [1] - 29:22
**Paul** [1] - 3:14
**pauperis** [1] - 39:21
**pause** [1] - 28:25
**pay** [4] - 37:4, 37:10, 38:14, 39:20
**payment** [1] - 37:12
**peer** [18] - 16:2, 16:4, 16:20, 18:2, 23:2, 23:6, 23:14, 23:15, 28:21, 34:23
**peer-to-peer** [8] - 16:2, 16:4, 16:20, 18:2, 23:2, 23:6, 28:21, 34:23
**penalty** [1] - 34:14
**people** [6] - 18:6, 19:16, 23:16, 31:12, 32:5
**perceived** [1] - 13:15
**percent** [7] - 12:18, 13:19, 14:23, 15:2, 15:4, 15:22, 17:19
**percentage** [1] - 25:8
**percentages** [1] - 34:23
**permissible** [1] - 38:4
**perpetuates** [1] - 21:12
**person** [7] - 4:22, 6:12, 6:20, 6:23, 8:23, 36:4, 37:21
**persons** [1] - 5:10
**pertinent** [2] - 14:2,

15:10
**phoned** [1] - 36:9
**photo** [1] - 18:4
**photographs** [2] - 11:10, 23:18
**photos** [2] - 24:14, 28:18
**physically** [1] - 16:11
**physiological** [1] - 26:19
**picture** [1] - 30:22
**pictures** [2] - 18:11, 30:7
**place** [5] - 5:21, 21:24, 22:19, 31:2, 36:18
**placed** [7] - 5:10, 6:12, 6:20, 6:23, 29:7, 29:16, 37:14
**platform** [1] - 23:2
**play** [1] - 4:17
**plea** [1] - 15:20
**plead** [1] - 15:23
**pleadings** [1] - 17:17
**pleas** [1] - 31:20
**pled** [3] - 16:22, 18:13, 18:24
**point** [21] - 3:21, 9:11, 16:18, 18:15, 18:18, 20:7, 21:4, 21:8, 23:19, 24:7, 26:10, 27:11, 28:3, 28:6, 28:9, 31:19, 33:7, 33:10, 38:7
**pointed** [2] - 20:11, 25:10
**points** [3] - 5:25, 26:24, 33:1
**policy** [2] - 14:2, 15:10
**pornographer** [1] - 25:19
**pornography** [17] - 21:10, 21:12, 22:3, 22:5, 23:17, 24:25, 26:13, 26:15, 28:19, 29:16, 32:15, 34:16, 34:18, 35:17, 36:2, 36:15
**position** [3] - 4:6, 8:25, 9:13
**positive** [1] - 12:9
**possess** [1] - 37:24
**possessing** [2] - 28:20, 37:24
**possession** [6] - 15:18, 15:23, 16:22, 21:11, 24:24, 38:11
**possible** [1] - 27:1
**post** [1] - 23:1

**potential** [1] - 32:12
**pre** [2] - 19:13
**premature** [1] - 26:22
**prepubescent** [2] - 14:10, 14:22
**present** [1] - 31:21
**presented** [4] - 11:8, 17:25, 29:6, 29:12
**Presentence** [1] - 37:1
**preserve** [2] - 4:18, 5:2
**preserved** [1] - 10:3
**pretrial** [2] - 25:20, 26:2
**pretty** [1] - 23:24
**prevention** [1] - 35:3
**previous** [1] - 3:9
**previously** [4] - 13:1, 21:20, 33:13, 39:7
**prey** [1] - 30:9
**Price** [40] - 2:3, 2:10, 2:13, 2:22, 3:22, 4:5, 4:18, 4:20, 5:2, 5:7, 6:11, 6:18, 6:22, 7:6, 7:17, 9:8, 9:10, 11:18, 12:1, 12:14, 12:22, 13:15, 15:16, 16:23, 18:23, 25:8, 32:20, 33:16, 33:19, 34:4, 35:19, 35:24, 36:2, 36:11, 36:13, 36:15, 36:21, 37:7, 39:18, 40:6
**PRICE** [1] - 1:6
**Price's** [4] - 2:16, 3:9, 12:4, 36:10
**principles** [1] - 19:9
**priors** [1] - 36:22
**Prisons** [2] - 37:7, 37:21
**privacy** [1] - 31:14
**Probation** [3] - 3:12, 3:15, 30:14
**probation** [1] - 37:21
**PROBATION** [2] - 3:14, 39:10
**problem** [5] - 4:1, 4:8, 14:20, 14:21, 27:5
**problematic** [4] - 3:25, 5:5, 36:3, 36:20
**proceed** [2] - 11:11, 33:17
**proceeding** [2] - 7:24, 33:20, 38:21
**PROCEEDINGS** [1] - 40:12
**proceedings** [1] -

8:2
**process** [1] - 8:9
**proclaimed** [1] - 36:6
**producing** [2] - 15:7, 19:4
**production** [5] - 12:6, 16:6, 16:10, 21:10, 21:15
**profession** [1] - 29:10
**professional** [2] - 23:12, 23:14
**program** [2] - 8:10, 9:12
**programs** [1] - 26:2
**prohibited** [1] - 37:23
**promotes** [1] - 30:7
**pronounced** [1] - 38:24
**properties** [1] - 38:19
**proposed** [1] - 38:20
**prosecuted** [1] - 5:19
**prosecution** [4] - 5:11, 6:14, 7:9, 36:14
**prosecutor** [1] - 34:7
**protecting** [2] - 13:8, 13:13
**protection** [2] - 13:11, 13:22
**protects** [1] - 22:7
**provide** [1] - 14:6
**provisions** [1] - 21:18
**pseudo** [1] - 28:22
**pseudo-masochistic** [1] - 28:22
**PSI** [16] - 2:18, 2:19, 2:23, 3:2, 3:4, 3:18, 4:8, 5:1, 5:7, 6:16, 9:24, 10:4, 10:22, 17:12, 38:2
**Public** [1] - 1:17
**public** [5] - 9:6, 13:8, 13:12, 13:13, 13:22
**publisher** [1] - 34:1
**Pugh** [2] - 27:16, 35:16
**pulled** [1] - 17:24
**punish** [2] - 27:2, 33:15
**punished** [2] - 30:4, 34:12
**pure** [1] - 28:9
**purposes** [1] - 36:11
**put** [5] - 11:9, 17:22, 21:24, 26:2, 28:12

**putting** [1] - 36:16

**Q**

**qualification** [1] - 9:19
**qualify** [1] - 26:25
**quarter** [1] - 12:13
**questioned** [1] - 3:23
**quite** [4] - 7:14, 24:16, 24:22, 26:16

**R**

**ramifications** [1] - 30:24
**range** [8] - 3:2, 11:1, 13:23, 13:24, 27:8, 27:19, 28:4, 35:22
**Ranger** [14] - 8:9, 8:16, 9:1, 9:7, 9:9, 9:11, 9:12, 9:13, 9:18, 9:21, 9:22, 9:25, 10:5
**ranges** [5] - 14:7, 15:7, 19:4, 27:13
**ranging** [1] - 14:17
**rape** [2] - 16:14, 27:12
**raped** [1] - 25:21
**rate** [1] - 13:20
**rates** [3] - 13:16, 26:6, 26:15
**rather** [1] - 27:20
**read** [4] - 3:8, 11:7, 16:3, 30:17
**real** [1] - 31:12
**realize** [2] - 12:11, 20:21
**realized** [1] - 29:24
**realizes** [1] - 26:10
**really** [11] - 3:1, 5:13, 9:3, 9:23, 20:16, 21:9, 21:16, 21:18, 23:18, 25:23, 26:12
**realm** [1] - 32:6
**reason** [2] - 5:17, 14:11
**reasonable** [1] - 31:18
**reasonableness** [2] - 32:6, 39:15
**reasons** [3] - 31:11, 31:17, 33:13
**rebuttal** [3] - 19:12, 32:19, 33:2
**receipt** [2] - 18:21, 21:11
**recent** [1] - 15:11

**recently** [1] - 26:18
**recessed** [1] - 32:22
**recidivism** [7] - 13:15, 13:17, 13:19, 26:6, 26:9, 26:15, 26:21
**recognize** [3] - 4:4, 19:5, 19:6
**recognized** [2] - 29:15, 34:15
**recognizes** [2] - 19:23, 34:19
**recognizing** [2] - 12:2, 25:11
**recommend** [1] - 22:13
**reconcile** [1] - 34:9
**reconvened** [1] - 32:23
**record** [3] - 12:13, 30:18, 36:1
**RECORD** [1] - 40:11
**redress** [1] - 35:10
**redressed** [1] - 35:1
**reference** [1] - 6:11
**reflect** [1] - 21:18
**reflected** [1] - 9:4
**regard** [9] - 2:25, 3:20, 6:7, 10:23, 14:19, 18:15, 25:8, 27:15, 38:9
**regimen** [1] - 34:25
**Regiment** [7] - 8:16, 9:7, 9:11, 9:13, 9:16, 9:21, 9:25
**regimental** [1] - 9:6
**registration** [1] - 38:13
**related** [2] - 12:6, 38:2
**relates** [1] - 15:18
**relative** [1] - 18:10
**release** [6] - 37:13, 37:14, 37:15, 37:20, 37:23, 38:1
**released** [3] - 25:20, 37:22, 38:18
**relevant** [3] - 7:14, 11:22, 19:2
**reliability** [1] - 4:25
**remaining** [1] - 6:16
**remember** [1] - 23:12
**remote** [1] - 36:18
**Report** [4] - 20:6, 21:16, 27:12, 37:2
**report** [19] - 4:3, 4:4, 4:10, 4:20, 4:21, 4:24, 14:3, 14:8, 15:14, 15:22, 16:3, 19:3, 25:12, 34:15, 34:16,

34:20, 34:24, 35:4, 37:21
**REPORTED** [1] - 1:20
**Reporter** [2] - 1:20, 40:13
**reports** [3] - 5:14, 5:16, 5:21
**represent** [2] - 6:18, 39:23
**repulsive** [1] - 31:11
**request** [3] - 12:24, 18:18, 25:12
**require** [1] - 37:17
**required** [1] - 15:9
**requirement** [2] - 38:3, 38:4
**requisite** [1] - 10:1
**resolved** [2] - 7:12, 7:13
**Resources** [1] - 8:15
**respect** [4] - 12:25, 13:8, 13:13, 33:2
**responded** [1] - 20:4
**response** [3] - 9:9, 21:17, 35:4
**responsibility** [4] - 29:2, 29:3, 32:6, 33:17
**restitution** [6] - 7:23, 33:12, 37:4, 37:11, 38:9, 39:24
**restriction** [2] - 38:4, 38:11
**restrictions** [1] - 38:3
**result** [4] - 5:11, 5:24, 5:25, 7:8
**results** [1] - 4:14
**retained** [3] - 6:18, 6:22, 7:6
**reveal** [1] - 24:1
**revealed** [2] - 7:7, 28:6
**review** [1] - 2:18
**revisions** [1] - 23:9
**rights** [1] - 15:20
**rise** [2] - 14:24, 32:21
**risk** [3] - 26:8, 26:12, 26:21
**road** [1] - 26:6
**Room** [1] - 1:22
**RPR** [1] - 1:20
**run** [2] - 37:19, 39:9

**S**

**S/DAVID** [1] - 40:13

**Samantha** [1] - 33:25
**Santos** [1] - 9:6
**saw** [1] - 30:7
**scale** [1] - 14:17
**scars** [1] - 31:8
**scheduling** [1] - 39:25
**scheme** [1] - 27:10
**School** [1] - 9:16
**scientifically** [1] - 26:9
**Scola** [1] - 17:9
**scored** [1] - 34:8
**screen** [2] - 29:22, 30:21
**sealed** [2] - 17:17, 17:20
**search** [1] - 38:12
**searches** [1] - 38:12
**seated** [1] - 32:24
**second** [2] - 2:18, 33:10
**secret** [2] - 16:21, 16:24
**see** [6] - 4:24, 5:21, 12:19, 18:24, 24:13, 25:1
**seeking** [1] - 39:2
**seem** [1] - 20:18
**seized** [2] - 5:16, 6:4
**self** [1] - 38:4
**self-employment** [1] - 38:4
**sentence** [39] - 3:11, 6:21, 6:22, 7:5, 7:6, 7:7, 7:17, 8:13, 8:19, 11:21, 12:24, 12:25, 13:3, 13:5, 13:6, 13:10, 13:12, 13:22, 17:2, 19:1, 20:13, 20:14, 21:25, 22:1, 24:20, 28:16, 31:13, 31:19, 32:2, 32:3, 32:6, 32:10, 33:13, 35:18, 38:17, 38:22, 38:24, 39:15, 39:19
**sentenced** [7] - 12:17, 13:18, 15:16, 15:17, 16:24, 18:9, 18:14
**sentences** [2] - 33:6
**sentencing** [24] - 2:16, 2:23, 11:3, 11:8, 11:14, 14:1, 14:16, 15:7, 16:16, 16:17, 18:25, 19:8, 19:15, 20:17, 20:18, 20:20, 20:23, 21:3, 21:4, 27:10, 33:3, 33:22
**SENTENCING** [1] -

1:8
**Sentencing** [25] - 11:13, 11:16, 11:25, 12:21, 13:14, 13:17, 13:24, 14:3, 14:5, 14:20, 15:10, 15:22, 16:6, 18:8, 19:3, 19:19, 19:20, 19:24, 20:5, 20:6, 20:9, 21:9, 27:21, 28:10, 32:11
**separate** [1] - 22:20
**Series** [2] - 30:16, 31:9
**serious** [8] - 13:6, 23:24, 25:2, 25:3, 30:24, 31:24, 34:12, 36:23
**seriously** [1] - 27:3
**seriousness** [3] - 21:19, 29:1, 34:11
**served** [4] - 10:4, 13:12, 13:22, 37:9
**service** [1] - 12:14
**set** [4] - 7:24, 29:9, 37:12, 38:2
**setting** [1] - 39:24
**setup** [1] - 29:21
**several** [2] - 4:2, 11:4
**severely** [1] - 30:5
**sex** [6] - 18:8, 27:7, 28:5, 34:7, 38:11, 38:12
**sexual** [12] - 12:12, 16:9, 16:12, 16:13, 21:14, 25:3, 26:3, 26:19, 30:7, 30:10, 30:22, 38:12
**shake** [1] - 24:12
**shall** [10] - 37:10, 37:13, 37:21, 37:23, 37:24, 37:25, 38:14, 38:20
**shapes** [1] - 25:23
**Sharaz** [1] - 7:18
**share** [1] - 30:12
**shocked** [1] - 15:24
**shoots** [1] - 18:4
**showed** [2] - 13:18, 15:22
**shown** [1] - 19:3
**shows** [5] - 12:11, 13:14, 18:5, 18:16, 24:2
**side** [1] - 9:5
**significant** [1] - 31:20
**significantly** [1] - 18:25
**similar** [6] - 6:2,

**stash** [1] - 31:15
**state** [5] - 2:4, 19:25, 26:20, 28:7, 32:2
**statement** [8] - 4:19, 4:23, 5:2, 6:19, 30:15, 30:17, 31:9, 33:5
**statements** [5] - 12:3, 14:2, 15:11, 27:21, 37:1
**states** [3] - 4:4, 4:22, 24:7
**STATES** [3] - 1:1, 1:3, 1:9
**States** [6] - 1:13, 2:3, 2:6, 3:15, 38:14, 38:20
**stating** [1] - 34:10
**statistic** [1] - 12:19
**statistical** [2] - 26:22, 35:14
**statistically** [1] - 13:15
**statistics** [2] - 18:16, 34:17
**statutory** [4] - 16:14, 27:12, 37:2, 39:4
**steadfastly** [1] - 29:8
**steps** [1] - 16:11
**Steve** [1] - 36:9
**sticks** [1] - 31:7
**Sticky** [1] - 39:12
**still** [3] - 26:7, 29:3, 29:8
**Street** [2] - 1:14, 1:17
**stretching** [1] - 9:19
**strikingly** [1] - 6:2
**studied** [4] - 11:16, 14:5, 14:20, 15:5
**studies** [3] - 11:14, 26:18, 35:14
**study** [6] - 12:11, 12:21, 13:14, 13:18, 15:3, 15:11
**studying** [1] - 20:3
**stuff** [1] - 29:22
**subject** [1] - 4:5
**subjected** [1] - 18:12
**submission** [1] - 30:14
**submissions** [1] - 3:8
**submit** [1] - 38:20
**submitted** [1] - 30:15
**subsequently** [1] - 4:12
**substance** [2] - 12:12, 37:24
**substantially** [2] - 14:6, 14:7
**successfully** [1] -

14:8, 25:18, 27:21, 27:24, 35:25
**similarly** [3] - 14:25, 16:17, 19:16
**simply** [6] - 8:3, 8:25, 15:17, 26:14, 31:11, 31:21
**sit** [1] - 19:16
**situated** [2] - 16:17, 19:16
**situation** [4] - 17:5, 23:16, 25:19, 27:24
**sizeable** [1] - 13:4
**sized** [1] - 31:5
**sizes** [1] - 25:23
**slightly** [1] - 20:19
**SOC** [1] - 27:25
**society** [1] - 36:24
**SOCs** [1] - 23:9
**someone** [2] - 13:5, 31:14
**son** [3] - 29:5, 29:7, 36:8
**son's** [2] - 29:5, 29:9
**sophisticated** [1] - 36:4
**sophistication** [4] - 23:10, 23:11, 24:2, 35:8
**sorry** [4] - 2:15, 8:17, 17:22, 39:10
**sort** [3] - 4:25, 26:20, 29:14
**sound** [1] - 11:20
**SOUTHERN** [1] - 1:1
**Sowmya** [1] - 2:9
**SOWMYA** [1] - 1:16
**speaking** [1] - 33:4
**special** [3] - 38:2, 38:15, 38:18
**specific** [2] - 22:1, 32:3
**specifically** [2] - 8:23, 14:6
**speculation** [1] - 28:9
**speculative** [1] - 4:3
**spent** [2] - 9:14, 14:1
**splitting** [1] - 4:16
**springboard** [1] - 20:8
**squarely** [3] - 12:1, 12:5, 12:14
**standard** [2] - 16:2, 38:1
**standing** [2] - 3:15, 30:21
**start** [2] - 6:22, 34:5
**started** [1] - 5:22
**starting** [1] - 20:7

37:16
**sufficiently** [1] - 33:14
**suggest** [1] - 17:21
**suggested** [3] - 21:23, 22:1, 23:9
**suggestion** [1] - 36:17
**suggestions** [1] - 21:24
**Suite** [1] - 1:17
**summarize** [1] - 26:8
**summary** [1] - 34:20
**supervised** [5] - 37:14, 37:15, 37:22, 38:1, 38:18
**supervision** [1] - 37:18
**support** [4] - 3:10, 12:24, 15:11, 26:14
**supported** [2] - 4:3, 34:1
**supports** [2] - 15:13, 33:8
**supposed** [2] - 14:12, 19:8
**surfing** [1] - 24:16
**surprising** [1] - 12:10
**sustain** [1] - 10:8
**system** [2] - 13:6, 34:10
**systems** [1] - 29:16

## T

**table** [2] - 33:2, 33:5
**tailor** [1] - 21:25
**tasked** [1] - 14:15
**team** [1] - 5:9
**ten** [4] - 5:17, 13:6, 23:16, 39:4
**term** [9] - 12:1, 13:9, 26:6, 37:8, 37:14, 37:15, 37:17, 37:18
**terms** [15] - 3:2, 3:9, 9:24, 10:22, 17:9, 21:24, 23:20, 24:13, 25:1, 25:8, 28:2, 29:6, 31:1, 36:5, 37:8
**terrible** [2] - 14:14, 33:11
**testimony** [1] - 22:14
**text** [1] - 29:7
**THAT** [1] - 40:11
**THE** [49] - 1:9, 1:12, 1:15, 2:7, 2:12, 2:14, 2:15, 2:21, 3:6, 3:17, 5:4, 6:6, 6:21, 7:1,

7:5, 7:16, 7:21, 8:6, 8:17, 8:20, 10:2, 10:13, 10:18, 10:21, 16:1, 17:1, 17:13, 17:20, 19:10, 20:1, 22:10, 22:18, 23:8, 25:4, 27:5, 30:19, 32:17, 32:24, 33:19, 33:24, 34:4, 39:1, 39:6, 39:11, 39:17, 40:6, 40:11, 40:12
**theme** [1] - 36:23
**thereby** [1] - 17:14
**thinks** [1] - 39:7
**thousands** [1] - 11:18
**three** [4] - 16:7, 16:19, 31:4, 38:21
**throughout** [4] - 14:3, 23:13, 34:3, 36:5
**thumb** [1] - 24:4
**Thursday** [1] - 39:24
**thwart** [1] - 23:25
**ticking** [2] - 25:24, 25:25
**title** [1] - 38:19
**TO** [1] - 1:6
**to-peer** [2] - 23:15
**today** [6] - 3:3, 3:5, 6:3, 12:2, 19:20, 30:17
**toddlers** [2] - 18:12, 30:8
**together** [1] - 34:9
**took** [5] - 5:21, 9:19, 11:6, 29:18, 31:15
**top** [1] - 18:20
**total** [3] - 10:25, 38:15, 38:17
**touch** [3] - 16:13, 18:6
**tour** [1] - 9:14
**tracks** [1] - 32:15
**trade** [1] - 30:12
**trading** [1] - 23:16
**trail** [1] - 32:4
**TRANSCRIPT** [1] - 40:11
**transport** [1] - 18:21
**transportable** [1] - 24:5
**transportation** [1] - 21:12
**traveling** [1] - 16:8
**treatment** [2] - 37:16, 38:11
**trial** [8] - 4:18, 11:12, 12:20, 19:17, 33:18, 36:7, 36:17

**tried** [1] - 18:7
**truth** [1] - 36:14
**try** [2] - 14:16, 18:6
**two** [9] - 14:7, 22:10, 22:20, 22:23, 24:25, 28:23, 33:1, 34:8, 36:9
**type** [10] - 7:23, 22:3, 23:15, 25:22, 29:18, 31:7, 31:10, 31:23, 33:15, 35:21
**types** [2] - 16:8, 34:23
**typical** [3] - 4:24, 12:11, 16:10

## U

**U.S** [2] - 12:7, 14:2
**ultimately** [4] - 23:7, 24:12, 26:3, 29:12
**unable** [1] - 39:20
**under** [5] - 10:16, 16:14, 23:8, 32:3, 36:25
**undeveloped** [1] - 26:10
**uniform** [1] - 19:15
**uniqueness** [1] - 21:19
**unit** [3] - 9:9, 9:20, 10:1
**UNITED** [3] - 1:1, 1:3, 1:9
**United** [6] - 1:13, 2:3, 2:6, 3:15, 38:14, 38:20
**unknown** [4] - 5:10, 6:12, 6:19, 6:23
**unlikely** [1] - 13:10
**unreasonable** [1] - 32:2
**unsupervised** [1] - 38:5
**untruthful** [1] - 10:6
**unwarranted** [3] - 15:14, 15:21, 16:16
**up** [10] - 3:7, 5:23, 6:5, 7:7, 8:25, 13:9, 25:19, 29:9, 30:13, 34:20
**US** [1] - 9:16

## V

**vaginal** [1] - 31:5
**valid** [1] - 26:12
**validates** [1] - 21:13

**variance** [6] - 15:11, 15:13, 19:22, 21:2, 25:2, 33:9
**vary** [1] - 11:4
**verdict** [1] - 12:2
**Versus** [1] - 1:5
**versus** [4] - 2:3, 16:20, 18:2, 18:6
**Vicki** [2] - 30:16, 31:9
**victim** [3] - 7:22, 30:15, 30:16
**victimless** [1] - 21:11
**victims** [2] - 21:13, 32:12
**video** [2] - 18:3, 30:22
**videos** [8] - 11:10, 16:20, 18:11, 18:12, 24:14, 28:18, 28:22, 30:2
**viewed** [1] - 29:8
**views** [1] - 31:14
**violent** [1] - 25:17
**virtually** [1] - 15:15
**Voluck** [1] - 13:1
**volume** [1] - 22:3
**VOLUME** [1] - 1:5
**Vourelle** [1] - 18:7
**vulnerable** [2] - 29:24, 30:25

## W

**waived** [1] - 39:22
**walk** [1] - 11:7
**Walsh** [1] - 38:12
**wants** [1] - 9:18
**wayside** [1] - 5:19
**web** [4] - 16:21, 16:24, 18:3, 24:16
**week** [1] - 25:18
**weigh** [1] - 36:21
**weight** [1] - 12:2
**Weiner** [1] - 17:15
**welcomed** [1] - 31:17
**well-within** [1] - 15:19
**white** [1] - 12:7
**wife** [1] - 36:18
**Wilkie** [1] - 1:21
**WILLIAMS** [1] - 1:9
**willingness** [1] - 26:4
**Wire** [1] - 7:18
**wise** [1] - 25:8
**wish** [1] - 33:21

**wishes** [1] - 10:5
**word** [2] - 25:5, 25:14
**works** [1] - 29:10
**worth** [3] - 9:23, 12:9
**wrote** [1] - 36:9

## Y

**year** [1] - 6:1
**years** [9] - 5:17, 13:4, 13:7, 23:16, 31:4, 37:14, 37:18, 38:17, 39:4
**York** [1] - 25:19
**young** [1] - 30:8
**youth** [2] - 30:10, 38:10