UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-60016-CR-WILLIAMS

UNITED STATES OF AMERICA

v.

JAMES E. PRICE, III.,

    Defendant.
_____/

## GOVERNMENT'S MEMORANDUM REGARDING RESTITUTION

On July 2, 2013, this Court will conduct a hearing on the issue of restitution in response to a claim filed by "Vicky[1]," a victim of the offenses for which the Defendant was convicted and sentenced. This claim is supported by appropriate and sufficient evidence, and the Government believes that there is a legal basis upon which the Court can and should order restitution.

## DISCUSSION

### I. Restitution is mandatory for offenses relating to material involving the sexual exploitation of children.

The Mandatory Restitution for Sex Crimes section of the Violence Against Women Act of 1994, codified at 18 U.S.C. § 2259, provides for mandatory restitution "for any offense under this chapter [Chapter 110]." See 18 U.S.C. § 2259(a). Chapter 110, entitled "Sexual Exploitation and Other Abuse of Children," includes Prices' two crimes of conviction: Distribution and Possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B). "The issuance of a restitution order under this section is mandatory." 18 U.S.C.

---

[1] "Vicky" is not the true name of the victim in the above mentioned case. She has been identified as "Vicky" for her protection, and all images associated with her sexual abuse are referred to as the "Vicky series" by investigators.

1

§ 2259(b)(4).  Accordingly, courts have repeatedly affirmed the mandatory character of restitution for crimes involving the sexual exploitation of minors, as outlined in offenses under Chapter 110 of the United States Code.  E.g., United States v. Searle, 65 Fed. Appx. 343 (2nd Cir. 2003) ("18 U.S.C. § 2259 provides that a person convicted of sexual exploitation of a child must pay restitution."); United States v. Julian, 242 F.3d 1245 (10th Cir. 2001); United States v. Danser, 270 F.3d 451 (7th Cir. 2001); United States v. Laney, 189 F.3d 954 (9th Cir. 1999). Courts have also awarded restitution for a variety of the costs enumerated in the statutory provision, including past and future counseling, vehicles to transport an adopted abused child, and house remodeling expenses.  Laney, 189 F.3d at 966 (finding "Section 2259 is phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse."); Searle, 65 Fed. Appx. at 343.

As this area of the law develops, courts have also properly applied Section 2259 in awarding restitution to victims of offenses involving sexual exploitation of children or child pornography, even when the defendant did not personally participate in the sexual exploitation of the minor(s).  See United States v. Staples, 2009 WL 2827204, (S.D. Fla., 2009, Case No. 09-14002-CR-Moore).  In the Staples case, the defendant was ordered to pay restitution to the victim whose child pornography images were received and/or possessed by the defendant, even though the defendant did not participate in the production of those images.[2]  For example, in Staples, the Defendant was convicted of Possession of Child Pornography in violation of 18

---

[2] However, in a similar case, U.S. v. Faxon, 689 F.Supp.2d 1344, S.D. Fla. 2010, Judge Graham, while recognizing that Judge Moore had reached the opposite conclusion in U.S. v. Staples, 2009 WL 2827204, (S.D. Fla., 2009, Case No. 09-14002-CR-Moore), ruled that the Government had not met its burden in establishing causation, and therefore denied restitution to "Vicky."  However, in a similar case, United States v. Fluitt, 09-14014-CR-Graham, Judge Graham entered a Joint Restitution Order (DE 85) wherin he awarded "Vicky" $147,000 in restitution, comprised of $128,005 in future counseling expenses, $19,497.91 for the cost of her forensic evaluation, and $3,500 in attorney's fees.

U.S.C. 2252A(a)(5)(B) and Distribution of Child Pornography in violation of 18 U.S.C. 2252A(a)(2). Post-conviction, the government sought restitution on behalf of "Amy," a minor who was identified in six (6) pornographic images recovered on the Defendant's computer. After a lengthy restitution hearing, Judge Moore ordered restitution in the amount of $3,680,153.00, and in so holding, specifically held that not only was "Amy" a victim as defined in the Mandatory Restitution for Sex Crimes section of the Violence Against Women Act of 1994 as codified in Title 18, United States Code, Section 2259, but that she was entitled to the full amount of her losses, including "among other things, any costs incurred by the victim for medical services relating to physical, psychiatric, or psychological care and lost income." Id. at *3. Most importantly, in so holding, the court stated that "the fact that the victim, "Amy," did not have personal knowledge of this defendant's activities at the time she was evaluated by Dr. Silberg does not negate the harm that "Amy" suffered and continues to suffer as a result of this defendant's possession of images depicting her sexual abuse as a child." Id. Moreover, in United States v. McDaniel, 631 F.3d 1204 (11th Cir. 2011), the Eleventh Circuit upheld a $12,700 restitution award to "Vicky." In so holding, the court specifically rejected the defense argument that the defendant's conduct in possessing these images did not proximately cause "Vicky's" harm, and affirmed the finding of the District Court.

Not surprisingly, courts have also routinely awarded restitution in cases where a defendant also participated in the sexual exploitation that produced the material or child pornography. In Searle, for example, the defendant was convicted of three counts of receipt of child pornography and four counts of production of the same child pornography. 65 Fed. App'x at 344-45; See also Danser, 270 F.3d at 453 ($304,000 awarded against defendant convicted of

3

production of sexually explicit photographs, interstate travel with intent to engage in sexual act with minor, and possession of three or more items of child pornography).

Additionally, many other cases in which restitution was awarded do not involve possession of material or child pornography at all, but rather sexual exploitation. In Julian, the court ordered restitution of $3,400 for counseling after a conviction for sexual abuse and exploitation. Julian, 242 F.3d at 1245. The defendant was not convicted for possession of pornographic materials. See, e.g., United States v. Estep, 378 F.Supp.2d 763 (E.D. Ky. 2005) (imposing restitution upon defendant convicted of sexual abuse and exploitation of children). The Ninth Circuit in Laney awarded restitution to a victim of child pornography from a defendant who pled guilty to distribution of material involving a different victim. Laney, 189 F.3d at 954. Laney, however, did not break new ground, because the defendant was also convicted of conspiracy to sexually exploit the victim to whom restitution was awarded. Id.

The case law, therefore, provides many examples of courts properly applying Section 2259 by imposing mandatory restitution upon defendants found guilty of offenses relating to material involving sexual exploitation of children and child pornography, whether through direct exploitation of minors, possession of material involving their sexual exploitation or its receipt and/or distribution.

### a. **Chapter 110 Directs that Restitution is Mandatory for All Offenses of Sexual Exploitation of Children.**

An analysis of Section 2259 reveals that imposition of restitution for all offenses of sexual exploitation and other abuse of minors is proper. The text of Section 2259 clearly provides for mandatory restitution for all such offenses, including offenses relating to material involving sexual exploitation of minors and child pornography. The statute directs that "the

4

court *shall* order restitution for any offense under this chapter." 18 U.S.C. § 2259(a) (emphasis added). The crimes in the relevant chapter, Chapter 110, entitled Sexual Exploitation and Other Abuse of Children, include sexual exploitation of children (§ 2251), selling or buying of children (§ 2251A), certain activities relating to material involving sexual exploitation of children (§ 2252), certain activities relating to child pornography (§ 2252A), various internet abuses of children (§ 2252B-2252C), and other acts. The offenses for which this defendant was convicted are found at 18 U.S.C. §§ 2252 and 2252A which are within Chapter 110.

Damages under Chapter 110 are available for the "full amount of the victim's losses." Id. at § 2259(b)(1). The term victim "means the individual harmed as a result of a commission of a crime under this chapter." Id. at § 2259(c). The statute defines losses to include any costs incurred by the victim for medical services relating to physical, psychiatric, or psychological care; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorneys' fees, as well as other costs incurred; and any other losses suffered by the victim as a proximate result of the offense. Id. at § 2259(b)(3).

In sum, the statutory text is clear, and it provides for mandatory restitution for all offenses in the relevant chapter, including the offenses for which the defendant has been convicted.

      b.    **Congress Intended a Broad Restitution Remedy.**

In addition to the broad textual provisions referenced above, several other indications of Congressional intent support the view that restitution is widely available. First, Congress generously provided mandatory restitution for the "full amount of the victim's losses." Id. at § 2259(b)(1); see Laney, 189 F.3d at 966 ("Section 2259 is phrased in generous terms").

5

Additionally, Congress chose not to provide exceptions for impoverished defendants. <u>Compare</u> 18 U.S.C. § 3663 (allowing court to take into consideration status of defendant) <u>and</u> 18 U.S.C. § 2259(b) (denying such discretion). These choices indicate that Congress intended for restitution to be broadly available, and that the ability of a defendant to make a payment does not control whether an order of restitution is properly entered.

The legislative history of the most recent amendment to the chapter on offenses of sexual exploitation and other sexual abuse of children demonstrates an awareness of the harm to victims caused by possessors, receivers and/or distributors of child pornography. The Senate Report specified two types of harm attributable to child pornography. First, Congress found that child victims are harmed by the continuous circulation of their images:

> Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography. * * * It is the fear of exposure and the tension of keeping the act secret that seems to have the most profound emotional repercussions.

S. Rep. 104-358, at 14 (1996) (quoting <u>New York v. Ferber</u>, 458 U.S. 747 (1982)). Second, Congress found that because "[c]hild pornography can also be used to blackmail victims of sexual abuse," the "existence of sexually explicit photographs or other materials . . . can effectively silence a victim into not revealing the abuse to parents or the authorities." <u>Id</u>. Both of these harms are caused by the offenses of possession, receipt, and distribution of images. Congressional attention on these harms, therefore, confirms that Congress intended what it stated in the text: mandatory restitution applies to all the offenses in chapter 110.

### c.     **The Existence of Child Pornography Harms its Victims**

The Supreme Court has consistently acknowledged that the distribution and use of child pornography harms minor victims whose sexual abuse is depicted and recorded for eternity.  In Ferber, the Court upheld a ban on the distribution and sale of child pornography, because such activities were "intrinsically related" to sexual abuse.  The Court stated that in addition to the State having an interest in closing the economic network for these images, "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation."  Ferber, 458 U.S. at 747.  As the Court later noted in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2005), "each new publication of the speech would cause new injury to the child's reputation and emotional well-being."  This rationale – that the very existence of child pornography harms the child victim – confirms that the end user of materials involving sexual exploitation of children or child pornography harms the victim even if he does not commit sexual exploitation in itself.

Courts have affirmed the existence of this harm caused by the end user in the sentencing context.  In United States v. Sherman, 268 F.3d 539 (7th Cir. 2001), for example, the Seventh Circuit held that multiple counts of receiving, shipping, and possessing child pornography in interstate or foreign commerce in violation of 18 U.S.C. § 2252A could not be aggregated for purposes of calculating the guidelines sentence, because they each harmed a different victim. The court reasoned that "[t]he possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters."  Other circuits have echoed this interpretation of the harms of child pornography.  United States v. Tillmon, 195 F.3d 640 (11th Cir. 1999); United States v. Norris, 159 F.3d 926, 929 (5th Cir. 1998); United States v.

7

Hibbler, 159 F.3d 233, 236-37 (6th Cir. 1998); United States v. Boos, 127 F.3d 1207 (9th Cir. 1997); United States v. Ketcham, 80 F.3d 789 (3d Cir. 1996); United States v. Rugh, 968 F.2d 750 (8th Cir. 1992). *See also* United States v. Toler, 901 F.2d 399 (4th Cir. 1990).

## II.     "Vicky" is a "Victim"

The restitution statute requires the defendant to pay "the victim . . . the full amount of the victim's losses."  18 U.S.C. § 2259(b)(1).  The statute defines a "victim" as "the individual harmed as a result of a commission of a crime" under Chapter 110.  *See* 18 U.S.C. § 2259(c). Under this definition, "Vicky" is a "victim" and was caused injury by Prices' possession and distribution of pornographic images of her as a child.  In fact, the Eleventh Circuit in United States v. McDaniel, 631 F.3d 1204 (11th Cir. 2011) has already held that "Vicky" is a victim under Section 2259(c), wherein the Court specifically stated that "the minors depicted in child pornography are the 'primary victims' not only when the photographs are taken, 'but also when they are subsequently transported or distributed from one person to another.'" Id. at 1208 *citing* United States v. Tillmon, 195 F.3d 640, 644 (11th Cir. 1999).

As previously mentioned, the harm to children depicted in child pornography was recognized in New York v. Ferber, 458 U.S. 747, 758, 102 S.Ct. 3348, 3355 (1982).  In Ferber, the Supreme Court noted that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child."  Id. (citations omitted). Specifically, child victims of sexual exploitation may be "unable to develop healthy affectionate relationships in later life, [or] have sexual dysfunctions. . . .  Sexual molestation by adults is often involved in the production of child sexual performances.  When such performances are recorded and distributed, the child's privacy interests are also invaded." Ferber, 458 U.S. at 758 n.9, 102 S.Ct. at 3355 n. 9 (citations omitted).

8

The Ferber Court also observed that the "materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." 458 U.S. at 759, 102 S.Ct. at 3355.

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.' . . . '[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions. . . . The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child.

Id., n. 10 (citations omitted).

Twenty-three years later, the Supreme Court again acknowledged the harm to victims depicted in child pornography and observed that a new harm is caused each time the images are shared with someone else. Ashcroft v. Free Speech Coalition, 535 U.S. 234, 249, 122 S.Ct. 1389, 1401 (2005) (noting that "as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being.").

This Court has held that the "primary victims" of offenses involving the distribution and possession of child pornography are the children depicted in the pornography. United States v. Tillmon, 195 F.3d 640, 643 (11th Cir. 1999). Although Tillmon involved the grouping rules of the child pornography-related Sentencing Guidelines, it is particularly instructive. This Court

9

rejected the defendant's argument that, although the minor depicted was victimized when the photographs were taken, the distribution of the photograph did not further harm that child:

> Although an argument can be made that the production of child pornography may be more immediately harmful to the child involved, the dissemination of that material certainly exacerbates that harm, not only by constituting a continuing invasion of privacy but by providing the very market that led to the creation of the images in the first place. [citations omitted] Thus, the children depicted remain the primary victims not only when the pictures are taken or purchased, but also when they are subsequently transported or distributed from one person to another. As stated by the Fifth Circuit in United States v. Norris, 159 F.3d 926 (5th Cir. 1998), "the victimization of the children involved does not end when the pornographer's camera is put away ... 'the pornography's continued existence causes the child victims continuing harm by haunting those children in future years.'" Norris, 159 F.3d at 930-31.

Id. at 644. Thus, the children depicted in child pornography are the victims not only of those who produce it, but also those who possess it.

### III. Causation

Every Circuit to address restitution under § 2259, thus far, with the exception of the Fifth Circuit *en banc* decision in In re Amy Unknown, 701 F.3d 749 (5th Cir. 2012), has held that the statute requires a "causal connection" between the victim's losses and the defendant's offense. See In re Amy, 591 F.3d at 794 (collecting cases); United States v. McGarity, 669 F.3d 1218, 1269 (11th Cir. 2012); United States v. Tillmon, 195 F.3d 640, 643 (11th Cir. 1999) (holding that section 2259 limits recoverable losses to those proximately caused by the defendant's conduct); United States v. Laney, 189 F.3d 954, 965 (9th Cir.1999) (§ 2259 "requires a causal connection between the offense of conviction and the victim's harm."); United States v. Crandon, 173 F.3d 122, 125 (3d Cir.1999) (requiring showing of "proximate cause"). In the instant case, the

testimony of Dr. Green, combined with the victim impact statement of "Vicky" herself, will provide ample support for causation to impose a restitution award in that Prices' possession of pornographic images of "Vicky" as a child caused "Vicky's" injuries. In her victim impact statement, "Vicky" described precisely how the possession of her photographs by Price and others like him make her feel:

> I live everyday with the horrible knowledge that many people somewhere are watching the most terrifying moments of my life and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending. Everyday, people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain. … My world came crashing down the day I learned that pictures of me being sexually abused had been circulated on the internet. Since then, little has changed except my understanding that the distribution of these pictures grows bigger and bigger by the day and there is nothing I can do about it. The enormity of this has added to my grief and pain, and given me a paranoia. I wonder if the people I know have seen these images. I wonder if the men I pass in the grocery store have seen them. I feel totally out of control. They are trading around my trauma like treats at a party and it feels like I am being raped all over again by every one of them. It sickens me to the core, terrifies me and makes me want to cry. … As I go on with my life the effects of these crimes still hurt me and I hope the Court and everyone involved will understand this and how serious it is. While the abuse from my biological father was awful, as time goes on that is farther and farther away from me. He is in jail and can never hurt me. That is over. The men that download my pictures are all around me for all know and it will keep going on forever. I have no control over it at all. This is frightening, beyond belief. … The paranoia of knowing people are viewing videos of me messes with my mind and adds a back burner type of stress to my life constantly that is brought to the front of my mind by unexpected situations and still throws me for a loop, the episodes of disassociation and personality change, and stress management. … I want you to know that dealing with the effects of the stress of random men looking at pictures of my sex abuse as a child is like a full time job that wears me down and colors every aspect of my life.

(Victim Impact Statement of "Vicky," attached as "Exhibit A")

Moreover, Dr. Green will testify that each NCMEC notification adds to the "slow acid drip" of trauma and exacerbates "Vicky's" emotional issues. As such, each notification is

"extraordinarily distressing and emotionally painful" to "Vicky" and that "Vicky" suffers "each time an individual views an image depicting her abuse." (See Report of Dr. Green, attached as "Exhibit B").  Thus, like the Eleventh Circuit in McDaniel recently held, the defendant's possession of child pornography proximately caused the harm suffered by "Vicky."  *See* McDaniel, 631 F.3d at 1209.

Here, "Vicky" has documented, with the assistance of medical experts, a connection between the harm that the defendant created by transmitting and viewing images of her abuse and the costs associated with her future counseling.  Moreover, there is ample legislative and judicial support for the conclusion that at least some of the losses that the victims of child pornography suffer are directly caused by those who "simply" view and collect the images of their initial abuse because it is easily foreseeable that the dissemination, collection and viewing of those images exacerbate the harm to the children depicted.  The offense of possession of child pornography has real victims.  In this case, defendant Price and other similar collectors of child pornography cause additional strain or trauma to "Vicky" and other identified child pornography victims, and are a substantial factor in causing the ultimate loss.  The Court can make this finding by reading the victim impact statement which was filed with the Court.  Perhaps approximating the amount of the loss that is attributable to Defendant Price cannot be done with mathematical certainty, but some substantial award of restitution is reasonable.  Price is a direct cause of the pain "Vicky" suffers when her images are viewed by people who enjoy watching her documented rape and sexual abuse.

### IV.    The Calculation of Restitution

Section 2259 provides for restitution for the "full amount of the victim's losses," which "includes any costs incurred by the victim for (A) medical services relating to physical,

psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b).

Numerous courts have upheld restitution based on the costs of future counseling. In Laney, for example, the Ninth Circuit upheld restitution for future counseling because Congress "was aware that children victimized by sexual abuse often do not recover quickly" and would not have created an "unwieldy procedure" of requiring victims to continually petition the court for recurring, predictable counseling costs under 18 U.S.C. 3664. Laney, 189 F.3d at 966-67. Other courts have agreed. Danser, 270 F.3d at 455; Doe, 488 F.3d at 1154; Crandon, 173 F.3d at 122; Julian, 242 F.3d at 1245; Estep, 378 F.Supp.2d at 763.

Likewise, courts in this District have awarded a victim of child pornography restitution for lost wages. *See* United States v. Staples, S.D. Fl., Case No. 09-14002-Cr-Moore.

Courts have also accepted miscellaneous costs. In Searle, for example, the Second Circuit affirmed restitution for the purchase of a new car to transport the abused children and remodeling of a front porch to accommodate their living needs. 65 Fed. App'x at 346.

    a.    **Joint and Several Liability**

The general restitution statute, 18 U.S.C. § 3664, provides a judge with discretion to impose joint and several liability for the full restitution amount, id. at § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution"), and the statutory provision here, 18 U.S.C. § 2259, provides that "[a]n order of restitution under this section shall be issued and

enforced in accordance with section 3664." Id. at § 2259(b).  Moreover, 18 U.S.C. § 2259(b)(4)(B) provides that "a court shall not decline to issue an order [of restitution] because of . . . the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source."  Thus, if a court finds that a victim, such as the one seeking restitution in this case, has sustained losses of a certain amount, the court must order that restitution be paid, even if hundreds of other orders have also been imposed.  If defendants under an order of restitution wish to argue about who is responsible for making good on orders, those arguments can be made at a later date.

      **b.**      **Alternate request for award of restitution under 18 U.S.C. 2255(a)**

Should the Court deem it inappropriate to order the full amount of "Vicky's" losses as restitution, the United States requests a restitution order in the amount of $150,000.00. Congress has recognized that a victim who has suffered injury as a result of a violation of §2252 would likely have a difficult time apportioning the exact amount of harm to any one downloader or distributor.  In structuring a civil remedy for such victims, Congress has provided that the victim is not required to show the exact amount of damages. Rather, §2255(a) specifies that the victim "***shall be deemed to have sustained damages of no less than $150,000 in value".*** (Emphasis supplied.) This provision demonstrates that Congress has made a specific finding of causation and has found that the damage to the subject of these images is substantial. With the imprimatur of this Congressional finding, an award of $150,000.00 may be entered.  It must be assumed that Congress understood that the nature of this crime is such that many individuals, acting separately, would possess, receive, transport, and/or distribute a single victim's images. In providing for the multiple types of enumerated restitution which are mandated, Congress clearly

14

recognized the nature of the harm inflicted by each of these activities. To require showing of specific causation by the victim that each individual defendant caused the need for the arithmetically enumerated compensable losses is to place an impossible burden on the victim. To impose such a burden on the victim makes a cruel hoax of the offer of help and assistance apparent in the statute. Rather, §2259 provides for very real and needed assistance to these worthy victims.  Should the court find it inappropriate to order the full amount of restitution requested, then the Government submits that an order of $150,000 is supported by the Congressional findings underpinning §2255. The documented losses for this victim far exceed this number.

## CONCLUSION

The instant offenses of distribution and possession of child pornography are found in Chapter 110 of Title 18 of the United States Code.  Restitution is mandatory for any offense under that Chapter.  Therefore, it appears that mandatory restitution applies to the instant offenses.  Finally, as set forth herein, restitution for the "full amount of the victim's losses" appears to include, at a minimum, past and future counseling expenses and other miscellaneous expenses.  The Government seeks restitution for the victim of the "Vicky" series in the amount of $746,798.77. [$106,900 in future counseling expenses, $147,830.00 in educational and vocational counseling needs, $722,511.00 in lost earnings, $52,110.24 in expenses paid out of pocket for forensic evaluations, supporting records, court costs, and travel costs, and $297,815.00 in attorney's fees, minus $580,367.47 in restitution payments already received]. Attached as "Exhibit C" for the Court's consideration is a Vocational Assessment performed by

Merrill Cohen, and Economic Loss Report attached as "Exhibit D," and a Statement of Attorney's Fees and Costs from Attorney Carol Hepburn, attached as "Exhibit E."

The harms and losses suffered by a victim of child pornography are in many ways incalculable. Yet, we can put numbers to the medical and counseling expenses, the lost income, the attorneys' fees and costs. For many, and certainly for "Vicky," the path to recovery is long, arduous, and expensive. She does not have the resources or the insurance to allow her to obtain the counseling and medical help she needs to even begin recovery. Restitution is the only way she can afford to obtain this help.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By:  /s/ Marc S. Anton_____
MARC S. ANTON
Assistant United States Attorney
Florida Bar No. 0148369
500 E. Broward Blvd., Suite 700
Ft. Lauderdale, Florida 33394
Tel: (954) 660-5668
Fax: (954) 356-7336
Marc.Anton@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 21, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/  Marc S. Anton_____
MARC S. ANTON

ASSISTANT U.S. ATTORNEY