# CAROL L. HEPBURN, P.S.

## ATTORNEYS AT LAW

September 19, 2012

CAROL L. HEPBURN
Attorney at Law

Licensed in Washington
and Oregon

J. WILLIAM SAVAGE
Attorney at Law,
Of Counsel

Licensed in Washington
and Oregon

IN SEATTLE:
2722 EASTLAKE AVE E
SUITE 200
SEATTLE, WASHINGTON
98102
TELEPHONE:
(206) 957-7272
FACSIMILE:
(206) 957-7273

IN PORTLAND:
620 S.W. FIFTH AVENUE
SUITE 1125
PORTLAND, OREGON
97204
TELEPHONE:
(503) 222-0200
FACSIMILE:
(503) 248-0200

Mr. Marc S. Anton
Assistant United States Attorney
Southern District of Florida

Via email:     Marc.Anton@usdoj.gov

Re:     US v. James E. Price
        USDC No. 12-CR-60016
        Restitution request—"Vicky Series" victim

Dear Mr. Anton:

Please consider the materials provided with this letter as offered in support of restitution for the victim of the "Vicky" series of child pornography images, as allowed by the Mandatory Restitution for Sex Crimes section of the Violence Against Women's Act of 1994 (18 USC §2259) and 18 USC §3664 for the harms and losses which she has incurred as a victim of multiple violations of the child pornography laws. We also seek to invoke her full panoply of rights under the Crime Victims' Rights Act (CVRA), 18 USC § 3771 including her right to notice of court proceedings, to full and timely restitution, to confer with the Government attorney, and her right to be treated with fairness at both the trial and appellate levels of proceedings. We respectfully request that the Government keep us fully informed of all proceedings in this case regarding restitution and that the Government use its best efforts to obtain full restitution for her as required by the CVRA.

We would appreciate your including restitution for "Vicky" in your sentencing presentation and forwarding these materials to the court for consideration at the time of sentencing.

The full amount of "Vicky's" economic losses are now documented at $1,327,166.24. This is comprised of $106,900.00 in future counseling expenses, $147,830.00 in educational and vocational counseling needs, $722,511.00 in lost earnings, $52,110.24. in expenses paid in out of pocket costs for the forensic evaluations, supporting records, court costs, and travel to meet with my client, and $297,815.00 in attorney's fees We have received to date $580,367.47 in restitution payments. **Thus, the net amount of economic losses deserving of restitution is $746,798.77.** We request an order of

September 27, 2012
Page 2

restitution in the amount of $150,000.00 as explicitly found by Congress in 18 USC §2255 to be a deemed minimum measure of harm to a victim such as "Vicky".

Exhibits sent with this letter supporting our request include the following:

| | |
|---|---|
| Exhibit 1 | Victim Impact Statement; |
| Exhibit 2 | Statements of Mother and Step-father as to Impact; |
| Exhibit 3 | Original and updated forensic psychological evaluations; |
| Exhibit 4 | CV of Randall Green, Ph.D., the evaluator; |
| Exhibit 5 | Transcript of Dr. Green's testimony in US v. McDaniel, NDGA 12-22-09 |
| Exhibit 6 | Vocational assessment; |
| Exhibit 7 | CV of Merrill Cohen, M.C.,C.M.D.S., the vocational evaluator; |
| Exhibit 8 | Forensic economic analysis of lost wages; |
| Exhibit 9 | CV of Stan V. Smith, Ph.D., forensic economist; |
| Exhibit 10 | Representative transcript of two chats freely available on the internet; |
| Exhibit 11 | Declaration of Attorney's Fees and Costs |
| Exhibit 12 | "Putting a Price on Child Porn", Boe, Ashleigh, 86 NDLRev. 205 (2010). |

All documents are redacted to protect the victim's identity and may be passed on to defense counsel.

"Every time another name is identified to "Vicky", her fear and paranoia, and the need to be hypervigilent become more concrete. The continued pursuit and distribution of the "Vicky" images, as was done by this defendant, and others, has perpetuated their circulation and the continued, illegal and pathological interest in them. Cubero's consumption of the pictures of her abuse and sexual torture as a child stimulates the market for multiple, even hundreds and thousands, of other people to view and obtain prurient pleasure from such images.

I now understand from several prosecutors that some defendants are trading images with "Vicky's" real, legal name as part of the file title. We would appreciate, therefore, that a **no contact order**, using her pseudonym, be requested of the court.

The no contact order is important because this young woman has been contacted by multiple individuals seeking to communicate with her about the images of her abuse; one even apparently tried to send her pornographic images. Statements were made which were frightening to her and suggested attempts at in-person contact. *Further trading and downloading of her images adds to her distress and the likelihood of future direct harassment of her and, therefore, multiplies the harm she suffers.*

Her emotional condition continues to be fragile. Many of life's normal experiences and relationships pose extra challenge for her. For example, she has recently moved and found a new roommate to share the new living situation with her. She had yet to disclose to this new roommate anything about being the subject of internet child pornography images. A mutual friend, in whom my client had previously confided, decided to tell the new roommate all about it and to identify websites upon which various blogs concerning her being the subject of these child sex abuse images. This was done before my client could make the disclosure herself. This was obviously very distressing

September 27, 2012
Page 3

to "Vicky", but is just one example of the many, common situations in which this ugly circumstance undermines her attempts to live a normal life.

In another recent circumstance, the effects of being the subject of these images intruded in her first serious romantic relationship. She found herself unable to trust and felt highly sensitive about the possibility that the young man she involved with might have any interest in pornography. Without any indication that such was the case, she demanded of her boyfriend that he put software on his computer which would send her an email if he visited any sites with pornography. She was surprised at her own behaviors, yet unable to do anything differently. Her behaviors put many stresses on the relationship and on herself. Her dissociative symptomology exacerbated and the young man found himself unable to help her through her struggles. The relationship crumbled and has ended.

The continue circulation the images of the rape, bondage, and sodomy of my young client has also caused her to be stalked by another man who, by his own statements to her, searched for her for five years before finally locating her via her MySpace page (which she has since taken down.) He then harassed her with pointed sexual questions, calling her a "COWARD", (emphasis in original) and stated desire to make pornography with her. This individual was sentenced in federal court in Nevada after a plea of guilty one count of transporting child pornography and one count of stalking my client.

"Vicky's" sexual abuse was in part a direct response to "orders" for scripted videos of rape, sodomy and bondage placed with her abuser by the pedophiles who downloaded and traded her images. She was forced to perform according to a script made at the request of other pedophiles and to hold up signs such as "NW Dad & Dau-Come Play with Us". The distribution of her images re-inflicts the harm and makes it impossible for her to ever close the door on this horrid chapter in her life.

Congress enacted §2259 with the specific inclusion of the crime of possession of child pornography as a crime which *must* include restitution to the victim in its sentence. Congress did this with full knowledge of the direct abuse which precedes the crimes of possession and receipt, knowledge of the anonymous nature of the crime itself, and knowledge of the tremendous harm inflicted upon the victim.

"Vicky" and her family ask that their impact statements and her letter to the judge be read aloud at the time of sentencing. (Exhibit 1) The statements of her parents have been updated as of October, 2010. (Exhibit 2) Please do not use her name, or that of her parents, even just first names, as it is important to protect her privacy as much as possible.

**Legal Issues Relating to Restitution**

Section 2259 of Title 18 USC makes mandatory the payment of the "full amount of the victim's losses". Section 3664(h) provides that the court may make the defendant liable for payment of "the full amount of restitution".

September 27, 2012
Page 4

By seeking her images through the internet, Mr. Price stimulates the internet market for child pornography and has actively perpetuated the harm which "Vicky" suffers. He has added to the Pandora's box of her harm.

As noted by the Eleventh Circuit in *United States v. McDaniel*, 631 F.3d 1204 (11th Cir. 2011), the distribution of child pornography "exacerbates [the original] harm, not only by constituting a continuing invasion of privacy but by providing the very market that led to the creation of the images in the first place." *McDaniel* 631 F.3d at 1208. This observation was recently affirmed in *United States v. McGarity*, 669 F.3d 1218 (11th Cir. 2012).[1] While the court in both *McDaniel* and *McGarity* also found that "mere" possession of an image of child sex abuse certainly harms the child who is the subject, it goes without saying that trafficking such images on the internet constitutes an exponentially greater harm and forms a solid nexus between the damage suffered by the victim and the actions of the defendant.

*McGarity* leaves open the question of apportionment versus entering an order for the full amount of a victim's losses with joint and several liability with other such defendants. Comparison of Section 2259 with other provisions for restitution in the criminal code shows that Congress intended an "expansive remedy" facilitating the recovery of all of a victim's losses rather than a process that puts roadblocks in a victim's path. See, *US v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001). Section 2259, and the two other restitution statutes adopted at the same time 18 U.S.C. §§ 2248 and 2264, provide for compensation of "the full amount of the victim's losses" for "any costs incurred" for physical, psychiatric, or psychological care, necessary transportation, temporary housing, child care, attorneys fees, certain court costs, and "any other losses suffered by the victim as a proximate result of the offense." This enumeration is "much broader that §3663A" the Mandatory Victim Restitution Act. See *US v. Julian*, 242 F.3d 1245 (10th Cir. 2001).

Mr. Price could easily forsee that his possession of images of the rape and abuse of "Vicky" would cause her shame, humiliation, and fear. She wonders why he would go to the effort to collect pictures of children's torture. In her mind he may be one of those who would stalk her if he had the chance, who would like to make more pornography with her.

As "Vicky" describes in her statement, the proliferation of the images is what causes her anxiety that whomever she may meet or whomever may cross her path on the street has viewed the scenes of her rape and pleasured themselves with her pain. By circulating her images, this defendant has joined the crowd of pedophiles that have multiplied "Vicky's" harms and losses immensely. His actions are not in isolation. He has acted with many others to vastly expand the spread of her images and her pain. For

---

[1] The very nature of this crime is an invasion of privacy as recognized by the *Ferber* court. As "Vicky" herself has said to me, most of us are sensitive enough about the pictures taken of us that we will want to delete or throw away a picture that is unflattering in some way. Imagine the pictures taken of her, pictures that most people, including judges, would turn away from and not even want to view for an instant. How much worse are these than a picture which makes someone look fat, or older than their years, or unattractive. These are photos of ultimate humiliation and horror.

September 27, 2012
Page 5

this reason an order for the full amount of restitution requested, on a joint and several basis, is just and proper.

**Alternative request for order of $150,000.**

Should the court deem it inappropriate to order the full amount of "Vicky's losses as restitution, we request an order of $150,000.00. We base this request on the Congressional finding of that amount as a deemed floor of harm. Congress has recognized that a victim who has suffered injury as a result of a violation of §2252 would likely have a difficult time apportioning the exact amount of harm to any one downloader or distributor. In structuring a civil remedy for such victims, Congress has provided that the victim is not required to show the exact amount of damages. Rather, §2255(a) specifies that the victim "*shall be deemed to have sustained damages of no less than $150,000 in value*". (Emphasis supplied.) This provision demonstrates that Congress has made a finding of causation and has found that the damage to the subject of these images is substantial.

It must be assumed that Congress understood that the nature of this crime is such that many individuals, acting separately, would possess, receive, transport, and/or distribute a single victim's images. In providing for the multiple types of enumerated restitution which are mandated, Congress clearly recognized the nature of the harm inflicted by each of these activities. To require showing of specific causation by the victim that each individual defendant caused the need for the arithmetically enumerated compensable losses is to place an impossible burden on the victim. To impose such a burden on the victim makes a cruel hoax of the offer of help and assistance apparent in the statute. Rather, §2259 provides for very real and needed assistance to these worthy victims. [2] If the Court has concerns about ordering the full amount of restitution requested, then an order of $150,000 is appropriate and supported by the Congressional findings underpinning §2255. The documented losses for this victim far exceed this number.

The harms and losses suffered by a victim of child pornography are in many ways incalculable. Yet, we can put numbers to the medical and counseling expenses, the lost income, the attorneys' fees and costs. For many, and certainly for "Vicky", the path to recovery is long, arduous, and expensive. She does not have the resources or the insurance to allow her to obtain the counseling and medical help she needs to even begin recovery. Restitution is the only way she can afford to obtain this help.

**Psychological Harm Caused by the Defendant--§2259(b)(3)(A)**

"Vicky" suffers continuing serious psychological injury that stems directly from the trafficking and viewing of these images. We have provided the most recent evaluation dated March 13, 2012, as well as the original and interim updates in order to give the full picture of what this victim has gone through on her path of recovery. The psychological evaluation, (Exhibit 3) and particularly the December 2, 2009 update, spell this out in

---

[2] Boe, Ashleigh, "Putting a Price on Child Porn", 86 NDLRev. 205 (2010). This article argues persuasively for holding defendants charged with possession of child pornography responsible for the harm caused to victims by imposing restitution. (Copy attached at Exhibit 12.)

September 27, 2012
Page 6

detail. Dr. Randall Green is a licensed clinical psychologist who is very experienced in treating and evaluating victims of sexual abuse. His CV is offered to substantiate his qualifications to inform the court of the extent and nature of her harm. (Exhibit 4) Dr. Green has found that "Vicky" has been substantially re-traumatized, and is further injured by the knowledge of the continuing distribution and viewing of the images of her physical abuse. He describes the continued downloading of her images as "a form of psychological acid drip" on her well-being. She has developed a hyper-vigilance which causes her to suspect that any person she may see or meet, might have downloaded and derived prurient enjoyment from the images of her abuse.

She has suffered from panic attacks, insomnia, and dissociative episodes. In late 2008 she began a second year of college, but she experienced panic attacks and sleep disturbances which were interfering with her ability to pursue her studies. She dropped out of school in the spring of 2009 order to return home and resume counseling. Her condition deteriorated markedly over the following months with the realization of the widespread proliferation of the images of her childhood sexual abuse. She found herself unable to work at a simple job in an ice cream shop because of her involuntary reactions to dealing with the male customers who came in to buy ice cream. Despite being in need of a job to support herself while in school, she was forced to quit because of frequent panic attacks. She returned home, looking for the support of her family and renewed counseling.

In June of 2009 she attended a consolidated sentencing hearing of four child pornography defendants for purposes of reading her victim impact statement. She anticipated that this would be a move forward in her healing and would make a statement which would encourage other victims to step forward. In the process she learned much more than she had known before about the far-reaching, indeed, *viral* nature of the spread of her images on the internet. This, together with the experience of being in the courtroom with the defendants, caused her to regress and become increasingly symptomatic.

She enveloped herself with the support of family and gradually recovered. With a number of ups and downs she was able to eventually get a job in her home town and, with the aid of additional counseling she returned to school in the following fall. This did not last very long however and she again had to leave school due to symptomology, particularly being in groups of relatively unknown people for any period of time. While she continues to try to live a normal life, she carries emotional burdens which continually get in her way. She is still plagued by numerous ups and downs.

She has persevered despite the problems she has had with regular college classes. She hopes to obtain her undergraduate degree soon and to go on to graduate work. She is working hard, but has recently gone through a relapse due to the continued impact of her realization of the virulent spread of her images on the net. She took part in a sentencing hearing on request of the prosecution to share the consequences she has suffered from the continued viewing of her images by downloaders. Facing and explaining this reality to others in the adversarial context has caused an exacerbation of her symptoms which we hope will remit in a few months time. Yet, as Dr. Green has

September 27, 2012
Page 7

predicted, the very healing process and her attempts to bring some good for others from these circumstances are very painful for her.

These circumstances are explained in part in Dr. Green's updated reports of March 12, 2012, December 2, 2009 and July 5, 2010. (Exhibit 3) He continues to recommend that she participate in a number of educational and therapeutic processes, though with her improvement, he no longer is recommending inpatient treatment. As the up and down course charted in the reports reveals, she is fragile emotionally. With the energy and optimism of youth, however, she perseveres in her attempts to recover. She still needs help to do this. The cost of the needed counseling is estimated $106,900.00 in current dollars. (Exhibit 3, page 23 of the .pdf and page 8 or the March 13, 2012 update.)

Congress has paid particular attention to the harms suffered by children who are the victims of these crimes. The Senate Report attendant to recent revisions to pornography statutes made a finding that:

> Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

S. Rep. 104-358, at 14 (1996) (quoting *New York v. Ferber*, 458 U.S. 747 (1982)). The same report notes that child pornography can also be used to blackmail victims and can prevent them from revealing the crime to parents or authorities.

**Educational and Vocational Disruption Caused by Fear of Perpetrators**

Because of the panic and anxiety she has felt when dealing with men who are not known to her "Vicky" has been significantly limited in her ability to pursue her schooling in the normal course or to work while she is in school. As demonstrated by her attempts thus far, she has panic attacks, dissociation, and insomnia caused by obsessing over whether the men whom she encounters on a daily basis are among the many who have traded and taken prurient interest in the pictures and videos of her abuse. Despite her intelligence she will require extra time to complete her studies due to the emotional burden which she carries.

It was not until she was confronted with the reality of the internet distribution of her images that her studies and work pursuits were severely affected. Once she became aware of the proliferation of her images, the concern, the paranoia, about strangers whom she must deal with intruded upon her previously functional academic and vocational life. Truly, "Vicky" is very bright, and but for this scourge upon her, could no doubt pursue any career she set her mind to. Luckily she was ahead in her academics up until the point of her learning of the spread of her images over the internet and so she is not behind significantly at this point. She has needed and will continue to need, however, additional time and the help of a vocational counselor. While she was able to

September 27, 2012
Page 8

return to school for a short time in the fall of 2009, she had to again move away from campus. She took classes online for a time as an alternative to regular in-person participation in class. With recent budget cuts, the online classes are no longer an alternative for her. She is now back in a regular classroom and pursuing a degree which would allow her to become a counselor. Her family and her supporters are cautiously optimistic.

Merrill Cohen, MC, CDMS, Vocational Consultant, has conducted an evaluation detailing the vocational impact this burden has had upon this young woman. She has already had to drop out of college and quit her part-time job due to her fear of those who download her images. To her credit she is working toward obtaining a degree and a useful life contributing to society. She will need to forgo work during the school year in order to focus on a lighter load of courses. As she pursues a degree in psychology in support of her goal of becoming a counselor for child victims, she is fighting her demons at the same time. She will continue to need additional support or will need to forgo this path altogether.

The special career counseling she will need is to help her tailor her career search to paths which will not cause further trauma. Because of her need for a longer time to complete her studies she will have extra costs for tuition. She will be delayed in her entry into the work force, and thus lose income she would have otherwise earned but for the trafficking of her images. Ms. Cohen provides a specific analysis of these losses and calculates them at $147,830.00. (*See* Exhibit 6.)

Economist Stan V. Smith, Ph.D. has calculated the loss of earnings attendant to the delay in entry into the work force and the predicted recurrent interruption in her work life that the need for therapy and periodic triggering of her panic and anxiety over the presence of her images on the internet. Dr. Smith's report is enclosed and details the loss of $722,511.00 in earnings over a work-life through age 67 the normal retirement age for "Vicky."[3] This figure is based upon the earnings she would have earned but for the proliferation of her images on the internet, offset by the total of projected actual earnings, and is thus a net figure. (*See* Exhibit 8.)

We are also submitting chat room dialogs in order to illustrate the type of material freely available to internet searchers who may "google" "Vicky's" real name. (*See* Exhibit 10.) Pedophiles and others interested in child pornography have linked her legal name to the series. Commentators debate back and forth disgusting speculation by the participants about whether this young woman enjoyed the rape, bondage and sodomy that she endured as a child. These are just two of many chats I have found readily available on the internet about her just by searching with her legal name. It is the continued downloading and sharing of the images that fuels the interest. Amazingly, the first of these chats was **initiated in October 2007 and has lasted almost five years to**

---

[3] Although Dr. Smith also calculates the Reduction in Value of Life occasioned by this crime, we are not including this amount in the restitution request.

September 27, 2012
Page 9

the present.[4]   Included as well is a screenshot, taken August 10, 2012, of search engine results for a search of my client's legal name. It shows the continuing connection of her legal name with this child pornography series. (See Exhibit 10.)

The existence of this material on the internet makes the prospect of looking for serious employment or initiating new friendships a traumatic experience. Does she tell a prospective employer "Oh by the way, if you search my name on the internet you are likely to find . . . . ?" Or, does she disclose to a potential romantic interest the same thing?  Compelled self-disclosure has been recognized in the defamation context as a real source of damage. In this circumstance the anxiety and upset attendant to the self disclosure is of a much greater impact as is the effect on potential relationships.

**Expenses of Evaluation and Attorneys Fees—§2259(b)(3)(E)**

The mandatory restitution statute provides for reimbursement of attorneys fees and the expenses of presenting restitution request in addition to other forms of restitution. In this provision, VAWA is similar to civil rights statutes which use such provisions to encourage attorneys to undertake representation of victims in cases which would otherwise be economically prohibited. It is a standard "access to justice" provision, and facilitates presentation of victims' cases when they likely would not have the resources to do so otherwise.

My declaration as to fees and costs is provided with this letter at Exhibit 11. The summary of expenses paid out of pocket for this matter includes the cost of the initial and updated evaluations, costs of medical and school records, document searches, as well as my costs to travel to meet with my client and other related to the case. She lives in a rural area at some distance from either of my offices.

The fee declaration submitted attests to 850.9 hours through January 31, 2012. This is based upon contemporaneously kept time records for all but the first 6 months of representation. At my standard hourly rate of $350.00 per hour this amounts to $297,815.00 in attorneys fees over all. While this is a large amount, when viewed in context of the novelty of the issues involved, the unsettled nature of the law, and the many proceedings involved which span the country it is reasonable and understandable.

I continue to accrue time of several hours a week for this case and will continue to do so for the foreseeable future. Much of the time spent has been in meeting with the

---

[4] Although I was originally able access the Hitsusa blog online and view the ongoing posts, I was not able to again save it down in a form which is capable of full reproduction and redaction. I therefore took a screenshot of the most recent page showing posting through August 2, 2010 and have pasted this page at the end of the first Hitsusa blog. The blog entries thus jump from number 174 on January 12, 2010 to number 223 on July 14, 2010. The intervening posts are spread fairly evenly temporally across the intervening six months. I viewed this blog again and several other internet postings at the time of writing this letter and find the material in the same vein. The real name of "Vicky" is interspersed among the comments and readily available on the internet. The speculation about whether she was "abused", enjoyed the experiences which were videotaped, or benefited from the experiences continues unabated. Vitriolic comments made about her personally are frequent. I have viewed such posts on the internet dated up to and including August 10, 2012. Also included is a screenshot of search results of a search done August 10, 2012 of my client's real name. This makes clear the continuing connect of her legal name with the series "Vicky".

September 27, 2012
Page 10

victim and her family, legal research locating and consulting with experts, gathering and reviewing her medical and school records, communicating with prosecutors, law enforcement, and in two trips to the east coast for hearings on restitution. I have practiced 32 years, having been licensed in Washington State in 1978 and in Oregon in 2003. My practice began as a deputy prosecutor in King County, Washington, and I have had an active litigation practice since leaving public practice which has included matters involving sexual assault, child sex abuse, sexual harassment, and personal injury. I have been awarded fees at $350.00 per hour by the King County Superior Court in Washington State.

**Factors Not To Be Considered**

Section 2259 specifically and very clearly provides that "the economic circumstances of the defendant" shall not preclude entry of a restitution order. §2259(b)(4)(B). This provision is consistent with the overall thrust of this statute favoring compensation to victims and recognizing the devastating effect of the violation upon the victim. Further, in §3664(f)(1)(A) Congress has directed that "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." It is only as to the manner of payment, ie the payment schedule, that the statute allows the court to consider the defendant's financial resources. 18 USC §3664(f)(2).

**Form of Order**

We would appreciate any restitution order which might be entered being made payable to my attorney trust account for "Vicky" and mailed to my office at 2722 Eastlake Avenue E, Suite 200 Seattle, WA 98102 so as to avoid having her name in the public record. We would appreciate that restitution be made payable immediately so as to allow DOJ the most flexibility in collection. We also ask that any order include a recommendation that the defendant satisfy his restitution obligation through the Inmate Financial Responsibility Program during his incarceration.

Please advise should you require any further information or documentation. I am happy to provide what further information we can which may be of help to your prosecution. Thank you for your consideration and assistance. The statements of fact contained in this letter are true and correct to the best of my knowledge and are made under penalty of perjury under the laws of the State of Washington at Seattle, Washington.

Very truly yours,

*Carol L Hepburn, P.S*
*in trust for*

Carol L. Hepburn

CLH:sim