ב"ה



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 1:12-CR-60016-KMW

UNITED STATES OF AMERICA,
    *Plaintiff,*

v.

JAMES PRICE.
    *Defendant.*

_____/

### DEFENDANT'S MEDICAL STATUS REPORT

**COMES NOW,** James Price ("the Defendant"), and files this, his **MEDICAL STATUS REPORT** following three (3) hospitalizations and two (2) cardiac surgeries as a result of complications from Coronavirus/COVID-19.

1

## I. HOSPITALIZATION

1. This Court was advised of the Defendant's two (2) previous hospitalizations in the Defendant's Status Report (ECF 226). The second of which required a ten (10) day, inpatient heart surgery to remove a post-COVID-19 growth from Mr. Price's heart. This growth was one of two discovered by doctors during the surgery.

2. Mr. Price will require at least one or likely more surgeries on his heart to treat COVID-19 related complications.

3. Mr. Price was hospitalized a third time, for four (4) days, to surgically implant a cardiac monitoring device in his chest next to his heart.

4. Although the confirmed Rx/myMerlin mobile application enables real-time monitoring and cardiac event to alert the Defendant, his wife (caregiver), and Dr. John Dylewski. IT DOES NOT WORK IN FEDERAL PRISON.

5. The confirmed Rx device in the myMerlin application uses a combination of Wi-Fi to stream real-time telemetry data from Mr. Price's heart to "the cloud" and blue tooth to send alerts and patient provided comments to doctors. The data and Mr. Price's comments guide doctors in modifications and continuation of the Defendant's cardiac care plan.

6. The BOP authorized the surgical implant of the confirmed Rx device in Mr. Price's body as a primary means of monitoring his condition but REFUSE to allow its use in *any federal prison*. Therein, neither doctors nor Mr. Price is permitted to use the only mechanism to monitor, track, identify and alert of an impending or actual life-threatening cardiac event, e.g., heart attack, stroke, heart failure, etc., despite the BOP having authorized its surgical implantation in Mr. Price's chest.

7. The Defendant will require at least *ONE MORE HEART SURGERY* to remove a second post-COVID-19 growth affecting his cardiac function. This surgery comes at an even higher risk than the first due to existing damage to the heart muscle and the strain placed on the heart and other organs during the six-hour-long surgery.

## II. COMPLICATIONS FROM COVID-19 INFECTIONS

8. Mr. Price currently[1] suffer from six (6) emerging complications from his two COVID-19 infections: (a) cardiovascular atrial-fibrillation; (b) cardiovascular-tachycardia; (c) cardiovascular-stage two hypertension; (d) cardiovascular-transient ischemic attack ("TIA"); (e) cardiovascular vascular damage; (f) diabetic metabolic/insulin resistance.

9. Each of the cardiovascular conditions, supra., are considered serious, patients do not recover from them in fact, patients with these typically die from these conditions or related complications.

10. The TIA that Mr. Price suffers is of particular concern. People with TIA like the Defendant suffer brief stroke-like attacks, similar to seizures, that last from minutes up to two hours. These attacks cause a loss of muscle control (paralyses), memory loss, and loss of cognitive functions. During such attacks in prison, Mr. Price has *NO ABILITY* to provide self-

---

[1] The Defendant is considered a COVID-19 long hauler where people infected with COVID-19 recover from the official infection but continue to suffer from COVID-19 related complications for very long periods of time.

4

care. Additionally, TIA requires immediate medical attention that is not available at FCI-MIA and necessitate hospitalization.

11. The Defendant suffers from diabetic metabolic syndrome/insulin resistance. Mr. Price's A1C is 5.9 in order to manage his condition he requires a low sodium diet and regular exercise. The BOP has REFUSE to provide the Defendant with a low sodium kosher diet. Additionally, and despite his testing NEGATIVE for COVID-19 twice in January 2021, the BOP continues to hold Mr. Price in solitary confinement/quarantine for twenty-three hours and forty-five minutes a day. Thus, Mr. Price has access to neither the necessary diet nor exercise to care for himself.

## SUMMARY

12. The United States and BOP knew how serious and life-threatening Mr. Price's heart condition was, but debility failed to address them in their Memorandum and Opposition (ECF 231). In fact, so serious are Mr. Price's heart condition, that the BOP kept Mr. Price hospitalized eighteen (18) of the last forty days. Aware of Mr. Price's deteriorating condition, the United States could have and should have, updated this

Court, but instead, it chooses to remain silent to the facts. Mr. Price will never recover from these conditions, life-threatening conditions he suffered as a result of the BOP negligence in infecting him not once but twice with COVID-19. This Court sentenced Mr. Price to a term of imprisonment, however, that term of imprisonment did not include the prospect of death or permanent physical impairment as a result of negligence and the mismanagement of a global pandemic.

Dated: January 26, 2021

Respectfully submitted,

**James Price** Digitally signed by James Price
Date: 2021.01.26 17:31:07 -05'00'

/s/James Price
USM No. 98922004
Plaintiff
Federal Correctional Institution
P.O. Box 779800
Miami Florida 33177-9800
Tel.: 305-259-2268
Fax.: 305-259-2383
Email: PriceJameE@outlook.com



