UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60016-CR-WILLIAMS

UNITED STATES OF AMERICA

v.

JAMES E. PRICE, III.,

          Defendant.
_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S STATUS REPORTS
IN SUPPORT OF HIS SECOND MOTION FOR COMPASSIONATE RELEASE**

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorney, and hereby responds to the Defendant's status reports (DE 234 and DE 235), and in support, states as follows:

**DEFENDANT'S STATUS REPORTS**

On January 20, 2021, the Defendant filed DE 234, entitled "Defendant's Status Report," wherein he claimed, among other issues, that "the United States knew or reasonably should have known, of Mr. Price's pending heart surgery and deliberately withheld this information from the court." Id. at 2.  Moreover, he states he suffers from atrial fibrillation as well as TIA.  Id.  In his follow up "Medical Status Report," DE 235, he complains that the BOP is preventing his doctors from monitoring his implanted cardiac monitor and the United States is deliberately failing to update the Court on his "deteriorating condition… life threatening conditions he suffered as a result of the BOP negligence in infecting him not once but twice with COVID-19." DE 235 at 5-6.

**LEGAL FRAMEWORK**

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.1. The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

- suffering from a serious physical or medical condition,
- suffering from a serious functional or cognitive impairment, or

---

[1] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). See First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; cf. 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

2

- experiencing deteriorating physical or mental health because of the aging process,

  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

## **ARGUMENT**

This Court should again deny Defendant's motion for a reduction in his sentence with prejudice on either of two independently sufficient grounds. First, Defendant has not identified "extraordinary and compelling reasons" for that reduction within the meaning of § 3582(c)(1)(A) and the Sentencing Commission's policy statement. Second, Defendant poses a significant danger to the public and the statutory sentencing factors do not weigh in favor of his release.

### A. **Defendant Has Not Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction.**

Defendant's request for a sentence reduction should again be denied because he has not demonstrated "extraordinary and compelling reasons" warranting release. As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. USSG § 1B1.13, cmt. n.1(A).

3

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

### Defendant's Medical Records and Current Status

As mentioned in previous filings, the fact that Price was diagnosed with COVID-19 in December of 2020 and recovered quickly is a testament to the adequacy of treatment at the facility and his ability to self-care. However, despite the Defendant's unsupported claims, neither the United States nor the Bureau of Prisons has "negligently infected him not once but twice with COVID-19," and there is no medical proof that the Defendant has had COVID-19 other than in December of 2020, for which he was asymptomatic and has since recovered. There is also no medical evidence which indicates that Price's current high blood pressure and heart issues are either related to or are the direct result of any COVID-19 diagnosis and infection.

With that said, the attached updated medical records do demonstrate that the Defendant suffers from periodic high blood pressure and has had intermittent cardiac events that at times have required his hospitalization out of an abundance of caution. Nonetheless, inmate Price remains well monitored by the Bureau of Prisons, has been prescribed all appropriate medications, and has received all appropriate medical treatment both within and outside of the prison facility at Larkin Community Hospital and Jackson South Hospital. Moreover, despite the Defendant's assertions, on January 6, 2021, the day *after* the government filed its previous response to the Defendant's

Motion for Compassionate Release, the Defendant was taken via ambulance to Larkin Community Hospital as a result of a medical clinic visit at FCI Miami that revealed high blood pressure, headaches, and a high pulse rate that staff deemed worthy of transport by paramedics to a local hospital for further evaluation. It was not a planned trip to the hospital for a scheduled medical procedure, but rather was for an unanticipated medical event observed by BOP staff that in their opinion necessitated further evaluation at a local hospital. As such, the United States did not know or have reason to know, that Inmate Price would be undergoing heart surgery for the implantation of a medical monitoring device recommended by a third party doctor, for an event that had not yet happened at the time of filing, and therefore did not deliberately withhold any information from the Court.

As a result of this hospital visit, which lasted from January 6, 2021 until January 15, 2021, as the medical records document, extensive cardiac and diagnostic testing was performed, and while no tangible cause of physical heart dysfunction was identified, the decision was made by Price's cardiologist to nonetheless implant a "loop recorder" to continuously monitor Price's heart functioning going forward. Thereafter, after a bout with chest pain while at FCI Miami, Price was again transported to the local hospital for evaluation and treatment from January 19, 2021 to January 22, 2021, and then once again medically cleared for release back to FCI Miami, where he currently remains.

In his "Medical Status Report," Price claims, "The BOP authorized the surgical implant of the confirmed Rx device in Mr. Price's body as a primary means of monitoring his condition but REFUSE to allow its use in any federal prison." (DE 235 at 3). This is simply not the case. According to the FCI Miami Clinical Director, an implantable loop recorder, or ILR, is a heart recording device that is implanted in the body underneath the chest skin. It has several uses, but the most common ones include looking for causes of fainting, palpitations, very fast or slow

5

heartbeats, and hidden rhythms that can cause strokes. In the instant case, Inmate Price was admitted to Larkin Hospital due to uncontrolled high blood pressure and tachycardia. He was admitted for evaluation and management, then he was evaluated by a cardiologist, who recommended the implantable loop recorder to evaluate causes of palpitations and hidden rhythms. Despite Price's claims to the contrary, even though BOP Policy prohibits wireless transmission devices at bedside while incarcerated, the ILR nonetheless remains active and working as intended, and is continuously recording heart function. While not transmitting in real time, Price will be seen monthly by his cardiologist, who will review the data stored within his ILR. Then, and only then, will the cardiologist determine the need for any future surgery based on serial analysis of the implantable loop recorder's gathered data and other determining medical factors. No additional surgery is scheduled or contemplated at this time, and Price remains under the care of a cardiologist.

Understandably, while the Defendant goes to great lengths to illustrate the seriousness posed by his high blood pressure and heart arrhythmias, and the dire consequences that his condition could cause if left unchecked by the BOP. However, he is under constant medical supervision, as evidenced by his numerous clinic visits and transports to the hospital when deemed medically necessary, and has been provided will all necessary medical care. Moreover, Mr. Price remains both medically and physically able and willing to inform clinicians of any health issues, and has done so on multiple occasions. Each time a concern has arisen, it has been dealt with professionally within established medical protocols.

Additionally, as the District Court in the Middle District of Florida has recently stated, "[N]either asthma nor high blood pressure is an extraordinary condition. The C.D.C. reports that 108 million adults in the United States (about 45% of the adult population) have high blood pressure or take medication for the condition." United States v. Wilson, 2020 WL 4193624, at *

2 (M.D. Fla. July 21, 2020).  As such, the Defendant has been prescribed a medication regimen to control his hypertension, and is continuously monitored by BOP clinic staff.

For these reasons, Defendant has failed to establish that his medical conditions rise to the level of an "extraordinary and compelling reason" for a sentence reduction under § 3582(c). The motion should be denied.

### B. Defendant Still Poses a Significant Danger to the Safety of the Community and the § 3553(A) Factors Strongly Weigh Against His Release.

Alternatively, Defendant's request for a sentence reduction should be denied because he has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors.  Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

In the instant matter, Defendant would pose a danger to public safety if released and the § 3553(a) factors strongly disfavor a sentence reduction. The Defendant stands convicted of one count of Distribution of Child Pornography in violation of 18 U.S.C. 2252(a)(2)) and one count of Possession of Child Pornography in violation of 18 U.S.C. 2252(a)(4)(B)), and was sentenced to 13 years in prison.  There has been no evidence presented that the Movant has completed any treatment regimen or programs that would inform the Court whether the Defendant is no longer a danger.  At sentencing, enhancements were added for offense conduct that included in excess of 600 images as well as depictions of sadomasochistic and violent content, since the offense conduct included the seizure of approximately 216 videos and 44 photographs, including 2 involving

7

bestiality.  *See also* United States v. Pitcock, No. 15-CR-60222, 2020 WL 3129135, at *3 (S.D. Fla. June 12, 2020) (Defendant convicted of possession and transportation of Child Pornography denied compassionate release despite only having 11 months left on his 96 month sentence in part because no evidence submitted to the Court to indicate whether or not any treatment programs or regimens have been completed by the Defendant that would inform the Court as to whether or not defendant remained a danger).

Moreover, when the Movant was arrested for these crimes, it was presumed that no condition or combination of conditions would reasonably assure the safety of the community and there existed a rebuttable presumption that pre-trial detention was appropriate under 18 U.S.C. 3142(e)(3)(E).  Thereafter, as the Court is aware and having seen and heard the evidence, the Movant was convicted at trial, and it is important to note that the Movant has to date, never expressed any acceptance of responsibility or remorse for his actions affecting so many minor victims.  Accordingly, absent any evidence to the contrary, which the Movant has failed to present, he remains a danger to the community if released.

Additionally, Price has approximately 2.5 years left to serve on his sentence, and early compassionate release at this early juncture does not act as a deterrent and it does not promote respect for the law.  Accordingly, in light of the totality of relevant circumstances, this Court should deny the motion for a sentence reduction.

      **C.**    **As an individual who has already been infected with and recovered from COVID-19, Price cannot establish an extraordinary and compelling reason based on concern about COVID-19 infection.**

As previously indicated, Price has already been infected with and recovered from COVID-19, and accordingly, cannot establish an extraordinary and compelling reason based on concern about COVID-19 infection. In his two previously filed Motions for Compassionate Release, Price

focuses on the risk of serious complications and/or death due to his underlying medical conditions should he contract COVID-19, and prayed that this Honorable Court release him early due to concerns about COVID. Fortunately, the Defendant's fears were not realized, and while he did in fact become infected with COVID-19, he was asymptomatic, and has since recovered. Accordingly, his Motion for Compassionate Release due to concerns over a COVID-19 infection and its potential complications should be denied, as he has since recovered from the infection for which he sought compassionate release.

Consequently, if compassionate release is sought for reasons other than a concern over COVID-19, Price again has failed to carry his burden. First, Defendant is not suffering from a terminal illness with an end of life trajectory. Second, Defendant has failed to show he is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within a correctional facility. Defendant is able to independently manage his activities of daily living, is being routinely monitored for his medical conditions, and is not experiencing deteriorating health that leaves him disabled or capable of only limited self-care. *See* United States v. Manuel, 2020 WL 1466000 at *2 (D.S.C. March 26, 2020) (Defendant has not met the high threshold of showing extraordinary and compelling reasons exist to justify compassionate release. His diagnoses are not terminal or on an "end of life trajectory." He appears to receive treatment and monitoring for his diagnoses. Defendant has failed to show how his diagnoses affect his activities of daily living or ability to care for himself.) Moreover, relief is "rare" and "extraordinary," United States v. Willis, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019), and chronic conditions that can be managed in prison are not a sufficient basis for compassionate release. United States v. Ayon-Nunez, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020).

## CONCLUSION

As previously stated, the Movant bears the burden of establishing that compassionate release is warranted. Because the Movant has failed to provide any support for his claim that

9

"extraordinary and compelling reasons warrant the reduction" due to a medical condition and independently remains a danger to the community, this Court should again deny Defendant's motion for a sentence reduction.

                    Respectfully submitted,

                    ARIANA FAJARDO ORSHAN
                    UNITED STATES ATTORNEY

By:   /s/ Marc S. Anton
      MARC S. ANTON
      Assistant United States Attorney
      Florida Bar No. 0148369
      500 E. Broward Blvd., Suite 700
      Fort Lauderdale, FL 33394
      Tel: (954) 660-5096
      Fax: (954) 356-7230
      Marc.anton@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 11, 2021 a true and correct copy of the foregoing was filed with the Court using CM/ECF.

                    /s/ Marc S. Anton
                    MARC S. ANTON
                    Assistant United States Attorney