UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 12-60016-CR-WILLIAMS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JAMES E. PRICE, III.,

    Defendant.

_____/

**ORDER DENYING DEFENDANT'S**
**SECOND MOTION FOR COMPASSIONATE RELEASE**

**THIS MATTER** is before the Court on Defendant James E. Price, III's second motion for compassionate release/ reduction in sentence.[1] (DE 226). Mr. Price subsequently filed a supplement to his motion regarding his health and the ongoing COVID-19 pandemic. (DE 230). The Government filed a response in opposition (DE 231) and submitted Mr. Price's medical records from the Bureau of Prisons ("BOP") (DE 232-2). Following the Government's response, Mr. Price filed two medical status reports (DE 234; DE 235), a reply (DE 236), and supplemental exhibits to his reply (DE 238). The Government submitted additional medical records (DE 240) and filed a response (DE 239) to Mr. Price's status reports, as directed by the Court, and Mr. Price filed a reply (DE 242) to that response. After his reply, Mr. Price submitted additional medical status reports (DE 243; DE 245) and the Government filed a supplemental status report (DE

---

[1] Mr. Price filed a motion (DE 228) to file an affidavit (DE 229) under seal in support of his motion. The motion (DE 228) is GRANTED and the affidavit shall remain under seal until further Court order.

246). Based on a thorough review of the record and for the reasons that follow, Mr. Price's motion is denied.

By way of background, Mr. Price previously filed a motion for compassionate release, which the Court denied. (DE 221). The Court found that based on the particular facts presented, Mr. Price had not established extraordinary and compelling reasons to warrant the relief he requested. *Id.* Specifically, Mr. Price had not presented any medical records to support his claims. And, instead, the Government submitted Mr. Price's BOP medical records to show that he does not have a "documented history" of respiratory illness as asserted, and only had a respiratory infection approximately six years ago in 2014. *Id.* As explained in the Court's Order on the first motion, under 18 U.S.C. § 3582(c)(1)(A), the Court may "reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable" if the Court finds that:

> **(i)** extraordinary and compelling reasons warrant such a reduction; or
>
> **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C.A. § 3582.

In his second motion now before the Court, Mr. Price states he is over the age of 50, male, Hispanic, has a pre-existing respiratory condition, has hypertension, and has "Prior Treatment/ drug Interaction (side-effects) of 'last Line' drugs." (DE 226). In his

supplements and status reports, Mr. Price discusses additional medical conditions and reiterates his health concerns in support of his motion. In his first supplemental filing, Mr. Price claims he was infected with COVID-19 twice. (DE 230). He states that Larkin Community Hospital "doctors opined that [he] likely suffered an asymptomatic COVID-19 infection in the early Spring (March-May) 2020, had a low antibody response, and was subsequently *reinfected* some 6-to-7 months later in November/December 2020." *Id.* Mr. Price avers that his "uncontrolled Hypertension has remained in the highest, and most dangerous, Hypertension Stage II level." *Id.* He further asserts that following his second COVID-19 infection, he "developed and now suffers from Insulin Resistance and diabetic metabolic syndrome. In simple terms, as a result of his latest COVID-19 infection, the Defendant became pre-Type II Diabetic." *Id.* Mr. Price did not submit any medical records to support the claims made in his supplement or motion.

In its response, the Government argues that the Court should deny Mr. Price's motion on either of two grounds: 1) that Mr. Price has not identified extraordinary and compelling reasons to warrant a sentence reduction and/or 2) that Mr. Price poses a significant danger to the public and the statutory sentencing factors do not weigh in favor of his release. (DE 231). As to Mr. Price's health, the Government acknowledges that he suffers from high blood pressure, but states that doctors from both Larkin Hospital and FCI-Miami have prescribed medication for Mr. Price to self-administer. Additionally, when physicians have ordered that he be transferred to the local hospital for elevated blood pressure, Mr. Price has refused to be transferred. However, Mr. Price is "continuously monitored by BOP clinic staff." *Id.* The Government further asserts that Mr. Price's medical records "do not reflect a documented history of either current or past respiratory

3

illness, and accordingly, his claims do not establish 'extraordinary and compelling reasons' for a sentence reduction under §3582(c)(1)(A)." *Id.*

As stated above, following the Government's response, Mr. Price filed two medical status reports. In the first, he indicates that he is currently recovering from the first of two cardiac surgeries, and that in addition to heart damage from COVID-19, he suffers from atrial fibrillation as well as TIA, which he describes as "a post COVID-19 condition where the body produces micro blood clots that pass into the brain, heart, and lungs and may cause strokes, heart attacks, and other cognitive disorders." (DE 234). In the second status report, Mr. Price states that he has had three hospitalizations and two cardiac surgeries as a result of complications from COVID-19. He claims that he "will require at least one or likely more surgeries on his heart to treat COVID-19 related complications" and describes the various complications he suffers from following "his two COVID-19 infections." (DE 235). In addition, Mr. Price notes that while a cardiac monitoring device was implanted next to his heart, it does not work in federal prison. Neither status report includes any medical records to support the various assertions made. Mr. Price's reply to the Government's response likewise does not include any medical records to support his claims. [2] (DE 236).

However, in light of the claims Mr. Price made in his status reports, the Court directed the Government to file a response. (DE 237). In the response, the Government

---

[2] Attached to his various filings, Mr. Price submitted manuals to medical devices, articles, and descriptions and usage information on particular treatments and medications. However, the exhibits only provide information as to the devices and treatments, and do not provide information specifically regarding Mr. Price's health. For example, the supplemental exhibits to his reply are "copies of the technical product documentation for the Saint Jude Medical's ('the myMerlin Confirmed Rx Model DM3500) implanted cardiac monitor device [ ], the myMerlin Mobile Application [ ], and the MTX 2000 Activator." (DE 238). As stated, these do not actually provide any information regarding Mr. Price or his health.

acknowledges that Mr. Price's medical records demonstrate that he "suffers from periodic high blood pressure and has had intermittent cardiac events that at times have required his hospitalization." (DE 239). However, the Government notes that Mr. Price "remains well monitored by the Bureau of Prisons, has been prescribed all appropriate medications, and has received all appropriate medical treatment both within and outside of the prison facility at Larkin Community Hospital and Jackson South Hospital." *Id.* The Government also discusses medical procedures and testing done at Larkin Community Hospital. Specifically, "extensive cardiac and diagnostic testing was performed, and while no tangible cause of physical heart dysfunction was identified, the decision was made by Price's cardiologist to nonetheless implant a 'loop recorder' to continuously monitor Price's heart functioning going forward." *Id.*

Additionally, the Government refutes Mr. Price's assertions on the implantable loop recorder ("ILR") not working in federal prison, and explains that "even though BOP Policy prohibits wireless transmission devices at bedside while incarcerated, the ILR nonetheless remains active and working as intended, and is continuously recording heart function." *Id.* The Government further notes that "[w]hile not transmitting in real time, Price will be seen monthly by his cardiologist, who will review the data stored within his ILR. Then, and only then, will the cardiologist determine the need for any future surgery based on serial analysis of the implantable loop recorder's gathered data and other determining medical factors." *Id.* Mr. Price filed a supplemental reply to the Government's response as well as additional medical status reports[3], reiterating the conditions he suffers from and that they warrant a reduction in his sentence. (DE 242; DE 243; DE 245).

---

[3] The medical status report filed on April 16, 2021 is Mr. Price's only filing that includes medical records. The records provide "Nurse's Notes" from Larkin Community Hospital, a medication

Following the Government's response and Mr. Price's medical status reports, the Court directed the Government to file a supplement to its response, "explaining how the implantable loop recorder is 'working as intended' to transmit the information collected in real time, particularly how often the information is collected by medical staff and reviewed aside from the 'monthly' visit referenced." (DE 244). The Court also ordered that the Government provide an update on any reviews of the data (or other medical information) conducted by Mr. Price's physicians at BOP, Larkin Hospital, or elsewhere, particularly as to whether there is need for any future surgery as referenced in the response. *Id.*

In its response to the Court's Order, the Government explained that according to Dr. John Dylewski, Mr. Price's cardiologist, 1) no concerning arrythmia events were indicated or detected by the ILR over the past 3 months; and 2) "while the ILR may not currently be connected to the internet and transmitting to his office events in real time, it nonetheless does work as intended, in that triggering data is stored to the memory of the device until either deleted or overwritten due to a lack of storage space . . . the data would normally last for years if not more on the device before memory capacity was reached . . . [and] [c]ontrary to Mr. Price's assertions, the device only records certain triggering events/ episodes that have been preset by his Doctor to record, and it does not record heart function 24/7." (DE 246).

Of particular note, the Government represents that Dr. Dylewski "indicated that he felt the Defendant had been 'cured.'" *Id.* Still, Mr. Price is scheduled for a follow up appointment in May, and Dr. Dylewski has recommended that he be sent to the local

---

summary of active prescriptions, and certificates of completion presented to Radika Rampersad for completion of the National Caregiver Certification Program and Seizure Recognition and First Aid Certification Training. (DE 245-1). In light of the minimal records provided, the Court primarily relies on the medical records submitted by the Government.

6

hospital if he has acute chest pain and shortness of breath. Nothing in the record suggests that this directive will not be followed, and based on Mr. Price's medical history, it is clear that the BOP has already been sending Mr. Price to local hospitals when needed. Finally, the Government acknowledges that Mr. Price's high blood pressure remains an issue but indicates that it is being controlled by medication administered by the BOP in consultation with frequent medical examinations at Larkin Community Hospital.

Based on a thorough review of the briefing, supplemental briefing, and status reports, the Court concludes that Mr. Price is not entitled to the relief requested. While the Court does not discount Mr. Price's concerns in light of the ongoing pandemic and his current health, the Court finds that the Government has adequately demonstrated that he is being continuously monitored for his health conditions and that he is being treated as needed—not only by BOP, but also by Larkin Community Hospital and Jackson South Hospital when his particular medical needs surpass the BOP's ability to provide testing, evaluation, and/or treatment. *See United States v. Medina*, No. 14-CR-60103, 2020 WL 5518148, at *3 (S.D. Fla. Sept. 14, 2020) (denying motion for compassionate release where the defendant's health conditions, including obesity, generalized anxiety disorder, high cholesterol, and hypertension were being effectively managed and were not alleged to be significantly deteriorating); *United States v. Roundtree*, No. 14-CR-20206-BB, 2020 WL 5819541, at *4 (S.D. Fla. Sept. 30, 2020) (denying motion for compassionate release where the defendant—whose medical history reflected atrial fibrillation (irregular heartbeat), high blood pressure, and the use of prescription medications—did "not persuade the Court that current procedures already in place or resources available at FCI Terminal Island are insufficient to protect him and other at-risk individuals.").

Therefore, based on the record, the Court agrees with the Government that Mr. Price "is under constant medical supervision" and that he is being provided with necessary medical care for the various health concerns he has identified to the Court. (DE 239). Additionally, the Government's latest supplemental response (DE 246) makes clear that the treatment, supervision, and management of Mr. Price's health remains ongoing and will continue as needed. Consequently, the Court is unable to conclude that there are extraordinary and compelling reasons to grant compassionate release. *See e.g.*, *United States v. Buchanan*, No. 15-CR-60325-RAR, 2021 WL 706209, at *3 (S.D. Fla. Feb. 23, 2021) ("Defendant's alleged health conditions—diabetes, high blood pressure, and kidney disease—appear to be well-managed conditions that do not constitute grounds for compassionate release due to the COVID-19 pandemic.").

Moreover, even if the Court were to conclude that extraordinary and compelling reasons warrant compassionate release, the Court would still need to find that the relevant § 3553(a) factors weigh in Mr. Price's favor and determine that Mr. Price is not a danger to the community. However, a review of these factors, including the nature and circumstances of Mr. Price's offense, further persuade the Court that Mr. Price is not entitled to the relief requested. And, finally, the Court notes that Mr. Price has not provided any viable release plan. Mr. Price states in his motion that he will reside with his wife and adult children in their New York home, and has obtained employment as a research analyst, technical consultant, and computer forensic examiner for law firms. However, in light of Mr. Price's underlying offenses—distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B)—it is not clear that the "New York home" would be an appropriate

8

residence under the conditions of supervised release set forth in the judgment, which include but are not limited to, complying with the requirements of the Sex Offender registration and Notification Act as well as any state registration and residency requirements. (DE 122).

Accordingly, upon review of the motion (DE 226) and extensive briefing, Mr. Price's motion is **DENIED.**

**DONE AND ORDERED** in chambers in Miami, Florida, this 20th day of April, 2021.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE